UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | Case 1:18-cr-20489 |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES D. PIERON, JR., | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT'S REPLY BRIEF SUPPORTING MOTION TO DISMISS**

TO THE HONORABLE COURT:

NOW COMES DEFENDANT, James D. Pieron, Jr. ("Defendant"), by and through undersigned counsel, Michael Louis Minns and Ashley Blair Arnett, and files this Reply to the Government's Response to Defendant's Motion to Dismiss.

The government could not possibly have drafted a more bare-boned indictment—with *zero* factual allegations of what Defendant allegedly did wrong for almost a decade here and (we now are told) overseas. If this indictment stands, nothing is left of the Fifth Amendment's grand jury presentment requirement or of *Russell v. United States*, 369 U.S. 749 (1962).

The government's opposition brief, like its bill of particulars, raises more questions than answers. By arguing that this indictment suffices under *United States v. Resendiz-Ponce*, 549 U.S. 102 (2007), the government nicely frames the issue: Is this indictment more like the one held deficient in *Russell* or the one upheld in *Resendiz-Ponce*? The Court should (a) hold the indictment deficient under *Russell*, and (b) reject the government's alternative arguments that this deficiency does not require dismissal.

**Page 1 of 10**

**Reply Argument**

I.    **The indictment must be dismissed.**

A.    <u>The indictment is legally deficient for failure to allege any facts of the crime</u>.

The *Resendiz-Ponce* opinion relied on by the government reaffirmed the requirements for an indictment, as set forth in prior cases such as *Russell* and *Hamling v. United States*, 418 U.S. 87 (1974).  It recognized "two constitutional requirements for an indictment: first, that it contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, that it enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  549 U.S. at 108 (internal punctuation omitted).

*Resendiz-Ponce* also reaffirmed, "[a]s we explained at length in our opinion in *Russell*," that there are cases where "a valid indictment … must go beyond the words of" a statute in order "[b]oth to provide fair notice to defendants and to ensure that any conviction would arise out of the theory of guilt presented to the grand jury…."  *Id.* at 109-10.  It stated that "while an indictment parroting the language of a federal criminal statute is often sufficient, there are crimes that must be charged with greater specificity."  *Id.* at 109.

Where *Russell* applies, "facts are to be stated, not conclusions of law alone."  *United States v. Cruikshank*, 92 U.S. 542, 558 (1875).  It "is not sufficient that the indictment shall charge the offence in the same generic terms as" the statute; instead, the indictment "must descend to particulars."  *Russell*, 369 U.S at 765 (quoting *Cruikshank*).  As explained in *Hamling*, legal conclusions "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged."  418 U.S. at 117-18.

Here, the indictment has no "statement of the facts." *Id.*  It is wholly conclusory.

**Page 2 of 10**

This case is a far cry from *Resendiz-Ponce*.  There, the "indictment charg[ed] attempted reentry at a specific place and time, without further description of the underlying act, because the time-and-place allegations were sufficient to narrow the subject conduct."  *United States v. Hillie*, 227 F. Supp. 3d 57, 74 (D.D.C. 2017) (discussing *Resendiz-Ponce*).

Here, in contrast, there is no specific place and time.  The indictment alleges that the crime spanned almost a decade—"From approximately April 2009 and continuing through [July 2018]," ECF 1—not just in this district but (as the bill of particulars expands) around the world.

And unlike in *Resendiz-Ponce*, which involved a discrete crime "of illegally attempting to reenter the United States," 549 U.S. at 103, tax evasion here can be committed a multitude of ways.  As stated in a Sixth Circuit case relied on by the government, there are few limitations on the "*undefined and unlimited acts* which Congress intended to criminalize under Section 7201."  *United States v. Hook*, 781 F.2d 1166, 1169 (6th Cir. 1986) (emphasis added); *see also United States v. Damra*, 621 F.3d 474, 504 (6th Cir. 2010) (tax evasion "may involve multiple complex understatements or omissions made in the course of continuing conduct.").

As explained in a leading authority, "Greater specificity will be required … where the crime encompasses more factual variations," whereas courts "are less likely to require specification where the factual variations are likely to be concentrated in time and place."  LaFave, et al., 5 *Crim. Proc.* § 19.3(c) (4th ed.).  If the government wants to charge under a statute providing "multiple complex" (*Damra*, 621 F.3d at 504) and "undefined and unlimited" (*Hook*, 781 F.2d at 1169) means of committing a crime, the indictment must offer at least some description of how the crime was committed.  Courts have dismissed indictments charging complex tax crimes in overly general terms.  *See United States v. Pirro*, 212 F.3d 86, 91-95 (2d Cir. 2000); *United States v. Rogers*, 636 F. Supp. 237, 249-50 (D. Colo. 1986).

B.    Prejudice is not required to dismiss a legally deficient indictment.

Where the defense timely moves for dismissal, a court must dismiss a legally deficient indictment.  The government blurs this point by citing Sixth Circuit cases involving "harmless error" on appeal.  *See* ECF 23 at 4 (citing *United States v. Lentsch*, 369 F.3d 948, 953 (6th Cir. 2004); *United States v. Cor-Bon Custom Bullet Co.*, 287 F.3d 576, 578-81 (6th Cir. 2002)).

There currently is "uncertainty" whether error in refusing to dismiss a legally deficient indictment requires appellate reversal or instead is subject to harmless error review.  *See* C. Wright, et al., 1 *Fed. Prac. & Proc. Crim.* § 125, at n.68 (4th ed.).  While the Supreme Court granted certiorari on this issue in *Resendiz-Ponce,* it ultimately decided that case "without reaching the harmless-error issue."  549 U.S. at 103-04.

That debate is beside the point here.  Unlike an appellate court, a trial court's task is not to determine whether error is prejudicial or harmless but rather is to *avoid* error in the first place.  And unlike a defendant seeking reversal of a conviction, who under Fed. R. Crim. P. 52 has the "burden of proving prejudice" from an error, *Cor-Bon Custom Bullet*, 287 F.3d at 580-81, a presumptively innocent defendant need only show the indictment is legally deficient.

While it is pointless and premature to debate here if allowing trial on this deficient indictment would or would not prejudice the defense, there are early indications that allowing trial to proceed on this indictment would cause problems even more severe than those encountered in *United States v. Teh*, 535 F.3d 511 (6th Cir. 2008).  There, the "government's carelessness" in not specifying the crime's underlying basis "caused considerable confusion for [the defendant], the government, and the district court."  *Id.* at 517.  In contrast, in the harmless error case relied on by the government, the affirmative acts of tax evasion were much more limited than here in time and scope.  *See Cor-Bon Custom Bullet*, 287 F.3d at 578-81.

**Page 4 of 10**

C.      In any event, prejudice is amply shown from the face of the indictment.

1.      The indictment charges conduct not amounting to affirmative evasion.

By charging that the alleged tax evasion was "continuing through the present" (ECF 1), the indictment reveals disregard of the longstanding rule that "mere omission of the duties put upon [taxpayers] by the statute" does not constitute tax evasion. *Spies v. United States*, 317 U.S. 492, 500 (1943). Tax evasion requires "some willful commission in addition to the willful omissions that make up the list of misdemeanors." *Sansone v. United States*, 380 U.S. 343, 351 (1965) (internal quotations omitted). Under these cases, courts "now routinely state that … an affirmative act of evasion is an element of an offense under § 7201." *Cor-Bon Custom Bullet*, 287 F.3d at 579.

It is fanciful to imagine that prosecutors had (and presented to the grand jury) evidence of "an affirmative act of evasion" committed on the day or even in the year of the indictment. That allegation could only have been made by converting omissions (failure to pay over taxes allegedly due) into affirmative acts.

2.      The indictment obscures limitations problems.

The face of the indictment reveals serious problems for the prosecution under the six-year statute of limitations, 26 U.S.C. §6531(2). Because there was no tolling agreement before January 9, 2018, *see* ECF 23-2, the statute bars prosecuting crimes committed before January 9, 2012.

Any tax evasion involving "calendar years 2008 and 2009," ECF 1 at 1-2, would have been committed at least by 2009 and 2010 respectively, when income for those years was due and had to be reported. And of course, the indictment alleges that tax evasion occurred as early as 2009. *Id.*

The government argues that the "limitations period begins to run when the last affirmative

**Page 5 of 10**

act of evasion is committed by a defendant." ECF 23 at 6 (citing *United States v. Dandy*, 998 F.2d 1344, 1355-56 (6th Cir. 1993)). But there is no way of knowing from the indictment *when* that occurred (other than the unsupported and law-defying notion that the evasion continued through the indictment date).

        3.      The indictment allows prosecutors to keep options open in violation of the Grand Jury Presentment Clause.

The bare-bones indictment, which fails to identify a single affirmative act of evasion, is a transparent tactic not only to cover up legal problems with the prosecution but also to preserve prosecutors' options in addressing those problems later. That prosecution tactic, however, is contrary to grand jury protections of the Fifth Amendment.

As the Second Circuit held in affirming dismissal of an indictment that did not sufficiently describe the predicate for a tax crime, "The Indictment Clause of the Fifth Amendment requires that an indictment contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." *Pirro*, 212 F.3d at 92. A federal district court made a similar point in dismissing tax counts lacking sufficient particularity in *Rogers*, 636 F. Supp. at 249-50. The court dismissed those deficient counts to eliminate "the possibility that the government could present legal and factual premises for the charges different from those presented to and considered by the grand jury, and that defendants could be convicted on the basis of facts not found by the grand jury." *Id.* That "possibility," the court explained, "would destroy defendants' Fifth Amendment right to be held to answer on charges only upon indictment by a grand jury." *Id.* at 350 (citing *Stirone v. United States*, 316 U.S. 212, 217 (1960)). Here, as in *Pirro* and *Rogers*, the government cannot keep its options open in this fashion.

**Page 6 of 10**

**II.    The bill of particulars does not cure, but instead exacerbates, these problems**.

      A.    <u>Bills of particular cannot cure deficient indictments</u>.

As explained in our motion, "[a] bill of particulars cannot cure a legal deficiency; rather the proper result is dismissal of the indictment."  ECF 14 at 4 (quoting *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 176-77 (6th Cir. 1992)).  This point is settled.  *See* C. Wright, et al., 1 *Fed. Prac. & Proc. Crim.* § 125, at n.55 (4th ed.) ("the [Supreme] Court has clearly said that an invalid indictment cannot be saved by a bill of particulars") (citing *Russell*, as well as extensive lower court cases).  The government does not dispute the point, but argues only that the "bill of particulars does not serve to rectify a deficiency in the Pieron indictment, for no such deficiency exists."  ECF 23 at 5.  Because the indictment indeed is deficient, and indisputably cannot be cured by the bill, it must be dismissed.

      B.    <u>This bill reveals problems the bare-bones indictment tried to cover up</u>.

The bill of particulars actually makes things worse for the prosecution.  It confirms problems that the bare-bones indictment tried to hide.

The bill still does not explain how Defendant committed *tax evasion* in filing belated tax returns for 2008 and 2009 calendar years.  Instead, it seems focused more on the different, misdemeanor offense, 26 U.S.C. § 7203, of failure to file a (timely) return or pay a tax.

It alleges that for both tax years, Defendant "did not timely file a federal income tax return … nor timely pay any federal income tax" even though he "had the means to pay his federal income tax for" both years.  ECF 5 at 2 ¶ 3, ¶ 7.  And then in January 2011, when he did file returns for those years, the bill alleges those "income tax returns showed that he owed federal income taxes, but Pieron only paid the taxes that he claimed he owed for 2007, despite having funds available to pay his taxes for 2008 and 2009."  *Id.* at 4-5 ¶ 13.

There are at least two problems with the theory of criminality revealed by the bill.  First, even "a willful failure to pay a tax" does not itself amount to criminal tax evasion under *Spies*, 317 U.S. at 498.  Second, any misdemeanor violation occurred in 2009 or 2010, when the taxes were "due and owing" according to the bill.  *See* ECF 5 at 2 ¶ 3, ¶ 7.

The bill does not even allege that the return filed in 2011 was false, much less particularize how (if at all) it was false, regarding 2008 or 2009 income.  Likewise, regarding later amended returns, all the bill says is that they "reported that he owed income tax for those years, but he did not submit any payment to the IRS with those returns."  ECF 5 at 5 ¶ 17.

While offering no particulars regarding any tax evasion from 2009-2011, the bill does particularize financial transactions that could not as a matter of law constitute tax evasion as charged.  For example, it states:  "On April 15, 2010, the date that his 2009 income tax return was due, Pieron transferred $65,000 between two personal bank accounts, but did not use any of the funds to pay the taxes he owed at that time."  ECF 5 at 3 ¶ 8.  Under the law, however, "the deposit of funds into an account in one's own name cannot be an affirmative act of evasion."  *United States v. McGill*, 964 F.2d 222, 234 (3d Cir. 1992)

The government's opposition brief now devotes much its attention to a proposed "installment agreement" dated on January 16, 2012 that it says contained false information.  ECF 23 at 6.  The brief deems it "well-established that making a false statement to the IRS is an affirmative act of evasion."  *Id.* (citing *United States v. Beacon Brass Co.*, 344 U.S. 43 (1952)).

One major problem with that argument, of course, is that there is no way to tell from the indictment whether this theory was presented to and relied upon by the grand jury as an alleged act of evasion.  But, even if it was, there is no way to tell from the bill of particulars how that allegedly false statement relates to any prior affirmative acts of evasion.

**Page 8 of 10**

The alleged omissions or undervaluation of Defendant's then-current assets in a 2012 installment plan (which may well have had no bearing on his 2009 or 2010 tax liability) are different than those in the Sixth Circuit *Dandy* case relied on by the government. *Dandy* reasoned that "had it not been for defendant's evasive acts in 1985, the IRS would very likely have discovered defendant's income tax fraud occurring in 1982 and 1983." 998 F.2d at 1356; *see United States v. Butler*, 297 F.3d 505, 511 n.6 (6th Cir. 2002) ("In *Dandy*, we held that the filing of the defendant's tax returns did not necessarily constitute the last affirmative act of evasion … because defendant's evasive acts in 1985 prevented the IRS from learning about defendant's income tax fraud occurring in 1982 and 1983….").

Unlike in *Dandy*, the government (through its bill of particulars) provides no indication how the 2012 installment plan "prevented the IRS from learning about defendant's income tax fraud" in earlier years. Absent such a link, the government has not shown that any alleged omissions or misstatements in the 2012 installment plan were part of the earlier alleged evasion rather than a separate and distinct act. *See United States v. Uscinski*, 369 F.3d 1243, 1247 (11th Cir. 2004) ("Under § 7201, false statements are sometimes part of the offense of tax evasion," but "[b]ecause Uscinski's tax evasion was complete upon the filing of his tax return, his false statements to the government were not a continuation of his crime.").

## Conclusion

The indictment should be dismissed.

Respectfully submitted on November 6, 2018

MINNS & ARNETT

*/s/ Ashley Blair Arnett*
Michael Louis Minns
State Bar No. 14184300
mike@minnslaw.com

**Page 9 of 10**

Ashley Blair Arnett
State Bar No. 24064833
ashley@minnslaw.com
9119 S. Gessner, Suite 1
Houston, Texas 77074
Telephone: (713) 777-0772
Telecopy: (713) 777-0453

Kenneth R. Sasse, PLLC

*/s/ Kenneth Sasse*

_____

Kenneth R. Sasse
State Bar. No. P24365
27 E. Flint Street, 2nd Floor
Lake Orion, Michigan 48362
Telephone: (248) 821-7325

***Attorneys for James Pieron, Jr.***

*/s/ Ashley Blair Arnett*
Ashley Blair Arnett

## CERTIFICATE OF SERVICE

This is to certify that on this 6th day of November 2018, a true and correct copy of the above and foregoing instrument was served upon all counsel of record.

*/s/ Ashley Blair Arnett*
Ashley Blair Arnett