UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-CR-20489 |
| Plaintiff, | Hon. Thomas L. Ludington<br>United States District Judge |
| v. | |
| JAMES D. PIERON, JR., | Hon. Patricia Morris<br>United States Magistrate Judge |
| Defendant. | |
| _____/ | |

**UNITED STATES OF AMERICA'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF DEFENDANT'S PRIOR MILITARY AND LAW ENFORCEMENT SERVICE, DEFENDANT'S BELATED TAX PAYMENTS, DEFENDANT'S CLAIM OF VICTIMIZATION FROM A PONZI SCHEME, AND THE CLAIM OF RIGHT DOCTRINE.**

The United States moves under Federal Rules of Evidence 401, 402, and 403 for an order prohibiting the defendant from introducing evidence related to James D. Pieron, Jr.'s prior military and law enforcement service, evidence of tax payments that Pieron made after he was aware of IRS's criminal investigation, evidence regarding the application of a theft-loss deduction, and evidence regarding the claim-of-right doctrine. The government has contacted Pieron's counsel to seek concurrence in this motion, but Pieron's attorney did not concur.

1

BRIEF

<u>Pieron's Prior Military And Law Enforcement Service Is Not Relevant To Any Issue Before The Jury And The Risk Of Unfair Prejudice From That Evidence Substantially Outweighs Any Probative Value.</u>

According to Pieron's resume or executive profile, when Pieron was 17-years-old, the Department of Defense recruited him to build a computer system for the secure transmission of classified data. The profile also states that after working for the military Pieron attended Central Michigan University and, upon graduation, the FBI recruited him to work on a fingerprint identification system. (Gov't Ex. 1, Pieron Profile).

Pieron's prior work with the U.S. military and the FBI occurred long before any of the allegations in the indictment and the bill of particulars and is unrelated to any element of the charge of tax evasion. As such, evidence of Pieron's work for the military and federal law enforcement is not admissible under Rules 401 and 402. Additionally, evidence that Pieron previously worked for the military and law enforcement raises a serious risk that the jury would be unfairly sympathetic to him and unfairly prejudiced in his favor. To the extent that evidence of Pieron's prior military and law enforcement work are relevant, the probative value of the evidence is substantially outweighed by the danger of unfair prejudice and should not be admissible under Rule 403.

<u>Evidence that Pieron made tax payments after his attorneys were engaged in pre-indictment plea negotiations are not admissible because the risk of unfair prejudice substantially outweighs any probative value.</u>

On March 15, 2018, while the government and the defendant were engaged in pre-indictment plea negotiations, Pieron, through his attorney, mailed the IRS a check for $627,244.62 with a cover letter that directed the IRS to apply the money to Pieron's 2008 and 2009 tax liabilities. (Gov't Ex. 2, Tolling Agreement; Gov't Ex. 3, March 15, 2018, Letter regarding payment). The parties did not reach a pre-indictment resolution of the case and on July 18, 2018, a grand jury returned the indictment against Pieron. Then, on September 27, 2018, Pieron's attorney sent another check to the IRS for $242,872.52. (Gov't Ex. 4, September 27, 2018, Letter and Payment). The combination of the two checks satisfied the balance of Pieron's self-reported tax liabilities for 2008 and 2009 based on Pieron's first amended personal income tax returns. (Gov't Proposed Trial Exs. 41 & 48).

These payments should not be admitted into evidence because Pieron made both of them after he knew that the Department of Justice Tax Division had referred criminal charges to the U.S. Attorney's Office for prosecution, and because neither payment absolves him from his prior evasion. *See United States v. Daniels*, 699 Fed.Appx. 469 (6th Cir. 2017), citing *Sansone v. United States*, 380 U.S. 343, 354 (1965) ("[I]ntending to pay tax liability in the future does not vitiate willfulness" under the tax evasion statute, 26 U.S.C. § 7201).

The government did not find any Sixth Circuit cases addressing the admissibility of evidence of tax payments made after a defendant was aware of a tax investigation. The Ninth Circuit and the Third Circuit, however, have both upheld district court decisions finding such evidence inadmissible. *See United States v. Pang*, 362 F.3d 1187, 1194 (9th Cir. 2004) (upholding the district court's finding that "evidence of belated tax payments, made while awaiting prosecution, is irrelevant") and *United States v. Evdokimow*, 726 Fed.Appx. 889 (3rd. Cir. 2018) (upholding the district court's finding that evidence of remedial tax payments was inadmissible under Federal Rule of Evidence 403); *but see United States v. Dalton,* Case No. 17-cr-00024, 2018WL356205, at *2 (W.D. VA, Jan. 10, 2018).

Pieron went years without making any significant payment toward his self-reported 2008 and 2009 income tax obligation. For many of these years, he was aware of an IRS criminal investigation. He only made payment once he knew that the case had been referred for prosecution. The fact that Pieron made the payments after the parties had engaged in pre-indictment negotiations significantly limits the probative value of the payments with respect to the defendant's intent. As the Ninth Circuit noted in *Pang*, if evidence of remedial payments was admitted at trial, "tax evaders could avoid criminal prosecution simply by paying up after being caught." *Pang*, 362 F.3d at 1194.

4

Most importantly, the evidence of Pieron's March 15, 2018, and September 28, 2018, tax payments would unfairly confuse and prejudice the jury. Evidence of the payments might lead the jury to take a nullification position of "no harm— no foul," or the jury might wrongfully conclude that the defendant did not evade the payment of his liabilities simply based on the fact that in 2018 he belatedly paid the tax he reported on his amended 2008 and 2009 returns.

<u>Evidence and argument that Pieron incurred a theft loss or that he was not liable for taxes under the claim-of-right doctrine should be excluded because it will unfairly confuse the jury and have minimal or no probative value.</u>

From the mid to late 2000s, Pieron lived in Switzerland and ran a company called JDFX. Pieron sold some of his shares of JDFX stock to Trevor Cook and directed $15.25 million from the sale into JDFX accounts. In April 2010, Trevor Cook pleaded guilty to running a Ponzi scheme in Minnesota and was sentenced to 25 years. Pieron had a close relationship with Cook and there is evidence that Pieron was aware of some of Cook's financial improprieties. (Gov't Ex. 5, Receiver's Memo to IRS Agent Hollabaugh). None of the $15.25 million was returned to Cook or recovered by the government.

Pieron did not invest his funds with Cook, but he still has sought to portray himself as a victim and even claimed a substantial theft loss deduction on his amended personal income tax returns for 2008 and 2009. (Gov't Proposed Trial Exs. 41 and 48, Amended Returns 2008 and 2009, filed January 30, 2012)

Nevertheless, if this portion of the current motion is granted, the government will not seek to present evidence in its case-in-chief that Pieron falsely claimed a theft-loss deduction because he was not a victim of a theft. *See* 26 U.S.C. § 165(c) which allows certain casualty losses or "losses from theft." Rather the government will accept Pieron's amended tax returns reflecting the theft loss for the purposes of trial.

Pieron cannot show that he sustained losses from theft. To the contrary, he received substantial personal income from Cook's Ponzi scheme. Because Pieron did not incur a theft loss, it would be a waste of court time and be unnecessarily confusing to the jury if Pieron was allowed to present evidence relating to the Ponzi scheme and his theft loss claims. Therefore, he should be precluded from presenting evidence or argument to the jury that he was a victim of Cook's theft.[1]

Pieron may attempt to present evidence or argument that JDFX suffered reputational harm when Cook's Ponzi scheme was uncovered.[2] This evidence has no probative value relating to the issues before the jury, and there is a significant likelihood that it will unfairly confuse the jury.

---

[1] The government does not intend to present evidence regarding Trevor Cook's Ponzi scheme or conviction, unless defendant presents such evidence to claim that Pieron is Cook's victim.

[2] Pieron has not produced any evidence in reciprocal discovery that would support a reputational harm claim nor enable the jury to quantify for tax purposes the impact of any such claim.

Similarly, after Cook's conviction, an SEC receiver attempted to collect assets of the Ponzi scheme. The receiver did not recover any assets from Pieron. Despite this, Pieron filed a second amended tax return and offer-in-compromise arguing that the claim-of-right doctrine applied to the income that he received from Cook, and that he should not be taxed on that income. (Gov't Ex. 6, Offer in Compromise Doubt as to Liability, filed April 7, 2014). In the Offer in Compromise statement, Pieron's return preparer argued, "If Pieron had liquid assets in 2011, the trustee would have tried to claw those funds back." (Gov't Ex. 7 at 12.) Because Pieron did not surrender the $15.25 million he received from Cook to the SEC receiver, the claim-of-right doctrine does not apply to his case and he should not be allowed to confuse the jury by presenting a claim-of-right defense.

## CONCLUSION

Evidence of James D. Pieron, Jr.'s prior military and law enforcement service, evidence of tax payments that Pieron made after he knew that he would be charged with a criminal tax offense, evidence regarding the Cook Ponzi scheme and a theft-loss deduction, and evidence regarding the claim-of-right doctrine have little or no probative value, but pose a significant danger of unfair prejudice or jury

confusion. Therefore, the defendant should be precluded from presenting such evidence.

                                      Respectfully submitted,

Date: February 25, 2019                Matthew Schneider
                                                United States Attorney

s/Jules M. DePorre                   s/Janet L. Parker
Jules M. DePorre (P73999)         Janet L. Parker (P34931)
Assistant U. S. Attorney             Assistant U.S. Attorney
600 Church Street                     101 First Street, Suite 200
Flint, Michigan 48502-1280         Bay City, MI 48708
(810) 766-5026                          (989) 895-5712
jules.deporre@usdoj.gov             janet.parker2@usdoj.gov

Certificate of Service

On February 25, 2019, I filed the above document by using the Clerk of the Court's ECF system. The ECF system will automatically serve counsel of record.

                                      s/Jules M. DePorre