APR-15-2014 15:25 P.02

*Offer # 1001193491*

| Form **656-L** (February 2012) | Department of the Treasury — Internal Revenue Service **Offer in Compromise (Doubt as to Liability)** | OMB No. 1545-1686 |
|---|---|---|

| **Section 1** | **Your Contact Information** | **IRS Received Date** |
|---|---|---|

Your First Name, Middle Initial, Last Name

James D. Pieron Jr.

If a Joint Offer, Spouse's First Name, Middle Initial, Last Name

Your Physical Home Address (Street, City, State, ZIP Code)

Mailing Address (if different from above or P.O. Box number)

Business Name

Business Address (Street, City, State, ZIP Code)

RECEIVED IRS
19  APR - 3 2014  MAIL
004
IRS CENTER AT BROOKHAVEN
HOLTSVILLE, NY 11742

| Social Security Number (SSN) (Your SSN) | (Spouse SSN) | Employer Identification Number (EIN) | (EIN not included in offer) |
|---|---|---|---|

| **Section 2** | **To: Commissioner of Internal Revenue Service** |
|---|---|

I/we submit this offer to compromise, based on doubt as to liability plus any interest, penalties, additions to tax, and additional amounts required by law (tax debt) for the tax type and period(s) marked below.

*(Please mark an "X" in the box for the correct description and fill-in the correct tax period(s).)*

[X] **1040/1120 Income Tax** [List all year(s); for example 1040 2009, 1120 2010, etc.]

1040-2007, 1040-2008, 1040-2009, 1040-2010 & 1040-2011

[ ] **941 Employer's Quarterly Federal Tax Return** [List all quarterly period(s); for example 03/31/2009, 06/30/2010, 09/30/2010, etc.]

[ ] **940 Employer's Annual Federal Unemployment (FUTA) Tax Return** [List all year(s); for example 2010, 2011, etc.]

[ ] **Trust Fund Recovery Penalty** as a responsible person of *(enter corporation name)* _____
for failure to pay withholding and Federal Insurance Contributions Act taxes (Social Security taxes), for period(s) ending [List all quarterly periods for example 03/31/2009, 06/30/2009, etc.]

IRS
RECEIVED DATE
APR 4
COIC

[ ] **Other Federal Tax(es)** [specify type(s) and period(s)]

Note: If you need more space, use a separate sheet of paper and title it "Attachment to Form 656-L Dated _____." Sign and date the attachment following the listing of the tax periods.

| **Section 3** | **Amount of the Offer** |
|---|---|

I/we offer to pay $ 30,000

Must be more than zero ($0) and payable within 90 days of the notification of acceptance, unless an alternative payment terms applied at the time the offer is accepted.

RECEIVED DATE
COIC

| **Section 4** | **Terms** |
|---|---|

By submitting this offer, I/we have read, understand and agree to the following terms and conditions:

Terms, Conditions and Legal Agreement

RECEIVED
APR 7 2014

In the following agreement, the pronoun "we" may be assumed in place of "I" when there are joint liabilities and both parties are signing this Agreement.

I/we agree to the following conditions:

Catalog Number 47516R  SPECIAL CASE UNIT COLLECTIONS  www.irs.gov

GOVERNMENT
EXHIBIT
6

00432

| Section 4 | Terms *(Continued)* |
|---|---|

a) I/we voluntarily submit all payments made on this offer.

b) The IRS will apply payments made under the terms of this offer in the best interest of the government.

If the IRS rejects or returns the offer or I/we withdraw the offer, the IRS will return any amount paid with the offer. If I/we agree in writing, the IRS will apply the amount paid with the offer to the amount owed. If I/we agree to apply the payment, the date the IRS received the offer remittance will be considered the date of payment. I/we understand the IRS will not pay interest on any amount I/we send with the offer.

**IRS will keep my/our payments and fees**

c) The IRS will keep all payments and credits made, received, or applied to the total original tax debt before I/we send in the offer or while it is under consideration. The IRS may keep any proceeds from a levy served prior to submission of the offer, but not received at the time the offer is sent in.

If you currently have an approved installment agreement with IRS and are making installment payments, then you may stop making those installment agreement payments when you have been notified your offer has been assigned for consideration. If your offer is rejected or returned for any reason, your installment agreement with IRS will be reinstated with no additional fee.

If the Doubt as to Liability offer determines that you do not owe the taxes, or the IRS ultimately over-collected the compromised tax liability, the IRS will refund the over-collected amount to you, unless such refund is legally prohibited by statute.

**I/we agree to waive time limits provided by law**

d) To have my offer considered, I/we agree to the extension of time limit provided by law to assess my tax debt (statutory period of assessment). I/we agree that the date by which the IRS must assess my/our tax debt will now be the date by which my/our debt must currently be assessed plus the period of time my/our offer is pending plus one additional year if the IRS rejects, returns, or terminates my/our offer or I/we withdraw it. [Paragraph l) of this section defines pending and withdrawal]. I/we understand I/we have the right not to waive the statutory period of assessment or to limit the waiver to a certain length or certain periods or issues. I/we understand, however, the IRS may not consider my/our offer if I/we decline to waive the statutory period of assessment or if I/we provide only a limited waiver. I/we also understand the statutory period for collecting my/our tax debt will be suspended during the time my/our offer is pending with the IRS, for 30 days after any rejection of my/our offer by the IRS, and during the time any rejection of my/our offer is being considered by the Appeals Office.

**I/we understand I/we remain responsible for the full amount of the tax liability**

e) The IRS cannot collect more than the full amount of the tax debt under this offer.

f) I/we understand I/we remain responsible for the full amount of the tax debt, unless and until the IRS accepts the offer in writing and I/we have met all the terms and conditions of the offer. The IRS will not remove the original amount of the tax debt from its records until I/we have met all the terms of the offer.

g) I understand the tax I/we offer to compromise is and will remain a tax debt until I/we meet all the terms and conditions of this offer. If I/we file bankruptcy before the terms and conditions of this offer are completed, any claim the IRS files in bankruptcy proceedings will be a tax claim.

h) Once the IRS accepts the offer in writing, I/we have no right to contest, in court or otherwise, the amount of the tax debt.

**Pending status of an offer and right to appeal**

i) The offer is pending starting with the date an authorized IRS official signs this form. The offer remains pending until an authorized IRS official accepts, rejects, returns, or acknowledges withdrawal of the offer in writing. If I/we appeal an IRS rejection decision on the offer, the IRS will continue to treat the offer as pending until the Appeals Office accepts or rejects the offer in writing. If I/we do not file a protest within 30 days of the date the IRS notifies me of the right to protest the decision, I/we waive the right to a hearing before the Appeals Office about the offer in compromise.

**I/we understand if IRS fails to make a decision in 24-months my/our offer will be accepted**

j) I/we understand under Internal Revenue Code (IRC) § 7122(f), my/our offer will be accepted, by law, unless IRS notifies me/us otherwise, in writing, within 24 months of the date my offer was initially received.

**I/we understand what will happen if I/we fail to meet the terms of my/our offer (e.g. default)**

k) If I/we fail to meet any of the terms and conditions of the offer and the offer defaults, then the IRS may do the following:

- immediately file suit to collect the entire unpaid balance of the offer;
- immediately file suit to collect an amount equal to the original amount of the tax debt as liquidating damages, minus any payment already received under the terms of this offer;
- disregard the amount of the offer and apply all amounts already paid under the offer against the original amount of the tax debt;
- file suit or levy to collect the original amount of the tax debt, without further notice of any kind.

00433

APR-15-2014  15:26                                                                                        P.04

| Section 4 | Terms *(Continued)* |
| --- | --- |

The IRS will continue to add interest as provided in IRC Section § 6601 on the amount the IRS determines is due after default. The IRS will add interest from the date the offer is defaulted until I/we completely satisfy the amount owed.

**I/we understand the IRS may file a Notice of Federal Tax Lien on my/our property**

l) The IRS may file a Notice of Federal Tax Lien to protect the Government's interest during the offer investigation. If the offer is accepted, the tax lien will be released when the terms of the offer agreement are satisfied.

**I/we authorize the IRS to contact relevant third parties in order to process my/our offer**

m) I/we understand that IRS employees may contact third parties in order to respond to this request, and I/we authorize the IRS to make such contacts. Further, in connection with this request, by authorizing the IRS to contact third parties, I/we understand that I/we will not receive notice of third parties contacted as is otherwise required by IRC § 7602(c).

| Section 5 | Explanation of Circumstances |
| --- | --- |

### THIS SECTION MUST BE COMPLETED.

Explain why you believe the tax is incorrect. Note: *You may attach additional sheets if necessary. Please include your name and SSN and/or EIN on all additional sheets or supporting documentation.*

See attached explanation of circumstances letter.

_____

_____

_____

_____

_____

_____

| Section 6 | Mandatory Signature(s) |
| --- | --- |

**Taxpayer Attestation: If I/we submit this offer on a substitute form, I/we affirm this form is a verbatim duplicate of the official Form 656-L, and I/we agree to be bound by all the terms and conditions set forth in the official Form 656-L. Under penalties of perjury, I/we declare that I/we have examined this offer, including accompanying schedules and statements, and to the best of my/our knowledge and belief, it is true, correct and complete.**

| Signature of Taxpayer | Daytime Telephone Number | Date *(mm/dd/yyyy)* |
| --- | --- | --- |
|  | ( ) | 27-MAR-14 |
| Signature of Taxpayer |  | Date *(mm/dd/yyyy)* |

| Section 7 | Application Prepared by Someone Other than the Taxpayer |
| --- | --- |

If this application was prepared by someone other than you (the taxpayer), please fill in that person's name and address below.

Name

| Address *(if known) (Street, City, State, ZIP code)* | Daytime Telephone Number |
| --- | --- |
|  | ( ) |

| Section 8 | Paid Preparer Use Only |
| --- | --- |

Signature of Preparer

| Name of Preparer | Date *(mm/dd/yyyy)* | Preparer's CAF no. or PTIN |
| --- | --- | --- |
| Kim D. Pavlik | 3/21/14 |  |
| Firm's Name, Address, and ZIP Code | | Daytime Telephone Number |
| Andrews Hooper Pavlik PLC 5300 Gratiot Rd.  Saginaw, MI 48638 | | ( ) |

**Include a valid, signed Form 2848 or 8821 with this application or a copy of a previously filed form.**

Catalog Number 47516R                    www.irs.gov                    Form **656-L** (Rev. 2-2012)

00434

James D. Pieron Jr.



**Statement Regarding Offer In Compromise**

Taxpayer James Pieron Jr. ("Pieron") was a resident in Switzerland from approximately

1998 to 2010. During that time, he founded a company called JDFX Holding AG ("JDFX") that

specialized in trading technologies. In 2007 he sold a 20% stake in JDFX for $10 million with an

effective date of January 1, 2008. In a separate transaction, he sold an additional 15% stake for

$5.25 million with an effective date of January 1, 2009.

During the period of 2007 through 2009, Pieron loaned a substantial portion of sale

proceeds to JDFX as working capital. In Switzerland, there is no capital gain tax for Swiss

nationals. For that reason, the sale and loan vehicles were properly structured. However, because

Pieron was a US citizen first and Swiss resident second, the selling of corporate shares should

have been made by the corporation, requiring no loans from Pieron. Because Pieron received no

tax advice regarding the US impact, he sold his shares individually and then loaned a substantial

portion of the proceeds back to JDFX.

In late 2009, the owner of Market Shot, namely Trevor Cook ("Cook"), was implicated in

a Ponzi scheme. Cook was later indicted and convicted related to the Ponzi scheme. Because

Cook owned 35% of JDFX, when the Ponzi scheme became public knowledge, banks and

liquidity providers began terminating their relationships with JDFX. Shortly thereafter, JDFX

was liquidated and Pieron's loans and reinvested capital were lost. Pieron was not accused,

indicted, or prosecuted for any wrong doing.

Original returns were filed showing gains on JDFX stock in 2008 and in 2009.

Subsequently, amended returns were filed in 2012 adjusting the JDFX gains and recording a

theft loss that was an indirect result of the Ponzi scheme.

The income was reported under the claim of right doctrine.

Under the claim of right doctrine a taxpayer who receives any income under a claim of right that is free of restrictions must include that income in gross income for the year of receipt. [1] It does not matter that the taxpayer is not entitled to retain the income and might be obligated to return it. [2]

The Supreme Court has stated that if a taxpayer who included a receipt in gross income under the claim of right doctrine is required to repay it in a subsequent taxable year, the taxpayer is entitled to a deduction in the year of repayment. [3]

Because the deduction in the year of repayment of an item previously included in gross income under the claim of right doctrine might not provide as much a reduction in tax liability as the tax generated by the previous income inclusion, Congress enacted §1341 in order to mitigate that effect. [4] Under §1341, taxpayers are permitted to forgo the deduction in the year of repayment so that they can reduce tax liability for that year by the amount of tax liability generated by the previous inclusion. [5]

In order to obtain the benefits of §1341, the following five requirements must be satisfied:

- the item was included in gross income in a previous taxable year: [6]
- the inclusion occurred because the taxpayer appeared to have an unrestricted right to the item: [7]
- in a later year, the taxpayer is entitled to a deduction: [8]
- the deduction is allowed because it was established after the close of the year of inclusion that the taxpayer did not have an unrestricted right to the item; [9] and
- the amount of the deduction exceeds $3,000. [10]

Pieron met all of these requirements.

If the requirements of §1341 are met, the taxpayer must use one of the two alternative tax computation methods.[11] The application of §1341 is mandatory if its requirements are met.[12] The taxpayer's tax liability for the year of repayment is the lesser of the tax liabilities computed under §1341(a)(4) or (5).[13]

- Under §1341(a)(4), the taxpayer computes tax liability by applying the applicable tax rates to taxable income computed with the deduction for repayment taken into account.[14]

- Under §1341(a)(5), the taxpayer computes tax liability through a three-step process. First, tax liability for the year of repayment is computed without taking into account the deduction for repayment.[15] Second, the taxpayer computes the decrease in tax liability for the year of inclusion that would result solely from excluding from gross income for that year an amount of income equal to the repayment subject to limitation described in III, C, 2, d. (3), (b) through (e).[16] Third, the taxpayer computes tax liability for the year of repayment by subtracting the result computed in the second step from the result computed in the first step.[17]

The applicability of these rules to losses as a result of a Ponzi scheme were discussed in an article by Agatha Jeffers, Ph.D.,CPA, and Leonard J. Lauricella, L.L.M., CPA in the May 2009 issue of Practical Tax Strategies. Below are some excerpts from that article emphasis added:

> In an effort to ease the burden on investors, some of whom have lost their life savings, and to facilitate the administration of the claim for refunds of taxes, in mid-March the IRS issued Rev. Rul. 2009-9[18] and elective Rev. Proc. 2009-20.[19] The Ruling provides guidance on many of the contentious tax issues, and the Procedure contains a safe harbor

for qualified investors as to the timing, character, and deduction amount, provided the
taxpayer complies with the requirements.

Qualified investors are taxpayers:

- Who otherwise are able to deduct theft losses under Section 165.
- Who had no prior actual knowledge of the fraudulent nature of the Madoff scheme.
- With respect to whom the scheme is not a tax shelter.
- Who transferred cash or property directly to Madoff rather than through a fund or
  other entity.

The first question typically addressed was whether the loss from the Madoff Ponzi
scheme could be treated as a theft loss. Section 165(a) provides that a deduction is
allowed for any loss that is not covered by insurance. Theft losses include- but are not
necessarily limited to-larceny, embezzlement, and robbery.

Whether a theft has occurred is determined under state law.

The Procedure goes on to describe cases where theft characterization would not be
challenged. This includes, for example, the situation of a lead figure being charged under
state or federal law with fraud, embezzlement, or similar crimes that, if proven, would
meet the definition of theft.

**Timing of the deduction.** The next question to be addressed was the timing of the
deduction.

Given the complicated nature of the Ponzi scheme; the significant possibility that claims for
recovery would be made from the government; and that lawsuits would be filed against the
Madoff organization, the auditors, and other investment advisors who may have channeled
investors' money into the Madoff organization, the IRS could have reasonably asserted that

APR-15-2014 15:28                                                                                                    P.10

investors (on whom the burden falls) could not prove with reasonable certainly what amount they would definitely not recover.

Initially there was some thought that the IRS might argue strenuously that the Madoff scheme did not involve a theft loss, and that the victims had a worthless security deduction under Section 165(g). This unfavorable result would have the losses treated as capital losses. Individuals can deduct capital losses, [20] but only against capital gains and up to $3,000 ($1,500 for married filing separately) of excess capital losses against ordinary income annually.[21]

*Once again the Ruling resolves this in a taxpayer-friendly manner as an ordinary loss.*

The most likely choices for a taxpayer to recoup the tax paid on the phantom income were thought to involve filing an amended return to remove the income and request a tax refund, or attempting to get relief under the claim of right doctrine. Implications of these two alternatives are discussed below, but the Ruling and the Procedure made the limitations period expiration date less important.

The Ruling and the Procedure provide for straightforward relief by allowing a phantom income reported to investors in 2008 to be excluded from the 2008 return and for phantom income for all prior years (even closed years) to be added to the taxpayer's adjusted basis and used in determining the theft loss. The Procedure requires the taxpayer to agree not to amend prior returns to claim a refund on the phantom income.

*Claim of right doctrine. Another possible course of action, which did not have a 4/15/09 deadline, was to attempt to use the claim of right doctrine.[22] This doctrine is normally employed when a taxpayer receives income and pays tax on it, but in a later year the taxpayer is required*

*to pay the money back because it is determined that he or she was not entitled to it in the first place.*

*How would this be applied to the Madoff investors? The argument was that the taxpayers included the phantom income in the earlier years and paid tax on it. Now because of the theft, they have in effect paid the money back.* There are a couple benefits to this argument. Practitioners who thought that the IRS would contest this extension of the claim of right doctrine to the Madoff facts were correct. The Ruling sets forth the IRS's argument about why the claim of right doctrine does not apply in this case. Section 1341(a)(2) requires that the deduction must arise because the taxpayer was under an obligation to restore the income. The Ruling concludes that when an investor incurs a loss from criminal fraud or embezzlement in a transaction entered into for profit, the investor's theft loss deduction does not arise from an obligation on the investor to restore the income.

Taxpayers electing under the Procedure must agree not to pursue a refund based on a claim of right. All other taxpayers can anticipate the IRS will contest any refund based on the doctrine, except possibly amounts repaid under the fraudulent conveyance statute as discussed below. *If investors are required to return any funds received, a good argument can be made for applying the above-discussed claim of right doctrine in the year of repayment. Clearly the taxpayer will make the payment only if obligated to do so. Thus, the IRS argument stated above in the phantom income situation would not seem to be applicable.* If the taxpayer chooses to deduct the repayments in the year made, there is an issue as to the character of the deduction. Under the Arrowsmith doctrine,[23] the character of the repayments will track the character of the income reported in the earlier years. Thus if the income in the earlier years was, for example, short-term capital gains, the deduction will be short-term capital losses.

No capital loss carryback is available, however, for individuals. In this case, the claim of right credit in the year of repayment might reduce the adverse impact of the repayments being characterized as capital losses. *As indicated above, election under the Procedure requires taxpayers to agree that they will not apply the alternative computation in Section 1341 with respect to the theft deduction. However, this presumably should not apply to payments that the taxpayer is required to make under the fraudulent conveyance or similar rules.*

**Income Tax-Ponzi Scheme Clawback Repayments:** The IRS issued FAQs regarding the tax treatment of clawback repayments for amounts previously reported as income from a Ponzi scheme. The term *clawback* describes the power of a trustee to recoup profits earned by an innocent investor in a Ponzi scheme that should have been available as part of a bankruptcy estate. The FAQs indicate that the repayments are not additional theft loss deductions, but are repayments of claim of right income that result in either a nontheft investment loss deduction or a credit calculated under IRC Sec. 1341, whichever results in lower tax.

The trustee in the Cook Ponzi scheme has continued to attempt to recover monies from various parties. If Pieron still had any liquid assets in 2011, the trustee would have tried to claw those funds back. Because Pieron had virtually no liquid assets, the debt was forgiven. We have re-calculated Pieron's adjusted tax for the years 2008-2011, including the forgiveness of debt income, and excluding the JDFX gains under the claim of right rules.

Based on the claim of rights calculations, Pieron's tax obligations for 2008 through 2011 total $38,601. His withholding and other tax payments related to those years totaled $36,283. Based on the above, there is substantial doubt as to Pieron's tax liability for the years 2008 through 2011. This is summarized below. A more complete analysis is attached.

|  | Tax Liability As Last Amended | Tax Liability As Adjusted Under Section 1341 |
|---|---|---|
| 2008 | $ 365,082 | $ 8,690 |
| 2009 | 74,272 | — |
| 2010 | 5,782 | — |
| 2011 | — | 29,911 |
| **TOTAL** | $445,136 | 38,601 |
| **TOTAL WITHHOLDINGS AND PAYMENTS** | | 36,283 |
| **NET TOTAL TAX DUE** | | $2,318 |

Pieron is offering $30,000 in full settlement of his tax obligations through 2011 under this offer in comprise request.

00443

1. North American Oil Consol. Co. v. Burnet, 286 U.S. 417 (1932).

2. Id.

3. North American Oil Consol. Co. v. Burnet, 286 U.S. 417 (1932) (dictum).

4. See H.R. Rep. No. 1337, 83d Cong., 2d Sess., A294.

5. Id.

6. §1341 (a)(1).

7. Id.

8. §1341(a)(2).

9. Id.

10. §1341(a)(3).

11. §1341(a)(4), (5).

12. §1341(a).

13. Id.

14. § 1341(a)(4).

15. §1341(a)(5)(A).

16. Tax liability for purpose of §1341(a)(5)(B) includes alternative minimum tax as well as regular tax. FSA 200129001; CCA 200808019.

17. §1341(a)(5).

Reference related to Practical Tax Strategies article

18. 2009-14 IRB 735.

19. 2009-14 IRB 749.

20. Reg. 1. 165-8(d)

00444

Tax overpayment/underpayment summary
James D. Pieron Jr.

12/31/2011

| | Returns as Last Filed | | Returns as Recalculated under Section 1341 | | | |
|---|---|---|---|---|---|---|
| | Tax liability | | Tax liability | Section 1341 Adjustment | | Net Tax Due |
| 2008 | $ 365,082 | | $ 8,690 | $ 356,392 | | |
| 2009 | 74,272 | | - | 74,272 | | |
| 2010 | 5,782 | | - | 5,782 | | |
| | 445,136 | | 8,690 | 436,446 | | |

| | |
|---|---|
| 2011 Tax Liability as Last filed | $ - |
| 2011 Tax Liability per this Amended Return | 29,911 |
| 2011 TAX LIABILITY AS ADJUSTED | 29,911 |
| 2011 Tax Payments | 17,196 |
| Balance Due | 12,715 |

| | Returns as Recalulated under Section 1341 Per Above | Taxes Paid | | | Credit under Section 1341 Net of Amounts Not Paid | |
|---|---|---|---|---|---|---|
| | Tax | Withholding | Installment Agreement | Total | Net Credit | |
| 2008 | $ 8,690 | | $ 9,000 | $ 9,000 | $ (310) | |
| 2009 | - | $ - | - | - | - | |
| 2010 | - | 10,087 | - | 10,087 | (10,087) | |
| | | | | | 10,397 | (10,397) |

NET DUE for 2008-2011    $ 2,318

APR-15-2014 15:30           P.16

2011 1040x amended return detail
James O. Pieron Jr.

12/31/2011

| | 2008 | 2009 | 2010 | 2008-2010 | 2011 | TOTAL |
|---|---|---|---|---|---|---|
| AS AMENDED | | | | Subtotal | | |
| WAGES | 90,995 | 54,002 | 52,500 | | 90,000 | |
| Exclusion | (87,600) | (54,002) | - | | - | |
| Net Wages | 3,395 | 0 | 52,500 | | 90,000 | |
| Interest | - | - | 644 | | - | |
| CG/CL | | | | | | |
| JP Morgan - Sec 1256 | 1,046,617 | - | - | | - | |
| Saxobank - Sec 1256 | (600,141) | (33,919) | 249,330 | | (3,000) | |
| JDFX | 9,289,871 | 5,250,000 | - | | - | |
| IB Technolgies 1244 Loss | - | - | - | | (50,000) | |
| Limited - C/O | (295,024) | - | - | | - | |
| Total Sch D | 9,441,323 | 5,216,081 | 249,330 | | (53,000) | |
| ILQ - Sch E | - | - | (183,977) | | (183,705) | |
| Theft Loss | (7,008,051) | (4,712,804) | - | | - | |
| AGI - As adjusted | 2,436,067 | 503,277 | 118,497 | 3,057,841 | (146,705) | 2,911,136 |
| Tax based on 1st amended return | 365,082 | 74,272 | 5,782 | 445,136 | 0 | 445,136 |

AMENDED RETURNS, ADJUSTED AS FOLLOWS:

*NO THEFT LOSS, JDFX GAIN EXCLUDED FOR THE PURPOSES OF SECTION 1341 CALCULATION

| | 2008 | 2009 | 2010 | | 2011 | |
|---|---|---|---|---|---|---|
| WAGES | 90,995 | 54,002 | 52,500 | | 90,000 | |
| Exclusion | (87,600) | (54,002) | - | | - | |
| Net Wages | 3,395 | 0 | 52,500 | | 90,000 | |
| Interest | - | - | 644 | | - | |
| CG/CL | | | | | | |
| JP Morgan - Sec 1256 | 1,046,617 | - | - | | - | |
| Saxobank - Sec 1256 | (600,141) | (33,919) | 249,330 | | (3,000) | |
| JDFX - Gain | 9,289,871 | 5,250,000 | - | | - | |
| JDFX - Gain Disregarded - IRC 1341 claim of right | (9,289,871) | (5,250,000) | - | | - | |
| Komplique Capital Loss (n/a) | - | - | - | | - | |
| IB Technolgies 1244 Loss | - | - | - | | (50,000) | |
| Limited - C/O | (295,024) | 30,919 | (249,330) | | 0 | |
| Total Sch D | 151,452 | (3,000) | 0 | | (53,000) | |
| ILQ - Sch E | - | - | (183,977) | | (183,705) | |
| Theft Loss | - | - | - | | - | |
| AGI as adjusted | 154,847 | (3,000) | (130,833) | | (146,705) | (125,691) |
| | | | | | | |
| Debt Forgiveness Income added to tax year 2011 | - | - | - | | 300,000 | |
| AGI after Debt Forgiveness Income | 154,847 | 0 | (130,833) | | 153,295 | (125,691) |
| | | | | | | |
| Total Tax after credits | 8,690 | 0 | 0 | 8,690 | 29,911 | 38,601 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Total Tax liability 2008-2010 No JDFX gain | | | | 8,690 | 29,911 | 38,601 |
| Total Tax liability 2008-2010 with JDFX gain | | | | 445,136 | - | 445,136 |
| Difference reported as IRC 1341 payments (1) | | | (1) | 436,446 | 29,911 | 406,535 |
| | | | | | | |
| 2008 federal withheld | | | | - | - | - |
| 2009 federal withheld | | | | - | - | - |
| 2010 federal withheld | | | | 10,087 | - | 10,087 |
| 2011 federal withheld (2) | | | | n/a (2) | 17,196 | 17,196 |
| | | | | 10,087 | 17,196 | 27,283 |
| Installment agreement payments | | | | | | |
| 5/2012-10/2012 (1,500 for 6 months) | | | | 9,000 | - | 9,000 |
| Total W/H and installment payments | | | | 19,087 | 17,196 | 36,283 |
| IRC 1341 claim of right payments | | | | 436,446 | - | 436,446 |
| Total payments incl. IRC 1341, WH and installments | | | | 455,533 | 17,196 | 472,729 |
| Balance due (overpaid) after payments | | | | | | |
| based on actual tax liability | | | | (446,843) | 12,715 | (434,128) |
| Total Tax liability difference 2008-2010 with JDFX gain | | | | 436,446 | | 436,446 |
| Due/(over paid) | | | | (10,397) | 12,715 | 2,318 |

| | 2007 | 2008 | 2009 | 2010 | 2011 | TOTAL |
|---|---|---|---|---|---|---|
| **RETURNS AS ORIGINALLY FILED** | | | | | | |
| WAGES | 181,907 | 90,995 | 54,002 | 52,500 | 90,000 | |
| Exclusion | - | (87,600) | (54,002) | - | - | |
| Net Wages | 181,907 | 3,395 | 0 | 52,500 | 90,000 | |
| CG/CL | | | | | | |
| JP Morgan - Sec 1256 | - | - | - | - | - | |
| Saxobank - Sec 1256 | (298,024) | (600,141) | (33,919) | 257,084 | (3,000) | |
| JDFX | - | 2,671,583 | 1,173,674 | - | - | |
| IB Technolgies 1244 Loss | - | - | - | - | (50,000) | |
| Limited - C/O | 295,024 | (295,024) | (295,024) | - | - | |
| Total Sch D | (3,000) | 1,776,418 | 844,731 | 257,084 | (53,000) | |
| ILQ - Sch E | - | - | - | - | (183,705) | |
| AGI | 178,907 | 1,779,813 | 844,731 | 304,584 | (146,705) | 2,961,330 |
| Tax per original return | 5,526 | 267,829 | 125,490 | 45,973 | - | 444,818 |
| | | | | | | |
| **AMENDED CHANGES** | | | | | | |
| Interest | - | - | - | 644 | - | |
| CG/CL | | | | | | |
| JP Morgan - Sec 1256 | - | 1,046,617 | - | - | - | |
| Saxobank - Sec 1256 | - | - | - | (2,754) | - | |
| JDFX | - | 6,618,288 | 4,076,326 | - | - | |
| IB Technolgies 1244 Loss | - | - | - | - | - | |
| Loss C/O correction | - | - | 295,024 | - | - | |
| Cap. Gain/Loss change | - | 7,664,905 | 4,371,350 | (2,754) | - | |
| ILQ - Sch E | - | - | - | (183,977) | - | |
| Theft Loss | - | (7,008,651) | (4,712,804) | - | - | |
| Changes | - | 656,254 | (341,454) | (186,087) | - | 128,713 |
| AGI Per original return | 178,907 | 1,779,813 | 844,731 | 304,584 | (146,705) | 2,961,330 |
| AGI - As adjusted | 178,907 | 2,436,067 | 503,277 | 118,497 | (146,705) | 3,090,043 |
| | | | | | | |
| | | | | | | |
| **AS AMENDED (FIRST AMENDED RETURNS)** | | | | | | |
| WAGES | 181,907 | 90,995 | 54,002 | 52,500 | 90,000 | |
| Exclusion | - | (87,600) | (54,002) | - | - | |
| Net Wages | 181,907 | 3,395 | 0 | 52,500 | 90,000 | |
| Interest | - | - | - | 644 | - | |
| CG/CL | | | | | | |
| JP Morgan - Sec 1256 | - | 1,046,617 | - | - | - | |
| Saxobank - Sec 1256 | (298,024) | (600,141) | (33,919) | 249,330 | (3,000) | |
| JDFX | - | 9,289,871 | 5,250,000 | - | - | |
| IB Technolgies 1244 Loss | - | - | - | - | (50,000) | |
| Limited - C/O | 295,024 | (295,024) | - | - | - | |
| Total Sch D | (3,000) | 9,441,323 | 5,216,081 | 249,330 | (53,000) | |
| ILQ - Sch E | - | - | - | (183,977) | (183,705) | |
| Theft Loss | - | (7,008,651) | (4,712,804) | - | - | |
| AGI - As adjusted | 178,907 | 2,436,067 | 503,277 | 118,497 | (146,705) | 3,090,043 |
| Tax per amended return | 5,526 | 365,082 | 74,272 | 5,782 | 0 | 445,136 |

APR-15-2014  15:30                                                                                                    P. 18

## AS AMENDED, ADJUSTED AS FOLLOWS:
* ALL THEFT LOSS IN 2009

|                          | 2007       | 2008        | 2009         | 2010      | 2011      | TOTAL     |
|--------------------------|-----------|-------------|--------------|-----------|-----------|-----------|
| WAGES                    | 181,907   | 90,995      | 54,002       | 52,500    | 90,000    |           |
| Exclusion                | -         | (87,600)    | (54,002)     | -         | -         |           |
| Net Wages                | 181,907   | 3,395       | 0            | 52,500    | 90,000    |           |
| Interest                 | -         | -           | -            | 644       | -         |           |
| CG/CL                    |           |             |              |           |           |           |
| JP Morgan - Sec 1256     | -         | 1,046,617   | -            | -         | -         |           |
| Saxobank - Sec 1256      | (298,024) | (600,141)   | (33,919)     | 249,330   | (3,000)   |           |
| JDFX                     | -         | 9,289,871   | 3,935,878    | -         | -         |           |
| IB Technolgies 1244 Loss | -         | -           | -            | -         | (50,000)  |           |
| Limited - C/O            | 295,024   | (295,024)   | -            | -         | -         |           |
| Total Sch D              | (3,000)   | 9,441,323   | 3,901,959    | 249,330   | (53,000)  |           |
| ILO - Sch E              | -         | -           | -            | (183,977) | (183,705) |           |
| Theft Loss               |           |             | (10,407,333) |           |           |           |
| AGI as adjusted          | 178,907   | 9,444,718   | (6,505,374)  | 118,497   | (146,705) | 3,057,841 |
| Loss Carryback           | (178,907) | (6,326,467) | 6,505,374    | -         | -         |           |
| AGI after Loss Carryback | 0         | 3,118,251   | 0            | 118,497   | (146,705) | 3,090,043 |
| Tax per amendment scenario | -       | 467,410     | -            | 5,782     | -         | 473,192   |

## AS AMENDED, ADJUSTED AS FOLLOWS:
* ALL THEFT LOSS IN 2009
* FIRST JDFX SALE IN 2007 vs 2008

|                          | 2007        | 2008      | 2009         | 2010      | 2011      | TOTAL     |
|--------------------------|-------------|-----------|--------------|-----------|-----------|-----------|
| WAGES                    | 181,907     | 90,995    | 54,002       | 52,500    | 90,000    |           |
| Exclusion                | (85,700)    | (87,600)  | (54,002)     | -         | -         |           |
| Net Wages                | 96,207      | 3,395     | 0            | 52,500    | 90,000    |           |
| Interest                 | -           | -         | -            | 644       | -         |           |
| CG/CL                    |             |           |              |           |           |           |
| JP Morgan - Sec 1256     | -           | 1,046,617 | -            | -         | -         |           |
| Saxobank - Sec 1256      | (298,024)   | (600,141) | (33,919)     | 249,330   | (3,000)   |           |
| JDFX                     | 9,289,871   | -         | 3,935,878    | -         | -         |           |
| IB Technolgies 1244 Loss | -           | -         | -            | -         | (50,000)  |           |
| Limited - C/O            | -           | -         | -            | -         | -         |           |
| Total Sch D              | 8,991,847   | 446,476   | 3,901,959    | 249,330   | (53,000)  |           |
| ILO - Sch E              | -           | -         | -            | (183,977) | (183,705) |           |
| Theft Loss               | -           | -         | (10,407,333) | -         | -         |           |
| AGI as adjusted          | 9,088,054   | 449,871   | (6,505,374)  | 118,497   | (146,705) | 3,004,343 |
| Loss Carryback           | (6,505,374) | -         | -            | -         | -         |           |
| AGI after Loss Carryback | 2,582,680   | 449,871   | -            | 118,497   | (146,705) | 3,004,343 |
| Tax per amendment scenario | 359,707   | 67,526    | -            | 5,782     | -         | 433,025   |

00448

**AS AMENDED, ADJUSTED AS FOLLOWS (SECOND AMENDED RETURNS):**
* ALL THEFT LOSS IN 2009
* FIRST JDFX SALE IN 2007 vs 2008
* KOMPLIQUE LOSS OF $2,132,958 AS SEPARATE
  CAPITAL LOSS vs PART OF THEFT LOSS

| | | | | | | |
|---|---|---|---|---|---|---|
| **WAGES** | 181,907 | 90,995 | 54,002 | 52,500 | 90,000 | |
| Exclusion | (85,700) | (87,600) | (54,002) | - | - | |
| Net Wages | 96,207 | 3,395 | 0 | 52,500 | 90,000 | |
| **Interest** | - | - | - | 644 | - | |
| **CG/CL** | | | | | | |
| JP Morgan - Sec 1256 | - | 1,046,617 | - | - | - | |
| Saxobank - Sec 1256 | (298,024) | (600,141) | (33,919) | 249,330 | (3,000) | |
| JDFX | 9,289,871 | - | 3,935,878 | - | - | |
| IB Technolgies 1244 Loss | - | - | - | - | (50,000) | |
| Komplique Loss | - | - | (2,132,958) | - | - | |
| Limited - C/O | - | - | - | - | - | |
| Total Sch D | 8,991,847 | 446,476 | 1,769,001 | 249,330 | (53,000) | |
| **ILQ - Sch E** | - | - | - | (183,977) | (183,705) | |
| **Theft Loss** | - | - | (8,274,375) | - | - | |
| AGI as adjusted | 9,088,054 | 449,871 | (6,505,374) | 118,497 | (146,705) | 3,004,343 |
| | | | | | | |
| Loss Carryback | (6,505,374) | - | - | - | - | |
| AGI after Loss Carryback | 2,582,680 | 449,871 | - | 118,497 | (146,705) | 3,004,343 |
| Tax per amendment scenario | 359,707 | 84,752 | - | 5,782 | - | 450,241 |

**SECOND AMENDED RETURNS, ADJUSTED AS FOLLOWS:**
*NO THEFT LOSS, JDFX GAIN EXCLUDED FOR THE PURPOSES OF SECTION 1341 CALCULATION*

| | | | | | | |
|---|---:|---:|---:|---:|---:|---:|
| WAGES | 181,907 | 90,995 | 54,002 | 52,500 | 90,000 | |
| Exclusion | (85,700) | (87,600) | (54,002) | - | - | |
| Net Wages | 96,207 | 3,395 | 0 | 52,500 | 90,000 | |
| Interest | - | 3,395 | - | 644 | - | |
| CG/CL | | | | | | |
| JP Morgan - Sec 1256 | - | 1,046,617 | - | - | - | |
| Saxobank - Sec 1256 | (298,024) | (600,141) | (33,919) | 249,330 | (3,000) | |
| JDFX - Gain | 9,289,871 | - | 5,250,000 | - | - | |
| JDFX - Gain Disregarded | (9,289,871) | - | (5,250,000) | - | - | |
| Komolique Capital Loss | - | - | (2,132,958) | - | - | |
| IB Technolgies 1244 Loss | - | - | - | - | (50,000) | |
| Limited - C/O | 295,024 | (295,024) | 2,163,877 | (249,330) | 0 | |
| Total Sch D | (3,000) | 151,452 | (3,000) | 0 | (53,000) | |
| ILQ - Sch E | - | - | - | (183,977) | (183,705) | |
| Theft Loss | - | - | - | - | - | |
| AGI as adjusted | 93,207 | 154,847 | (3,000) | (130,833) | (146,705) | (32,484) |
| | | | | | | |
| Debt Forgiveness Income | - | - | - | - | 400,000 | |
| AGI after Debt Forgiveness Income | 93,207 | 154,847 | 0 | (130,833) | 253,295 | (32,484) |
| | **2007** | **2008** | **2009** | **2010** | **2011** | **TOTAL** |
| Total Tax after credits | 0 | 8,690 | 0 | 0 | 63,712 | 72,402 |

Total Tax liability 2007-2011    72,402

| | |
|---|---:|
| 2007 federal withheld | 0 |
| 2008 federal withheld | 0 |
| 2009 federal withheld | 0 |
| 2010 federal withheld | 10,087 |
| 2011 federal withheld | 17,196 |
| | 27,283 |
| Installment agreement payments | |
| 5/2012-10/2012 | |
| 1,500 a mo for 6 months | 9,000 |
| W/H and installment payments | 36,283 |
| | |
| Balance due (overpaid) after payment | 36,119 |

00450