UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | Case 1:18-cr-20489 |
| Plaintiff, | § § | |
| v. | § § | |
| JAMES D. PIERON, JR., | § § § | |
| Defendant. | § | |

**DEFENDANT'S RESPONSE IN OPPOSITION
TO UNITED STATES' MOTION IN LIMINE**

Defendant James D. Pieron, Jr., through counsel, responds as follows to the United States Of America's Motion In Limine To Exclude Evidence Of Defendant's Prior Military And Law Enforcement Service, Defendant's Belated Tax Payments, Defendant's Claim Of Victimization From A Ponzi Scheme, And His Claim Of Right Doctrine. (ECF # 36).

### I.  BACKGROUND OF GOVERNMENT FILING

Waiting until literally the eve of trial, the Government has filed a motion in limine that asks this Court to decide disputed factual issues in its favor that would, if they are successful, deny Defendant his Sixth Amendment right to have the jury determine the issues. The Government seeks to preclude the jury from learning of James Pieron's background, prevent him from introducing evidence that he continued to make payments to the IRS throughout the relevant time period, and appears to want to eliminate, or severely limit, the requirement that they prove a tax bill was actually due and owing.

The Government has ignored this Court's Order that counsel be prepared to discuss "anticipated evidentiary issues" at the Final Pretrial Conference (ECF # 12; Criminal Trial

Notice), has provided the Court with an incomplete and inaccurate statement of the facts, and has failed to provide the Court with meaningful citations of authority for the actions it is requesting. The motion should be denied.

## II. FACTUAL BACKGROUND

The factual background to this matter is lengthy and, at times, complicated. James Pieron's counsel has neither the time nor inclination to provide a detailed factual statement. However, some information is provided in response to the Government's positions.

James enlisted in the United States Army after graduating from high school. He spent five years as an enlisted man during Desert Storm, mostly in Germany, and was honorably discharged as a non-commissioned officer. While in the service, he matured, and became proficient in working on high-end government computer systems. James was and is proud of his country and proud of his service to his country.

After his military service, James attended Central Michigan University and worked as a contractor on a joint venture project between the Bureau of Criminal Investigation, the Federal Bureau of Investigation, and the Ohio Attorney General to create their first Automated Fingerprint Identification System (AFIS). James received a letter of recommendation from his work with the Ohio AG.

After graduation James returned to Europe and obtained employment with financial institutions in Switzerland utilizing the computer skills he learned in the military. Over time James became knowledgeable in technical aspects of derivative trading. He used this knowledge to develop algorithms to detect and manage derivative price manipulation. During his time in Switzerland, James filed and paid tax for every year in which he was a resident.

James eventually perfected his algorithms to a point where, he believed, they could be

marketed & sold. In 2005 he began presenting his ideas to venture capitalist and investors using the brand name JDFX.

James gave dozens of presentations and by the end of 2006 he had received 2 offers to invest in JDFX. Also at that time, a Chicago firm sent their largest client, Trevor Cook, to Switzerland to meet with James.

Cook signaled he was very interested and sent James a non-refundable deposit. After consideration, James and his team decided to move forward with Cook. Over a four-year period, Cook invested approximately $15 million in JDFX and James' technology saved Cook tens of millions in trading costs.

In 2009 James began to move his operations to the United States for several reasons. Firstly, to save costs – the cost of operations in Switzerland was extremely high. Secondly, James' university advisor was now the chairman of the Computer Science department and promised to provide James with hand-picked University talent. Thirdly, the State of Michigan, who's unemployment rate was the highest in two decades, solicited James with the prospect of low interest loans in exchange for job creation.

With the U.S. move in progress, news of Cook being involved in a Ponzi Scheme surfaced. The news resulted in the immediate termination of JDFX's prime brokerage account with Deutsche Bank, its credit lines with over a dozen money center banks, and its clearinghouse. Shortly thereafter, James lost his primary customer, chief programmer & partner, key employees, and operational vendors. James' own brother left the firm to work for a competitor.

Now in the United States, James was required to start from scratch while producing thousands of documents for the Cook receiver, as well as managing his reputation which is now tied to Cook indefinitely.

In spring of 2010, he found a defunct brokerage from Florida and moved it to Michigan. Over the next four years and despite the State of Michigan never delivering on its promise of low interest loans, James created over 50 jobs in mid-Michigan and was awarded the mid-Michigan Entrepreneur of the Year in 2011.

James' also, with his girlfriend at the time, restarted a fashion business from Switzerland that specialized in swimwear. The company, named Komplique, launched its first collection and was chosen by Miss America to be worn by all 53 states & providences for the Miss America pageant 2012. Although the company had immediate recognition, James was never able to get the company profitable and compete with the larger and well-known brands. James also underestimated the marketing cost of fashion – simple magazine ads are in excess of $1 million per year.

Prior to permanently returning to the United States, James learned that he might be required to file and pay taxes in the United States and Switzerland simultaneously for the same income. He took steps to file returns and pay his taxes. Treatment of the money received from Trevor Cook, coupled with the complexity of the returns, resulted in difficulty in finding tax advisors who were willing to provide services.

James hired American Tax Services in Chicago to prepare returns 2007-2010 and the returns were filed in 2011. Prior to filing, James was concerned that the preparer was not accurately doing the returns. However, James was told it was best to file them and then, if necessary, to amend the returns.

James eventually retained CPA Kim Pavlik and his firm to, among other things, review the returns. Amended returns, prepared by Mr. Pavlik, were filed in 2012. The amended returns, in total, increased the amounts that James owed to the Internal Revenue Services. A request for a payment plan, accurately valuing James' companies, was also sent to the Internal Revenue

Service. In 2014, another amended return was prepared by Mr. Pavlik and submitted by James. This return involves calculations in several returns and concludes that James does not owe taxes as earlier reported on the 2008 and 2009 amended returns. A determination of the correctness of this position has repeatedly been sought from the Internal Revenue Service; this has never occurred.

Although James has been informed that he may owe no taxes for the years in question he has continued to make payments. In every year since filing returns in 2010 he has either made direct payments on these years or has overpaid on his withholding to allow for additional payments to the IRS. In total, he has paid all taxes, and 10 years interest & penalties that the IRS has claimed is owing- an

amount far in excess of what he may have owed.

### III. MILITARY AND LAW ENFORCEMENT BACKGROUND

The Government seeks to preclude evidence of James Pieron's military service and his former work for law enforcement for this country. Their position, basically, is "no thank you for your service." As might be expected, no case law is cited in support of this request. Rather, courts have traditionally allowed defendants to introduce evidence about their background. *See, e.g., United States v. Blackwell*, 853 F.2d 86 (2nd Cir. 1988); *Gov't of Virgin Islands v. Grant*, 775 F.2d 508, 513 (3rd Cir. 1985).

The Government's attempt to exclude evidence of Mr. Pieron's military service is particularly troublesome in this case. Among the false claims they have made is that he submitted an application stating he did not have a social security number and was not a United States citizen. (ECF #5, p.2, ¶ 4). Witnesses know that Mr. Pieron would never knowingly claim not to be a U.S. citizen, in part, because of his pride in his military service.

## IV. PAYMENTS TO THE IRS

The Government seeks to exclude payments made by James Pieron because they would "unfairly confuse and mislead the jury." *Motion In Limine, at 5*. However, the Government fails to provide any argument as to why this would be confusing or misleading.

The charge in this case is that Mr. Pieron committed evasion of taxes "[f]rom approximately April 2009 and continuing through the present." The larger payment occurred before the return of the indictment - within the period when he is claimed to have continued to evade his taxes. The smaller payment occurred shortly after the indictment was returned. Defendant surely is entitled to produce evidence of his payments during, as well as on or about, the time he allegedly committed the offense. No authority is cited that would hold otherwise.

Evidence of the payments should be admitted. The Government is free to argue what they will about the timing of the payments.

## V.     EVIDENCE OF THEFT LOSS AND/OR CLAIM OF RIGHT

The Government seeks to exclude evidence concerning the theft loss deduction taken on the 2012 tax filings and/or the claim of right deductions taken on the 2014 tax filings. Defendant's counsel concede they are somewhat confused by what it is the Government is seeking.

The 2012 tax filings are based, in part, on a theft-loss theory resulting from the losses that indirectly resulted to James Pieron from Trevor Cook's ponzi scheme involvement. The Government, while falsely asserting that there is no basis for this deduction, says that if their motion is granted they will not introduce evidence which they assert disputes the deduction.

Motion In Limine, at 6. This Faustian logic - lying to the jury because they won't understand the truth - is an unacceptable resolution. The Government may be willing to impose what they consider to be a fraudulent return but the defense cannot ethically or rationally accommodate them.

The 2014 tax filings are based, in part, on a claim-of-right theory. If the return is ultimately upheld, and tax experts believe it may be, James Pieron did not owe anything for 2008-2009. He has significantly overpaid for those years.

The returns prepared by Mr. Pavlik were, and continue to be, believed to best prepared in good faith and based upon sound accounting principles. No determination has been made as to the correctness of these returns.

The Government appears to ignore it's burden to prove, beyond a reasonable doubt, that an income tax was due from the defendant; that he committed an affirmative act evading, or attempting to evade payment; and that he acted willfully. James Pieron filed a return, prepared by an accredited accountant, determining that he had no taxes due for the years in question. It is the Government's burden to prove to the jury's satisfaction there was a tax due. If the Government attempts to meet this burden the defense is surely permitted to present evidence that contradicts the Government's position.

## VI. CONCLUSION

The Government's position appears to be that if something does not fit their theory it should not be admitted. The Government would have this Court decide factual issues that should be decided by the jury.

The tax returns that were filed are clearly relevant and admissible. Indeed, the Government does not appear to contend otherwise. Instead, they appear to be trying to argue

that evidence cannot be introduced in support of the returns– or, presumably, in support of showing that James Pieron acted in good faith in signing and filing the returns. The Government is asking this Court for some sort of ruling that would prevent the defense from contesting the essential elements of the case. This goes to the core of Mr. Pieron's Sixth Amendment right to a trial by jury and should be rejected.

    The Government's motion in limine should be denied.

Respectfully submitted on February 28, 2019

                              MINNS & ARNETT

s/ *Michael Louis Minns*
Michael Louis Minns
State Bar No. 14184300
mike@minnslaw.com
Ashley Blair Arnett
State Bar No. 24064833
Ashley@minnslaw.com
9119 S. Gessner, Suite 1
Houston, Texas 77074
Telephone: (713) 777-0772

s/ Kenneth Sasse
Kenneth R. Sasse  P24365
Local counsel for James Pieron, Jr.
ksasse11@gmail.com
27 E. Flint St., 2nd  Floor Lake Orion, Michigan 48362
Telephone: (248) 821-7325

## CERTIFICATE OF SERVICE

    I hereby certify that on February 28, 2019, I electronically filed the attached Response to the Government's Motion in Limine with the Clerk of the Court using the ECF system which will send notification of the filing to all other counsel of record included in the ECF system.

s/ *Ashley Blair Arnett*
Ashley Blair Arnett State
Bar No. 24064833
Ashley@minnslaw.com
9119 S. Gessner, Suite 1
Houston, Texas 77074
Telephone: (713) 777-0772
