```
 1                IN THE UNITED STATES DISTRICT COURT

 2                    EASTERN DISTRICT OF MICHIGAN

 3  UNITED STATES OF AMERICA          ) Bay City, Michigan
                                      ) March  7, 2019
 4      vs.                           ) 11:01 a.m.
                                      )
 5  JAMES D. PIERON, JR.,             )
                                      ) Case No. 18-20489
 6      Defendant.                    )
                                      )
 7  _____   )

 8             TRANSCRIPT OF TRIAL - VOLUME 7
          BEFORE THE HONORABLE THOMAS L. LUDINGTON
 9                UNITED STATES DISTRICT JUDGE

10  APPEARANCES:

11  For the Government:   JANET L. PARKER
                          JULES M. DEPORRE
12                        United States Attorney
                          Eastern District of Michigan
13                        101 First Street
                          Suite 200
14                        Bay City, MI 48708

15  For the Defendant:    MICHAEL L. MINNS
                          ASHLEY B. ARNETT
16                        Minns & Arnett
                          9119 South Gessner; Suite One
17                        Houston TX 77074

18  For the Defendant:    KENNETH SASSE
                          Attorney at Law
19                        27 E. Flint Street; 2nd Floor
                          Lake Orion, MI  48362
20                        (248) 821-7325

21
    Court Reporter:    Carol M. Harrison, RMR, FCRR
22                     1000 Washington Avenue
                       Bay City, MI  48708
23
            Proceedings reported by stenotype reporter.
24       Transcript produced by Computer-Aided Transcription.

25
```



## INDEX

Jury Verdict                                                                 9

```
 1                    P R O C E E D I N G S
 2            (At 11:01 a.m., proceedings commenced.)
 3            (Defendant present.)
 4            THE CLERK:  United States of America versus James
 5   Pieron, Jr., Case No. 18-20489.
 6            THE COURT:  Good morning.  Record will reflect the
 7   presence of counsel for the Government as well as for the
 8   defendant.  We are at a point where we need to get a record on
 9   a response to a question that we had received from the jury.
10   Specifically, they had asked a question concerning the fact
11   that the instruction on page 8 reflected the indictment charge
12   summary as referring to the 7201 language "willfully attempted
13   to evade and defeat."
14            Following down the page, the specific instruction,
15   however, to the jury, framed on the language of the statute,
16   was, second, the defendant committed an affirmative act
17   constituting an evasion or an attempt to evade or defeat the
18   tax obligation.
19            When we drafted the verdict form, it included the
20   language "and".  The statute provides "or," and there is a
21   fairly extensive body of law addressing the fact that the
22   prosecution, in charging a case, in order to provide the
23   defendant notice of the fact that they believe that conduct
24   satisfying each of the two predicates exists, also nevertheless
25   requires proof of only one because of the nature of the
```

language of the statute itself.

As a result, and I will briefly furnish at least the legal authority that we were using to resolve the issue, the first of which was *United States versus Murph*, 707 Fed2d 895, a Sixth Circuit case addressing the charging language, and more specifically to our point, the *United States versus Johnson*, 576 Fed.Appx. 572, again a Sixth Circuit case.

The specific problem that they faced was very similar to ours. Quoting the language of the case, "The verdict forms originally used the same conjunctive "and" language. But the jury instructions, and the statutes themselves, are written in the disjunctive, allowing the jury to convict if Johnson knowingly used "or" carried a firearm, if he attempted to murder Robinson to maintain or increase his position in LSP. After the jury questioned this discrepancy, the Court changed the verdict form to match the jury instruction. Johnson now argues that the Court constructively amended the indictment when it substituted the disjunctive "or" for the conjunctive "and" in the jury instructions and verdict forms.

The Court resolved that issue to the contrary. We have done precisely what was done in *United States versus Johnson*. We amended the verdict form to conform to the instruction, and I wanted to make sure that we had -- counsel had an opportunity to address, on the record, the relative positions of the parties concerning the instruction to the

1 jury, defense in particular.

2     MR. MINNS: Thank you, Your Honor. I very much
3 appreciate the Court's graciousness and kindness while we've
4 been in this courtroom. I fear now, though, I'm talking to the
5 Sixth Circuit, because I believe that the instruction will
6 convict my client.

7     The form was submitted by the Government. We
8 submitted a form. The Court chose the Government's form, which
9 they asked this Court to use. It was identical to one of the
10 forms from the Internal Revenue manual, so it was certainly not
11 the first time that identical form has been used.

12     We mistakenly focused on the "and," which I had
13 objected to from 2008 and 2009. We mistakenly focused on that.
14 I focused on the word "and" frequently. The jury focused on
15 the words defeat -- "evade and defeat" or "evade or defeat"
16 but, unwittingly, I argued against our case by arguing that the
17 word "and" was extremely important for the wrong reason.

18     The entire case was submitted on the Government's
19 agreed form. We did not object to the form of the verdict
20 form, but it was offered -- proffered by the Government, and I
21 fear there's some confusion now with the jurors. Evade and
22 defeat, they're essentially the same -- the same concepts, and
23 I know that they're both in the statute, but there is a common
24 misconception that defeating the tax is always wrong. If you
25 avoid the tax, you have followed the law, and there are

1 thousands of experts across the country who specialize in
2 helping people legally avoid and defeat, and they're successful
3 at it at all levels of court, and all the way up to the Supreme
4 Court. If you evade, you have committed a -- willfully evade,
5 you have committed a criminal offense and criminal sanctions
6 are levied.
7       By instructing the jurors without a definition of the
8 word "defeat" to enable the possibility that defeating can be
9 legal, can be avoidance and not evasion, we've pretty much
10 given a directed -- instructions of directed verdict to this
11 panel which specifically focused on that. And --
12       THE COURT: The instruction that we gave the jury was
13 in the disjunctive. The only thing that was not was the
14 verdict form.
15       MR. MINNS: Well, it was in -- it was in both. The
16 instruction had one paragraph that said "and" and one paragraph
17 that said "or."
18       THE COURT: Well, the paragraph that includes the
19 word "and" is a description of the indictment language.
20       MR. MINNS: Yes, Your Honor.
21       THE COURT: Accurately, in the conjunctive.
22       MR. MINNS: Yes, Your Honor. And the trial was based
23 on -- the entire trial was conducted on 2008 and 2009, which is
24 where I mistakenly focused, but the jury was focusing on evade
25 and defeat, which no one in this courtroom mentioned, that I

recall, the entire trial. However, my argument, based on the form, pushes -- based on my reliance on the form, too, pushed the jury towards conviction, and obviously I regret that. I would not have made the same arguments if I had had that form to argue with.

May I approach counsel table to see if I'm leaving something important out, Your Honor, for the record?

THE COURT: If -- Mr. Sasse, anything to add to the record?

MR. SASSE: Yes, Your Honor. Just that I -- I'm not so certain -- I understand that as a general proposition when the Government -- when Congress makes something criminal they use various things, various ways of committing that crime, and the Government can allege each of those as "and, and, and" in the indictment and then have the jury instructed that it's "or, or, or" in the jury instructions and in the verdict form.

THE COURT: And it's a method of protecting the defendant.

MR. SASSE: I understand that, Judge, and I don't quarrel with the general proposition, but I do think that under this particular statute, I'm not so sure that this applies, that Congress intended to make it criminal to defeat your taxes if you don't evade them, if you're not also evading them.

Because people defeat taxes everyday in all kinds of ways, which otherwise wouldn't be illegal, unless it is under

1 this statute now. I think this broadens the statute beyond
2 anything that Congress intended, and I don't know that they
3 intended to make evasion separate from defeating, and if they
4 did -- but assuming that they did --
5       THE COURT: They wrote it in the disjunctive.
6       MR. SASSE: Assuming that they did, Judge, the jury
7 should have been instructed on what does "defeat" mean within
8 the -- because the common -- the common understanding of the
9 word" defeat" would be that you just didn't -- you were trying
10 to keep from having to pay your taxes. Whether it was
11 otherwise legal or not, if you tried to keep from paying your
12 taxes, even though you didn't evade your taxes, if you tried to
13 defeat them, you're guilty. And if you did it willfully, of
14 course, you were trying to do it intentionally, you're guilty.
15       And I think with the prejudice in this case, changing
16 that thing -- changing that verdict form at this part, the case
17 that the Court cited, and the Government provided, allowed the
18 verdict form to be changed after it went to the jury, but there
19 was no suggestion that I saw in the opinion of any prejudice to
20 the defense. Here there is abundant prejudice to the defense
21 and for those reasons we're objecting.
22       THE COURT: Thank you.
23       Government wish anything on the record?
24       MS. PARKER: No, Your Honor. Other than we think the
25 Court's actions were appropriate.

```
 1              THE COURT:  The record's closed.  Thank you.
 2              (At 11:12 a.m., court recessed.)
 3              (At 11:33 a.m., court resumed.)
 4              THE COURT:  Record will reflect that we are outside
 5   the presence of the jury.  The defendant is present as well as
 6   counsel for the Government and the defense team.
 7              The Court's been informed that the jury has reached a
 8   verdict.  Before we entertain the jury, I want to be sure that
 9   you know that we will have the jury polled, no matter what
10   their verdict is.  Anything else that counsel would like to
11   address before we entertain the jury?
12              MS. PARKER:  Just briefly, at our previous short
13   session regarding the verdict form, the defendant was also
14   presented during that colloquy.
15              THE COURT:  Indeed.
16              MS. PARKER:  Nothing further.
17              THE COURT:  Mr. Minns?
18              MR. MINNS:  No, Your Honor.
19              THE COURT:  If we could have the jury, please.
20              (At 11:36 a.m., jury arrives.)
21              THE COURT:  The Court's been informed by the bailiff
22   that you have reached a verdict.  Sir, if you could retrieve
23   the verdict form from the foreperson.
24              Thank you.  If you could publish the verdict, please.
25              THE CLERK:  United States of America versus James
```

Pieron, Jr., Case No. 18-20489.

As to the charge that James D. Pieron, Jr. willfully attempted to evade and defeat the payment of the income taxes due and owing by him to the United States for the calendar years of 2008 and 2009, we, the jury, unanimously find the defendant guilty.

Juror in Seat No. 1, was that and is that your verdict?

JUROR NO. 1:  Yes.

THE CLERK:  Juror in Seat No. 2, was that and is that your verdict?

JUROR NO. 2:  Yes.

THE CLERK:  Juror in Seat No. 3, was that and is that your verdict?

JUROR NO. 3:  Yes.

THE CLERK:  Juror in Seat No. 4, was that and is that your verdict?

JUROR NO. 4:  Yes.

THE CLERK:  Juror in Seat No. 5, was that and is that your verdict?

JUROR NO. 5:  Yes.

THE CLERK:  Juror in Seat No. 6, was that and is that your verdict?

JUROR NO. 6:  Yes.

THE CLERK:  Juror in Seat No. 7, was that and is that

```
 1  your verdict?
 2            JUROR NO. 7:  Yes.
 3            THE CLERK:  Juror in Seat No. 8, was that and is that
 4  your verdict?
 5            JUROR NO. 8:  Yes.
 6            THE CLERK:  Juror in Seat No. 9, was that and is that
 7  your verdict?
 8            JUROR NO. 9:  Yes.
 9            THE CLERK:  Juror in Seat No. 10 was that and is that
10  your verdict?
11            JUROR NO. 10:  Yes.
12            THE CLERK:  Juror in Seat No. 11, was that and is
13  that your verdict?
14            JUROR NO. 11:  Yes.
15            THE CLERK:  Juror in Seat No. 13, was that and is
16  that your verdict?
17            JUROR NO. 13:  Yes.
18            THE COURT:  Counsel have any issues you wish to
19  address before we excuse the jury from service?
20            MS. PARKER:  The Government has nothing additional
21  for the jury.  Thank you, Your Honor.
22            THE COURT:  Mr. Minns?
23            MR. MINNS:  No, Your Honor.
24            THE COURT:  Thank you.  Ladies and gentlemen, we've
25  taken a lot of your time.  We very much appreciate the days
```

1 that you have invested with us and in resolution of the case.
2 You are excused from further service as the jury in this case.
3 Please rise for the jury.
4     (At 11:38 a.m., jury leaves.)
5     THE COURT: Jury is outside of the courtroom. The
6 jury's verdict is to be entered on the records of the Court.
7 Sentencing will be scheduled for June the 20th at 2:30. I
8 would appreciate it if you would inform the probation office
9 that the gentleman is available for his interview.
10     Anything else that counsel would like to cover before
11 we close?
12     MS. PARKER: Yes, Your Honor. I have two matters on
13 behalf of the Government.
14     First, we would move to -- we do move to revoke bond
15 under 18 USC 3143(a). The defendant has now been convicted.
16 He's a person who appears to have access to very substantial
17 financial resources. He's experienced in living and traveling
18 abroad. He has many friends who live abroad, including, for
19 example, business associate in the British Virgin Islands who
20 is able to put up $20 million into a bank account in reserve
21 for the business.
22     As I understand it, he's recently sold the business.
23 We have no idea how much money was generated from that sale,
24 but at this point I believe that the statute allows --
25 basically it shifts the burden to the defendant to show that he

1  should be continued on bond now that he's been convicted.
2          THE COURT:  Please be seated.  Mr. Minns?
3          MR. MINNS:  Yes, Your Honor.  He sold a portion of
4  the business.
5          THE DEFENDANT:  No, I didn't sell.  I borrowed the
6  money.
7          MR. MINNS:  Oh, he borrowed the money against the
8  business.
9          THE DEFENDANT:  It's a really important distinction.
10         MR. MINNS:  It is my error.  He borrowed money
11 against the business to pay legal fees and taxes.  He is a
12 member of this community.  He has longstanding ties.  Many of
13 those longstanding tiles, including his wife, are in this
14 courtroom.  There is -- knowing people in other countries does
15 not create a flight risk.  Having a passport, he doesn't have a
16 passport, does not create a flight risk.
17         THE COURT:  My understanding is the passport has been
18 surrendered?
19         MR. MINNS:  Yes, Your Honor.  And he's -- he's
20 obedient to the orders and he's -- there's -- I mean, it's an
21 absurdity to say he's a flight risk because he has -- there's
22 an investor who's very, very wealthy who's loaned him money
23 against his business.
24         THE COURT:  That has been true throughout the course
25 of the pretrial proceedings.  I -- there has been nothing that

1 he has done that would reflect any legitimate concerns on my
2 part that he is a flight risk anymore today than he was in the
3 past.  His passport is surrendered.  He cannot legally leave
4 the country.  I think that the -- that he should remain on bond
5 pending the sentencing hearing.
6         MR. MINNS:  Thank you, Your Honor.
7         THE COURT:  I would respectfully deny the
8 Government's motion.
9         You had one additional matter that you wanted to give
10 attention to.
11         MS. PARKER:  I did, Your Honor.  As the Court may be
12 aware, Sherry Rousseau has sat through the trial, and we would
13 like to have a hearing scheduled to present her testimony
14 regarding the tax loss that the Government believes is
15 appropriate and to do that sooner rather than later.  I know on
16 at least one other case we waited.  We got a presentence report
17 and then we had a long series of hearings.
18         We would ask that we have the hearing like next week
19 or as soon as we can thereafter, so that we can get that issue
20 resolved and not delay the preparation of the presentence
21 report and ultimately sentencing.
22         MR. MINNS:  I have not attended a sentence in a very
23 long time, and I was unhappy to learn that there will be a
24 sentencing in this case, obviously.  It will probably -- first
25 of all, the civil calculations will probably be handled by

1  another lawyer who's in the courtroom.  Our counsel table is
2  not competent to do that.  They're very complex and he -- we
3  have been trying to keep him up with the case in the event that
4  we were unfortunate --
5            THE COURT:  Is there a particular concern concerning
6  her availability?
7            MS. PARKER:  No, Your Honor.  It just seems like the
8  last time -- the lesson of another case, I think the Court is
9  familiar with, as well as Mr. Sasse, is we did have a position
10 that was -- became the subject of an objection that wound up in
11 more days of hearings than we consumed in the trial, and part
12 of it is that there's a drift over time where we lose track of
13 the facts.
14           And I think while it's fresh in the Court's mind,
15 counsels' mind and the witness's mind, it's a better time to
16 deal with it efficiently and get the matter resolved so that
17 probation office can deal with any other sentencing factors.
18           We're not talking about a civil assessment.  We're
19 talking about the criminal facts -- criminal tax loss
20 calculations.
21           THE COURT:  I'm aware of that.
22           MR. MINNS:  But they're entirely different from what
23 took place in the courtroom, and --
24           THE COURT:  I don't see a reason necessarily to rush
25 to judgment, if you will, on that issue.  The amount of the tax

```
 1  loss has a fairly dramatic impact on the advisory guideline
 2  ranges that apply, so it's important that we do that with some
 3  care.
 4           MR. MINNS:  Yes.
 5           THE COURT:  On the other hand, the Government's
 6  correct in reflecting the fact that we -- there is no reason
 7  why we can't be doing some aspects of this in a more efficient
 8  manner than doing it serially.  So what I'm anticipating at
 9  this juncture -- would you anticipate simply examining the
10  witness in order to begin the process of understanding the
11  Government's assertions?
12           MS. PARKER:  Yes.
13           THE COURT:  I'm willing to do that, but I want to do
14  it on a schedule that also works for the defense.
15           MR. MINNS:  Thank you.
16           MS. PARKER:  Sure.
17           THE COURT:  And we'll -- perhaps we can take about 15
18  minutes and see if we can look at schedules here.
19           All right.  Record's closed.
20           MR. MINNS:  Thank you, Your Honor.
21           MR. SASSE:  Your Honor, one more matter.
22           THE COURT:  Sir.
23           MR. SASSE:  The -- I think we have 14 days to file
24  either a Rule 29 -- renewed Rule 29 and/or a Rule 33 motion.
25           THE COURT:  Yes.
```

```
 1          MR. SASSE:  I would like -- and I think we would like
 2  to get a transcript of the proceedings, which takes some period
 3  of time, and I would ask for an extension to perhaps up until
 4  60 days to file those two motions.
 5          THE COURT:  Which would be -- well, I'm not going to
 6  speak for the Government, that's not a good idea.
 7          MS. PARKER:  I'm sorry.
 8          THE COURT:  Are you agreeable?
 9          MS. PARKER:  Just a moment.  I'm not sure how that
10  would --
11          THE COURT:  The value -- the value of that is the
12  fact that we would be addressing the merits of those motions on
13  the basis of a transcript of the proceeding.  There's some real
14  value in doing that in -- because of the precision that that
15  would enable us to have in addressing those motions.
16          MS. PARKER:  Your Honor, we do not object to that.
17          THE COURT:  Good.
18          MR. SASSE:  Thank you, Your Honor.
19          THE COURT:  Record's closed.  Thank you.
20          (At 11:47 a.m., court recessed.)
```

\* \* \* \*

C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the proceedings in the above-entitled matter.

*Carol M. Harrison*

Date: 4-15-2019     Carol M. Harrison, RMR, FCRR
                    Official Court Reporter
                    United States District Court
                    Eastern District of Michigan
                    1000 Washington Avenue
                    Bay City, MI  48708