# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

UNITED STATES OF AMERICA,

           Plaintiff,

vs.

JAMES D. PIERON, JR.,

           Defendant.

Case No. 18-cr-20489 (TLL)(PTM)
Hon. Thomas L. Ludington

## MOTION FOR NEW TRIAL

*Hearing and oral argument requested*

Defendant James D. Pieron, Jr. moves for a new trial under Rule 33 of the Federal Rules of Criminal Procedure for three reasons. First, the failure to instruct the jury as to the statute of limitations defense. Second, Pieron was denied his Sixth Amendment right to counsel. Third, the verdict was against the weight of the evidence.

The factual and legal grounds for this motion are set forth in the brief. Oral argument is requested. In addition, Pieron requests a hearing concerning the ineffective assistance of trial counsel.[1]

---

[1] To obtain an evidentiary hearing on a motion for new trial based on ineffective assistance of counsel, a defendant need present only "a modicum of evidence in support" of the request. *United States v. Allen*, 254 F. App'x 475, 478 (6th Cir. 2007) (unreported).

Respectfully submitted,

HONIGMAN LLP

By: /s/ Patrick J. Hurford
Patrick J. Hurford (P82903)
Mark A. Pendery (P57683)
660 Woodward Ave.
Detroit, MI  48226
(313) 465-7000
phurford@honigman.com

Dated:  May 15, 2019

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

vs.

JAMES D. PIERON, JR.,

          Defendant.

Case No. 18-cr-20489 (TLL)(PTM)
Hon. Thomas L. Ludington

## BRIEF IN SUPPORT OF MOTION FOR NEW TRIAL

# **<u>TABLE OF CONTENTS</u>**

Preliminary Statement...............................................................................1

Procedural Background............................................................................2

Argument..................................................................................................3

   A.    The failure to give Pieron's proposed jury instruction concerning the statute of limitations defense requires a new trial.......................................3

   B.    Pieron is entitled to a new trial because his trial counsel was ineffective. ......6

   C.    Pieron is entitled to a new trial because the jury's verdict was against the weight of the evidence. ................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Cheek v. United States*,
    498 U.S. 192 (1991)............................................................................13

*Dagley v. Russo*,
    540 F.3d 8 (1st Cir. 2008)...................................................................22

*Griffin v. United States*,
    502 U.S. 46 (1991)...............................................................................6

*Hodge v. Hurley*,
    426 F.3d 368 (6th Cir. 2005) .............................................................21

*Lundgren v. Mitchell*,
    440 F.3d 754 (6th Cir. 2006) ........................................7, 8, 12, 19, 23

*Musacchio v. United States*,
    136 S. Ct. 709 (2016)...........................................................................5

*Sansone v. United States*,
    380 U.S. 343 (1965)................................................................13, 14, 22

*Schauer v. McKee*,
    401 F. App'x 97 (6th Cir. 2010) ........................................................21

*Sims v. Livesay*,
    970 F.2d 1575 (6th Cir. 1992) ...........................................................10

*Strickland v. Washington*,
    466 U.S. 668 (1984).......................................................................7, 10

*Towns v. Smith*,
    395 F.3d 251 (6th Cir. 2005) ...............................................................9

*United States v. Adams*,
    583 F.3d 457 (6th Cir. 2009) ...............................................................5

*United States v. Arny*,
    831 F.3d 725 (6th Cir. 2016) ...............................................................6

*United States v. Arrington*,
  757 F.2d 1484 (4th Cir. 1985) ........................................................24

*United States v. Dado*,
  No. 09-20523-09, 2013 WL 183997 (E.D. Mich. Jan. 17, 2013)
  (Ludington, J.)..............................................................................12

*United States v. Fuchs*,
  218 F.3d 957 (9th Cir. 2000) ...........................................................6

*United States v. Golliher*,
  820 F.3d 979 (8th Cir. 2016) ..........................................................23

*United States v. Haskins*,
  345 F.2d 111 (6th Cir. 1965) ..........................................................17

*United States v. Henry*,
  545 F.3d 367 (6th Cir. 2008) ..........................................................23

*United States v. McQuarrie*,
  No. 16-CR-20499, 2018 WL 372702 (E.D. Mich. Jan. 11, 2018)
  (Ludington, J.)..............................................................................17

*United States v. Monroe*,
  178 F.3d 304 (5th Cir. 1999) ..........................................................23

*United States v. Munoz*,
  605 F.3d 359 (6th Cir. 2010) ............................................................3

*United States v. Souder*,
  436 F. Appx. 280 (4th Cir. 2011) ...................................................24

*United States v. Williams*,
  952 F.2d 1504 (6th Cir. 1991) ..........................................................4

*Unites States v. Mal*,
  942 F.2d 682 (9th Cir. 1991) ..........................................................13

*Walker v. Morrow*,
  458 F. App'x 475 (6th Cir. 2012) ...................................................20

*Wilson v. Bell*,
  368 F. App'x 627 (6th Cir. 2010)....................................................20

iii

**STATUTES**

26 U.S.C. § 6531 ................................................................................4

26 U.S.C. § 7201 ..........................................................................13, 22

**OTHER AUTHORITIES**

Federal Rules of Criminal Procedure Rule 33 .................................................3

U.S. Dep't of Justice, *Criminal Tax Manual* (2012), §8.06[2],
    available at http://www.justice.gov/tax/file/629241/download (last
    visited May 10, 2019) .............................................................................19

## Preliminary Statement

The government's successful objection to defendant James Pieron, Jr.'s proposed jury instruction concerning the statute of limitations created "substantial legal error" requiring a new trial.  This error necessitates a new trial at which a jury is required to find the government met its burden concerning the statute of limitations.

A new trial should be held for the additional reason that Pieron's trial counsel was ineffective.  Trial counsel failed to conduct a reasonable investigation.  If he had, trial counsel would have discovered Pieron has no tax liability for 2008 and 2009.  There is a substantial probability that the trial would resolve differently had defense counsel challenged the government's evidence concerning Pieron's tax liability.

Fred Gavin would testify that Pieron had no tax liability in 2008 and 2009 because (i) JDFX—not Pieron—received money from Trevor Cook, and (ii) Pieron did not sell his stock to Cook, rather JDFX issued stock directly to Cook.  A proper cross-examination of Carol Nathan would challenge her tax calculations based on capital gains given the fact that Pieron never sold his stock.

Trial counsel was also ineffective for failing to object to the majority of evidence offered by the government and prosecutorial misconduct.

1

Finally, for the reasons stated in Pieron's motion for judgment of acquittal, a

new trial must be granted because the verdict is against the weight of the evidence.

## Procedural Background

The indictment in this matter was returned on July 18, 2018.  (R. 1:

Indictment, at PgID 1–3.)  The government later filed a bill of particulars.  (R. 5:

Bill of Particulars, at PgID 9–15.)  Pieron timely filed a motion to dismiss the

indictment.  (R. 14: Mot. to Dismiss, at PgID 44–53.)  The arguments for dismissal

included a statute of limitations defense.  (*Id.* at PgID 51–52.)

The government opposed the motion to dismiss on statute of limitations

grounds, arguing it was improper to dismiss the indictment on such a basis.  (R. 23:

Gov. Opp'n to Mot. to Dismiss, at PgID 103–05.)  The motion to dismiss was

denied.  (R. 31: Order, at PgID 141–45.)

Prior to trial, Pieron continued to assert the limitations defense by submitting

a jury instruction requiring the government to prove an affirmative act of evasion

after January 9, 2012.  (Def.'s Proposed Jury Instructions, at 3, attached as Exhibit

1.)  This Court did not instruct the jury on the statute of limitations defense.  (R.

55: Trial Tr. vol. 6, at PgID 1005–06.)  Pieron continued to object to the

instructions.  (R. 55: Trial Tr. vol. 6, at PgID 1004–06, 1084.)

On March 7, 2019, the jury found Pieron guilty of tax evasion.  (R. 61: Trial

Tr. vol. 7, at PgID 1121–23.)  On the same day, Pieron sought and received an

2

extension until May 6, 2019 to file a motion for new trial pursuant to Rule 33 of

the Federal Rules of Criminal Procedure.  (*Id*. at PgID 1128.)  The Court extended

the deadline until May 15, 2019.  (R. 63: Stipulated Order, at PgID 1242.)

## Argument

This Court "may vacate any judgment and grant a new trial if the interest of

justice so requires."  Fed. R. Crim. P. 33(a).  The "interests of justice" warrant a

new trial where "substantial legal error has occurred."  *United States v. Munoz*, 605

F.3d 359, 373 (6th Cir. 2010).

## A.      The failure to give Pieron's proposed jury instruction concerning the statute of limitations defense requires a new trial.

This Court must grant a new trial because the jury was not instructed

concerning the statute of limitations.  The proposed statute of limitations

instruction was a correct statement and not covered by another instruction.  Its

absence "substantially impaired" Pieron's defense because the jury could have

convicted Pieron based only on affirmative acts of evasion occurring prior to

January 2011.

This is "substantial legal error" for purposes of moving for a new trial under

Rule 33.  *Munoz*, 605 F.3d at 373 ("[A]ny error of sufficient magnitude to require

reversal on appeal is an adequate ground for granting a new trial.")  (quoting

*Untied States v. Wall*, 389 F.3d 457, 474 (5th Cir. 2004)).

3

A defendant is entitled to a new trial where there is a refusal to deliver a proposed jury instruction that is "(1) a correct statement of the law, (2) not substantially covered by the charge actually delivered to the jury, and (3) concerns a point so important in the trial that the failure to give it substantially impairs the defendant's defense." *United States v. Williams*, 952 F.2d 1504, 1512 (6th Cir. 1991).

All three requirements are satisfied here.

First, Pieron proposed a jury instruction that was a correct statement of law. Prior to trial, on February 19, 2019, Pieron requested an instruction that included the following language.

> To be guilty of the crime alleged, the defendant must have committed an affirmative act of tax evasion after January 9, 2012. If you do not find, beyond a reasonable doubt, that the defendant committed an affirmative act of tax evasion after January 9, 2012, you must find him not guilty.

(Def.'s Proposed Jury Instructions, at 3 (a copy of which is attached as Exhibit 1).)[2] The government opposed the instruction, and this Court sustained the government's objection. (R. 55: Trial Tr. vol. 6, at PgID 1005–06.)

Because Pieron pressed the statute of limitations defense before and during trial (R. 14: Mot. to Dismiss, at PgID 51–52; R. 55: Trial Tr. vol. 6, at PgID 1004–

---

[2]      The applicable 6-year limitation period, 26 U.S.C. § 6531, combined with the tolling agreement (R. 23-12: Tolling Agreement, at PgID 110–11), creates a limitation period of January 9, 2012 to July 18, 2018.

06, 1084; Exhibit 1 at 3), the government had the burden of proving Pieron

committed an affirmative act of evasion within the statute of limitations period.

*Musacchio v. United States*, 136 S. Ct. 709, 718 (2016).  Accordingly, Pieron's

proposed instruction was a correct statement of law.

  Second, Pieron's proposed jury instruction concerning the statute of

limitations defense was not covered by the instructions given to the jury.  (R. 55:

Trial Tr. vol. 6, at PgID 1009–25.)

Finally, the failure to give Pieron's proposed instruction "substantially

impaired" his defense because the jury could have convicted on an improper

basis—basing its verdict solely on affirmative acts of evasion occurring prior to

January 9, 2012.  As noted below, the evidence presented by the government at

trial (and listed in the government's bill of particulars) included purported

affirmative acts of evasion that occurred before and after January 9, 2012.  Indeed,

the government argued that conduct on both sides of January 9, 2012 constituted

affirmative acts of evasion.  (R. 55: Trial Tr. vol. 6, at PgID 1025–1040.)

The failure to give an instruction substantially impairs a defense where,

without the instruction, the jury may have convicted on an improper basis.  *United

States v. Adams*, 583 F.3d 457, 470 (6th Cir. 2009) (holding that failure to instruct

jury that an uncorroborated confession was an insufficient basis for confession

substantially impaired defense where there was a possibility the jury could have convicted on uncorroborated testimony).

The failure to give a statute of limitations instruction substantially impairs a defense where a verdict can be based on conduct outside the limitations period. *United States v. Fuchs*, 218 F.3d 957, 962 (9th Cir. 2000) (holding the lack of instruction that jury was required to find that an overt act in furtherance of conspiracy occurred within applicable statute of limitations was plain error requiring reversal because only some of overt acts alleged in the indictment could have occurred within the limitations period).

When "jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error." *Griffin v. United States*, 502 U.S. 46, 59 (1991). Accordingly, because the jury's verdict could have been based on affirmative acts of evasion that occurred before January 9, 2012, Pieron is entitled to a new trial.

**B.**     **Pieron is entitled to a new trial because his trial counsel was ineffective.**

"[A] violation of a defendant's Sixth Amendment right to the effective assistance of trial counsel constitutes a 'substantial legal error' such that a new trial is warranted." *United States v. Arny*, 831 F.3d 725, 730-31 (6th Cir. 2016) (quoting *Munoz*, 605 F.3d at 373–74).

Pieron's trial counsel was ineffective for three reasons.  First, trial counsel failed to conduct a reasonable investigation concerning the transactions that purportedly gave rise to Pieron's 2008 and 2009 tax liability.  A reasonable investigation would have revealed Pieron had no capital gains and no tax liability for those years.

Second, trial counsel failed to object to inadmissible evidence at trial.  This failure to object covers the majority of the evidence presented by the government.

Third, trial counsel failed to object to prosecutorial misconduct at trial.  This failure allowed the government to argue for a conviction based on a failure to pay tax, rather than the evasion of payment.

Each of these reasons, standing alone, warrants a new trial.  But this Court should not view trial counsel's errors in isolation.  This Court should evaluate the "combined effect of all acts of counsel found to be constitutionally deficient, in light of the totality of the evidence in the case."  *Lundgren v. Mitchell*, 440 F.3d 754, 770 (6th Cir. 2006)

Establishing ineffective assistance of counsel requires two showings.  First, a defendant must show "counsel's performance was deficient," containing "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

To satisfy the second *Strickland* requirement, a defendant "must show that the deficient performance prejudiced the defense" such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687, 694.

Pieron was prejudiced by each instance of ineffective assistance such that, absent the deficient performance, there is a reasonable probability the result at trial would have been different. But in making the prejudice determination, this Court need not view the impact of unprofessional errors in isolation. This Court should evaluate the "combined effect of all acts of counsel found to be constitutionally deficient, in light of the totality of the evidence in the case." *Lundgren v. Mitchell*, 440 F.3d 754, 770 (6th Cir. 2006).

1.   <u>Trial counsel's failure to investigate requires a new trial</u>.

Pieron's reported 2008 and 2009 capital gains were based on the incorrect assumption that Pieron sold his JDFX stock to Trevor Cook. (Gov. Exs. 40, 42, attached hereto as Exhibits 2 and 3 respectively; *see* R. 51: Trial Tr. vol. 2, at PgID 430–32; R. 52: Trial Tr. vol. 3, at PgID 618–19; R. 53: Trial Tr. vol. 4, at PgID 698.) A reasonable investigation, which Pieron's trial counsel failed to conduct, would have revealed that Pieron never sold the stock to Cook. Instead, Cook invested directly in JDFX, and the company, JDFX, issued stock directly to Cook. A reasonable investigation would have revealed Pieron had no tax liability for

8

2008 and 2009 because there was no capital gain.  (Fred Gavin Decl. at ¶¶ 4 – 7,

attached hereto as Exhibit 4.)

With respect to the first *Strickland* prong, courts have not hesitated to find

deficient performance "when counsel fails to conduct a reasonable investigation

into one or more aspects of the case." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir.

2005) (finding deficient performance based on the failure to conduct a reasonable

investigation concerning a known and potentially important witness).  "The

relevant question is not whether counsel's choices were strategic, but whether they

were reasonable."  *Id*. (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000)).

Trial counsel's choices are not reasonable "when the attorney has failed to

investigate his options and make a reasonable choice between them."  *Id*. (quoting

*Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991)).

Here, trial counsel failed to investigate the facts concerning Cooks' purchase

of JDFX stock. (Gavin Decl., Ex. 4  at ¶ 8.)  Indeed, trial counsel took the position

that Pieron had capital gains in 2008 and 2009 because he sold his JDFX stock to

Trevor Cook in those years.  (*See* R. 51: Trial Tr. vol. 2, at PgID 430–32; R. 52:

Trial Tr. vol. 3, at PgID 618–19; R. 53: Trial Tr. vol. 4, at PgID 698.)  But there

was evidence that Pieron did not receive any funds from Cook; instead, Cook's

investment was wired to JDFX.  (R. 52: Trial Tr. vol. 3, at PgID 515–20; Gov Ex.

138, attached hereto as Exhibit 5.)

Even with evidence of Pieron never receiving funds from Cook, trial counsel still did not investigate the transaction. (Gavin Decl., Ex. 4 at ¶ 8.) That investigation would have revealed JDFX issued stock to Cook—Pieron never transferred his stock to Cook. (*Id*. at ¶ 5.) As a result, Pieron had no capital gains in 2008 and 2009. (*Id*. at ¶ 4.) When capital gains are removed from the 2008 and 2009 tax returns, Pieron has no tax liability for those years. (*Id*. at ¶ 7.)

Trial counsel "failed to investigate his options" to challenge the government's case concerning the existence of Pieron's alleged tax liability for 2008 and 2009. Under *Strickland*, trial counsel's performance was deficient because his uninformed decisions were unreasonable. These decisions include (i) not fully cross-examining Carol Nathan and others concerning the absence of capital gains and (ii) not calling Fred Gavin and others as witnesses to testify concerning the Cook-related transactions and the lack of capital gains.

To satisfy the second *Strickland* requirement, the test for evaluating prejudice "is whether there is a reasonable probability that counsel's errors affected the outcome of the trial." *Sims v. Livesay*, 970 F.2d 1575, 1581 (6th Cir. 1992). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (citing *Strickland*, 466 U.S. at 694).

In *Sims*, the Sixth Circuit found that trial counsel's failure to investigate physical evidence concerning whether a gun was fired at close range (in support of

10

the defendant's theory that there was a struggle for the gun) prejudiced the

defendant because the government's case and the conviction relied "heavily upon

. . . [the] theory that the gun was fired from a distance." *Id*. at 1581.

In this case, the government relied exclusively upon Pieron's 2008 and 2009

tax returns to prove a tax liability for 2008 and 2009. (R. 54: Trial Tr. vol. 2, at

PgID 924; Gov. Exs. 40, 42.)

> You don't even have to decide how much he owed. Why?
> Because we're going to take him at his word. We're going to
> accept what he said to the IRS he owed when he filed his tax
> returns.

(R. 51: Trial Tr. vol 2, at PgID 314 (government's opening statement).) The

government called Pieron's initial tax preparer, Carol Nathan. She testified that

she calculated Pieron's tax liability based on capital gains he had for tax years

2008 and 2009. (R. 52: Trial Tr. vol. 3, at PgID 548–50; Gov. Exs. 40, 42.)

Indeed, the original returns for 2008 and 2009 list capital gains of $1,776,418 and

$844,731, respectively. (Gov. Exs. 40, 42.)

Cross-examination of the government's witnesses, including Nathan,

concerning JDFX's receipt of Cook's direct investment would have significantly

weakened the government's case. And testimony from Fred Gavin would have

been permissible to rebut testimony by government witnesses concerning Pieron's

2008 and 2009 tax liability based on capital gains.

11

Here, like in *Sims*, trial counsel's failure to investigate and question witnesses concerned evidence that the government relied heavily upon (2008 and 2009 tax returns showing a liability based on capital gains).  Absent trial counsel's deficient performance, there is a reasonable probability of a different result at trial.

Accordingly, Pieron is entitled to a new trial.

2.    The failure of trial counsel to object to inadmissible evidence requires a new trial.

Pieron's trial counsel consistently failed to object to inadmissible evidence at trial despite clear reasons for doing so.  This failure to object covered approximately sixty percent of the government's evidence of alleged affirmative acts of evasion.   This consistent failure to object denied Pieron his Sixth Amendment right to counsel.  Absent deficient performance, removing over half of the government's evidence in this case (especially when the evidence was highly prejudicial), creates a substantial probability of a different result at trial.

The two-part *Strickland* framework applies to allegations of ineffective assistance based on the failure to object to inadmissible evidence.  *United States v. Dado*, No. 09-20523-09, 2013 WL 183997, at *15 (E.D. Mich. Jan. 17, 2013) (Ludington, J.).  While deference should be given to trial counsel's failure to object for strategic reasons, the consistent failure "to use objections, despite numerous and clear reasons for doing so . . . cannot reasonably . . . have been part of a trial

12

strategy or tactical choice." *Id.* (quoting *Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir. 2006)).

Here, trial counsel failed to object to at least two categories of evidence at trial. First, trial counsel failed to object to evidence of purported affirmative acts of payment evasion that occurred prior the government establishing Pieron's knowledge of a tax liability for tax years 2008 and 2009. Second, trial counsel failed to object to evidence not listed in the bill of particulars.

The elements of tax evasion under 26 U.S.C. § 7201 are (i) the existence of a tax deficiency, (ii) willfulness, and (iii) an affirmative act "constituting an evasion or attempted evasion of the tax." *Sansone v. United States*, 380 U.S. 343, 351 (1965).

Affirmative acts of payment evasion generally involve "conduct designed to place assets beyond the government's reach *after* a tax liability has been assessed." *Unites States v. Mal*, 942 F.2d 682, 687 (9th Cir. 1991) (emphasis added). Although there are exceptions to this general rule, it exists because one cannot willfully evade (or attempt to evade) an unknown tax liability. *Cheek v. United States*, 498 U.S. 192, 201 (1991).

At the earliest, the government established Pieron knew he had a tax liability for tax years 2008 and 2009 at the time these tax returns were completed in January 2011. Since Pieron's signature on the 2008 and 2009 returns is not dated,

13

for purposes of this motion, we will assume that Pieron was aware of his 2008 and 2009 tax liabilities on the date Pieron's tax preparer signed the returns, January 7, 2011. (R. 52: Trial Tr. vol. 3, at PgID 548; Gov. Exs. 40, 42.)

Because the government did not establish that Pieron knew he had a tax liability for tax years 2008 and 2009 prior January 7, 2011, trial counsel was ineffective by failing to object to evidence of purported affirmative acts of evasion occurring before January 7, 2011. This failure to object was systemic, covering over half of the evidence presented during the government's case-in-chief.  The evidence is listed below.

- January 1, 2007 to December 31, 2007:  Testimony concerning the existence of a Saxo Bank account, which appeared to be one of Pieron's personal account.  The testimony included the failure to file a foreign bank account report. (R. 52:Trial Tr. vol. 3, at PgID 412–13; Gov. Ex. 65, attached hereto as Exhibit 6.)[3]

- January 2007 to November 2009:  Testimony concerning balances of a Credit Suisse account for JDFX Fund Management Ltd, including an April 2009 balance of $159,804 (suggesting there was money available to pay 2008 taxes when due).  (R. 52: Trial Tr. vol. 3, at PgID 418; Gov. Ex. 119, attached hereto as Exhibit 7.)

- January 1, 2009 to December 31, 2009:  Testimony concerning the balance of a Saxo Bank account in Pieron's name, including the suggestion that there was money available to pay the 2008 taxes when they became due.  (R. 52: Trial Tr. vol. 3, at PgID 413–15; Gov. Ex. 68, attached hereto as Exhibit 8.)

---

[3]     Omissions are not affirmative acts of evasion. *See Sansone v. United States*, 380 U.S. at 351.  Accordingly, trial counsel should have objected to evidence concerning the failure to file an FBAR on this ground as well.

14

- April 2009 to June 2009: Testimony concerning the balance in a UBS account for JDFX Holding AG, including the suggestion that there was money in this account sufficient to pay the 2008 taxes when they became due. (R. 52: Trial Tr. vol. 3, at PgID 416; Gov. Ex. 18, attached hereto as Exhibit 9.)

- July 7, 2009: Evidence that, when Pieron opened a JDFX account at Peregrine Financial Group, Inc., he signed a W-8BEN indicating that he was a "resident of Switzerland within the meaning of the income tax treaty between the United States and that country." (Gov. Ex. 115, attached hereto as Exhibit 10; R. 53: Trial Tr. vol. 4, at PgID 645–51.)

- June 8, 2009: Evidence of a wire transfer of $100,000 from James Pieron's UBS account in Zurich to IB Technologies Inc.'s PNC bank account in the United States. (R. 53: Trial Tr. vol. 4, at PgID 748; Gov. Ex. 129, attached hereto as Exhibit 11.)

- August 28, 2009: Testimony and evidence that Pieron purchased a 2009 Mercedes for $110,000 on behalf of Komplique. (R. 53: Trial Tr. vol. 4, at PgID 724, 726–27, 755; Gov. Ex. 102, attached hereto as Exhibit 12.)

- October 15, 2009: Evidence of a $500,000 wire transfer from JDFX Holding AG's Credit Suisse account to IB Technologies, Inc. in Mount Pleasant, Michigan. (R. 53: Trial Tr. vol. 4, at PgID 749; Gov Ex. 129.)

- October 19, 2009: Evidence of a $250,000 wire transfer from IB Technologies Inc. in Mount Pleasant, Michigan to PFG, Inc. in Chicago, Illinois. (R. 53: Trial Tr. vol. 4, at PgID 749; Gov. Ex. 129.)

- November 18, 2009: Evidence of a $749,975 wire transfer from JDFX Fund Management Ltd.'s Credit Suisse account to IB Technologies, Inc. in Mount Pleasant, Michigan. (R. 53: Trial Tr. vol. 4, at PgID 749–50.)

- January 1, 2010 to December 16, 2010: Evidence of account balances in Saxo Bank account in the name of Pieron, and testimony that there was over $500,000 in the account between April and June 2010 when tax for the 2009 tax year would have become due. (R. 51: Trial Tr. vol. 2, at PgID 415–16; Gov. Ex. 70, attached hereto as Exhibit 13.)

15

- <u>January 13, 2010</u>:  Evidence of a $75,000 wire transfer from UBS AG to one of Pieron's personal bank accounts in the United States.  (R. 53: Trial Tr. vol. 4, at PgID 767–68; Gov. Ex. 114, attached hereto as Exhibit 14.)

- <u>April 1, 2010 to April 9, 2010</u>:  Evidence concerning the over $300,000 balance in an IB Technologies, Inc. National City account, and the suggestion that this balance existed at a time when taxes for the 2009 tax year would have been due.  (R. 51: Trial Tr. vol. 2, at PgID 418; Gov. Ex. 120D, attached hereto as Exhibit 15.)

- April 5, 2010:  Evidence of a funds transfer in the amount of $250,000 from IB Technologies, Inc. to ILQ Holdings LLC.  (R. 53: Trial Tr. vol. 4, at PgID 719–20; Gov. Ex. 91, attached hereto as Exhibit 16.)

- <u>April 5, 2010</u>:  Evidence of a $250,000 wire transfer from National City (Komplique account) to one of Pieron's personal savings account (xxx0031) in the United States.  (R. 53: Trial Tr. vol. 4, at PgID 768–69; Gov. Ex. 114.)

- April 5, 2010:  Evidence of a $203,184.22 wire transfer from Peregrine Financial Group, Inc. to IB Technologies, Inc.  (R. 53: Trial Tr. vol. 4, at PgID 750; Gov. Ex. 129.)

- April 5, 2010:  Evidence of a $250,000 wire transfer from IB Technologies to James Pieron.  (R. 53: Trial Tr. vol. 4, at PgID 750; Gov. Ex. 129.)

- April 6, 2010:  Evidence of a $250,000 wire transfer from Pieron's personal savings account (xxx0031) to an Institutional Liquidity Holdings business account.  (R. 53: Trial Tr. vol. 4, at PgID 773; Gov. Ex. 109, attached hereto as Exhibit 17.)

- <u>April 15, 2010</u>:  Evidence of a $65,000 wire transfer from Northern Trust INTL BKG Corp to Pieron's personal savings account (xxx0031).  (R. 53: Trial Tr. vol. 4, at PgID 769; Gov. Ex. 112, attached hereto as Exhibit 18.)

- <u>July 16, 2010</u>:  Evidence of a $21,000 wire from Komplique, Inc. to Manuela Uribe at the Stoneleigh Burnham School.  (R. 53: Trial Tr. vol. 4, at PgID 750–51; Gov. Ex. 134, attached hereto as Exhibit 19.)

- August 4, 2010:  Evidence of a $107,500 transfer from Pieron's personal savings account (xxx0031) to Navitas Investments LLC business account.  (R. 53: Trial Tr. vol. 4, at PgID 774; Gov. Ex. 175, attached hereto as Exhibit 20.)

- October 15, 2010:  Evidence that Pieron purchased a $15,000 cashier's check payable to Central Michigan Pianos.  (R. 53: Trial Tr. vol. 4, at PgID 770; Gov. Ex. 175.)

- <u>November 17, 2010</u>:  Evidence of a $15,391.71 wire from UBS AG to Pieron's personal checking account (xxx6659).  (R. 53: Trial Tr. vol. 4, at PgID 769–70; Gov. Ex. 114.)

- November 30, 2010:  Evidence of a $799,977 wire transfer from Pieron to Komplique Inc. (R. 53: Trial Tr. vol. 4, at PgID 751; Gov. Ex. 134.)

- <u>December 8, 2010</u>:  Evidence of a $12,500 wire from UGS AG to Pieron's personal checking account  (xxx6659).  (R. 53: Trial Tr. vol. 4, at PgID 771–72; Gov. Ex. 107B, attached hereto as Exhibit 21.)

- December 21, 2010:  Evidence of a  Komplique Inc. check payable to Air Services for $29,805.79.  (R. 53: Trial Tr. vol. 4, at PgID 759; Gov. Ex. 130, attached hereto as Exhibit 22.)

- <u>December 28, 2010</u>:  Evidence of a Komplique Inc. check payable to Pieron for $42,000 and deposited into Pieron's personal checking account (xxx6659).  (R. 53: Trial Tr. vol. 4, at PgID 772; Gov. Ex. 108B, attached hereto as Exhibit 23.)

Trial counsel's performance was also deficient for failing to object to the evidence that was not listed in the bill of particulars.  "When a bill of particulars has been furnished, the government is strictly limited to the particulars which it has

17

specified." *United States v. Haskins*, 345 F.2d 111, 114 (6th Cir. 1965); *United States v. McQuarrie*, No. 16-CR-20499, 2018 WL 372702, at *6 (E.D. Mich. Jan. 11, 2018) (Ludington, J.).

The evidence listed above not contained in the bill of particulars is underlined.  In addition, the post-January 7, 2011 evidence that was inadmissible because it was not listed in the bill of particulars follows.

- January 2011 to December 2011:  Evidence concerning the balance of business accounts in the United States.  The government specifically highlighted accounts for Komplique and IB Technologies, Inc.  (R. 51: Trial Tr. vol. 2, at PgID 420–21; Gov. Exs. 120F, 121C, attached hereto as Exhibits 24 and 25 respectively.)

- November 28, 2011: Evidence of a check drawn off IB Technologies for $6,684.24. (R. 53: Trial Tr. vol. 4, at PgID 754; Gov. Ex. 128, attached hereto as Exhibit 26.)

- December 31, 2011 to January 31, 2012:  Evidence concerning the balance of Komplique's business savings account.  (R. 53: Trial Tr. vol. 4, at PgID 762; Gov. Ex. 169, attached hereto as Exhibit 27.)

- April 21, 2012:  Evidence concerning the purchase of a 2012 motorcycle for $18,901.64.  (R. 53: Trial Tr. vol. 4, at PgID 742–43; Gov. Ex. 176, attached hereto as Exhibit 28.)

- March 30, 2013 to April 30, 2013:  Evidence concerning the balance of Komplique's checking account (beginning balance of $50,400 and ending balance of $25,340.94).  (R. 53: Trial Tr. vol. 4, at PgID 762; Gov. Ex. 68.)

- April 30, 2013:  Evidence of a Krescent Media LLC check payable to Pieron in the amount of $50,000.  (Gov. Ex. 168, attached hereto as Exhibit 29.)

- October 17, 2013:  Evidence concerning the trade-in of a 2009 Mercedes and purchase of 2013 Mercedes G63 by Krescent Media.  (R. 52: Trial Tr. vol. 3, at PgID 595–97; Gov. Exs. 170–72, attached hereto as Exhibits 30, 31, and 32 respectively.)

As shown above, the failure to object to evidence on these grounds was consistent and pervasive.  Accordingly, the first *Strickland* prong is satisfied—trial counsel's repeated decisions not to object were unreasonable and constitute deficient performance.  *Lundgren v. Mitchell*, 440 F.3d at 774.

The *Strickland* prejudice requirement is also met.  Trial counsel's failure to object to evidence covers over half of the government's case concerning affirmative acts of evasion.  The evidence was highly prejudicial.  The evidence included significant balances in business and personal accounts both in the United States and Switzerland.  The evidence involved the purchase of expensive automobiles and other "luxury items," as termed by the government.   And this evidence was made more prejudicial by (as noted below) the government's improper arguments and suggestions to the jury that Pieron could be convicted of tax evasion by having the ability to pay and failing to do so, rather than affirmatively concealing assets from the IRS for collection purposes.[4]

---

[4]        *See* U.S. Dep't of Justice, *Criminal Tax Manual* (2012), §8.06[2], available at http://www.justice.gov/tax/file/629241/download (last visited May 10, 2019) ("[R]efusing to pay taxes due and possession of the funds needed to pay the taxes, *without more*, does not establish the requisite affirmative act necessary for an attempted evasion of payment charge.") (citing *Spies v. United States*, 317 U.S. 492, 499 (1943)(emphasis supplied)).

19

But for trial counsel's deficient performance, which would have eliminated the evidence noted above, there is a substantial probability that the result at trial would have been different.  The fact that the jury was allowed to hear this evidence must significantly undermine any confidence this Court has in the jury's verdict. Accordingly, Pieron is entitled to a new trial.

3.   The failure of trial counsel to object to prosecutorial misconduct requires a new trial.

The prosecutors in this case committed misconduct by misstating the law— turning the trial into a failure to pay case (a misdemeanor), instead of a tax evasion case (the charged felony).  Beginning in opening statements and continuing through closing arguments, the government consistently misstated the law by asking the jury to convict Pieron based on his "willful failure to pay taxes."  (*E.g.*, R. 55: Trial Tr. vol. 6, at PgID 1070.)  Because this misconduct was persistent and permeated the trial, trial counsel's failure to object was both unreasonable and prejudicial.  Accordingly, this Court should grant Pieron a new trial.

Trial counsel's "failure to object to prosecutorial misconduct can amount to ineffective assistance of counsel."  *Walker v. Morrow*, 458 F. App'x 475, 487 (6th Cir. 2012).  "[P]rosecutors are 'to refrain from improper methods calculated to produce a wrongful conviction.'"  *Wilson v. Bell*, 368 F. App'x 627, 632 (6th Cir. 2010) (quoting *Berger v. United States*, 295 U.S. 78, 88, (1935)).  "[W]hen a prosecutor does act unfairly, there is little a defendant can do other than rely on his

20

Case 1:18-cr-20489-TLL-PTM   ECF No. 68, PageID.1431   Filed 05/15/19   Page 28 of 33

or her attorney to lodge an appropriate and timely objection," and counsel's "failure to make such an objection can have devastating consequences for an individual defendant." *Hodge v. Hurley*, 426 F.3d 368, 377 (6th Cir. 2005). The failure to object to prosecutorial misconduct is subject to the two-part *Strickland* standard. *Schauer v. McKee*, 401 F. App'x 97, 99 (6th Cir. 2010).

In opening statements, the government tried to frame the issue at trial to be whether Pieron tried to "avoid paying taxes he had the ability to pay." (*E.g.*, R. 51: Trial Tr. vol. 2, at PgID 314.) There was a significant focus on Pieron purchasing things instead of paying his taxes. (*E.g.*, R. 51: Trial Tr. vol. 2, at PgID 320 ("He decides not to pay the taxes. He decides to buy that bike rather than pay the taxes.").)

And in closing arguments, the government misstated the law—asking the jury to return a guilty verdict based on Pieron's "willful failure to pay" his taxes, instead of the willful evasion of tax payments by hiding or concealing assets from the government.

- "It took him literally until 2018 to pay what he owed for 2008 and 2009. And it took Mr. Pieron leaving—learning, excuse me, that he was about to be charged criminally for a tax offense to get him to pay that tax, those taxes he owed for 2008 and 2009." (R. 55: Trial Tr. vol. 6, at PgID 1026 – 27.)

- "And he apparently thinks he can write a couple of checks and make the charge go away, but what those checks show you, ladies and gentleman, those two big checks he wrote in 2018, shows that he had the money, **he could have paid his taxes all along, but he chose not to because he was**

21

**evading the payment** until he thought paying might get him out of where he is today."  (R. 55: Trial Tr. vol. 6, at PgID 1027.)

- "Now, I submit to you, ladies and gentleman, that purchase of that car was **a choice he made to buy the car rather than to pay taxes**."  (R. 55: Trial Tr. vol. 6, at PgID 1028.)

- "**[W]hat you need to know is that defendant owed taxes, and that he willfully failed to pay them**."  (R. 55: Trial Tr. vol. 6, at PgID 1036.)

- "**Paying taxes nine years after they are due is simply not a defense to the years of evasion, and, in fact, it's evidence of the evasion, because it shows he had the ability to pay**." (R. 55: Trial Tr. vol. 6, at PgID 1038 – 39.)

- "The judge will tell you, and he has told you, what you have to consider, whether the defendant committed the crime, **whether the Government has established that there was a willful failure to pay the taxes that were owed by the defendant for 2008 and 2009**." (R. 55: Trial Tr. vol. 6, at PgID 1070)

These are incorrect statements of law.  Pieron was not charged with the willful failure to pay taxes (an omission).  Pieron was charged with willfully evading payment of his taxes (*i.e.*, committing affirmative acts designed to conceal or hide assets that the IRS can use to collect taxes).  *See Sansone v. United States*, 380 U.S. at 351 (stating that "the difference between a mere willful failure to pay a tax . . . when due under § 7203 and a willful attempt to evade or defeat taxes under § 7201 is that the latter felony involves some willful commission" in addition to failing to pay, which is an omission).

Asking the jury to convict Pieron for his willful failure to pay taxes constitutes prosecutorial misconduct.  *See, e.g.*, *Dagley v. Russo*, 540 F.3d 8, 12

22

(1st Cir. 2008) (prosecutor's argument that defendant should not be convicted of manslaughter because actions were not "'reasonable response" was improper because manslaughter does not require defendant's response to be reasonable); *United States v. Monroe*, 178 F.3d 304, 308 (5th Cir. 1999) (prosecutor's incorrect statement of jury instructions constituted improper misstatement of law); *United States v. Henry*, 545 F.3d 367, 382–83 (6th Cir. 2008) (prosecutor's suggestion to jurors that they would not let their children take a job with defendant were improper because they misled jury regarding "reasonable doubt" standard); *United States v. Golliher*, 820 F.3d 979, 986 (8th Cir. 2016) (prosecutor's statement equating persuasion with force was improper because it misstated elements of entrapment).

The first *Strickland* requirement of deficient performance is satisfied because trial counsel consistently failed to object to the multiple instances of prosecutorial misconduct noted above. *Lundgren v. Mitchell*, 440 F.3d at 774.

The second *Strickland* requirement is satisfied because Pieron was prejudiced by trial counsel's deficient performance. The government began down the failure-to-pay path in opening statements. The government continued down the path by bombarding the jury with evidence of Pieron's alleged ability to pay combined with persistent suggestions that the ability to pay existed when taxes were due. (*E.g.*, R. 51: Trial Tr. vol. 2, at PgID 412–13, 415–416, 418.) And the

23

government reinforced the improper legal framework in closing arguments.  Given this, there is a reasonable probability that the result at trial would be different if trial counsel had prevented the government from arguing for a conviction based on Pieron's failure to pay taxes.

C.     **Pieron is entitled to a new trial because the jury's verdict was against the weight of the evidence.**

Even assuming the jury found that Pieron committed an affirmative act of evasion within the limitations period, such a verdict was against the weight of the evidence.

"When the motion [for new trial] attacks the weight of the evidence, the court's authority is much broader than when it is deciding a motion to acquit on the ground of insufficient evidence." *United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985). "[T]he court may consider the credibility of witnesses and need not view the evidence in the light most favorable to the government in determining whether to grant a new trial."  *United States v. Souder*, 436 F. Appx. 280, 289 (4th Cir. 2011) (citation omitted).  Unlike the standard for entering a judgment of acquittal, "the trial court may grant relief if it determines that the evidence—even if legally sufficient to convict—weighs so heavily against the verdict that it would be unjust to enter judgment." *Id*.

For the reasons stated in Pieron's brief in support of the motion for judgment of acquittal, the evidence weighs heavily against a verdict that must be based on an

24

affirmative act of evasion occurring within the applicable limitations period.  So much so that it would be unjust to enter judgment against Pieron.  A new trial should be granted

## Conclusion

For the reasons stated, Pieron should be given a new trial.

Respectfully submitted,

HONIGMAN LLP

/s/ Patrick J. Hurford
Patrick J. Hurford (P82903)
Mark A. Pendery (597683)
660 Woodward Ave.
Detroit, MI  48226
(313) 465-7000
phurford@honigman.com

Dated:  May 15, 2019

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 15, 2019, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

Respectfully submitted,

/s/ Patrick J. Hurford
Patrick J. Hurford
Honigman LLP
660 Woodward Ave.
Detroit, MI  48226
(313) 465-7000
phurford@honigman.com

26