UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

    v.

JAMES D. PIERON, JR.,

                Defendant.

_____/

Case No. 18-CR-20489

Thomas L. Ludington
United States District Judge

Patricia T. Morris
United States Magistrate Judge

**GOVERNMENT'S SECOND SUPPLEMENTAL BRIEF ON TAX-LOSS ISSUES**

This is not a civil tax case. It is a criminal case in which a jury convicted

James Pieron of tax evasion.  Prior to sentencing, the court must calculate Pieron's

offense level in order to calculate his sentencing guideline range.

Under United States Sentencing Guideline §2T1.1, the base offense level for

Pieron's tax evasion conviction is determined by incorporating the "[l]evel from

§2T4.1 (Tax Table) corresponding to the tax loss."  In determining the total tax

loss attributable to Pieron's offense, U.S. Sentencing Guideline Manual §2T1.1

application note 2 (2018) states that the loss amount includes "all conduct violating

the tax laws . . .  unless the evidence demonstrates that the conduct is clearly

unrelated."  U.S.S.G. §2T1.1 n. 2.

On Pieron's initial 2008 and 2009 income tax returns, Pieron vastly overstated his cost basis in JDFX stock. When Pieron filed an amended return for 2008, he again falsely overstated his cost basis for JDFX stock, which constituted "conduct violating the tax laws" and is related to his tax evasion for 2008 and 2009. Accordingly, the amount of the inflated cost basis should be included in the tax loss attributable to Pieron's offense.

Pieron no longer claims that he had a basis in the JDFX stock that he sold in 2008. He now claims that he did not even own the stock, and he seeks to re-write the history of the stock sale transaction in order to avoid criminal liability. There is no sentencing guideline or principal of criminal law that permits Pieron to do so.

## Background

In March of 2019, a jury convicted defendant James D. Pieron, Jr., of one count of attempting to evade or defeat the payment of his 2008 and 2009 federal income taxes.

On April 12, 2019, the government sent its criminal tax-loss calculation to the U.S. Probation Department, the defense attorneys and the court. The government's submission asserted that Pieron was responsible for a total tax loss amount for 2008 and 2009 of $6,435,250.50, which rendered a base offense level under USSG § 1T1.1(a) of 24. (Level 24 corresponds to a tax loss range of $3.5

million to $9.5 million).  Pieron submitted a response arguing that his tax loss was

$0.

Pursuant to an order for supplemental briefing (R. 110), the government

submitted a brief (R. 112) to address, among other things, why the government

based its calculations off of Pieron's 2008 and 2009 Form 1040X amended returns

(as opposed to Pieron's original 2008 and 2009 returns and Pieron's later offer-in-

compromise which was based on a theft-loss theory) and why the government did

not include any cost basis for the JDFX stock that Pieron sold to Market Shot.

The court has directed the government to file an additional supplemental

brief to address why the court can and should consider "proof of the Defendant's

2008 and 2009 income and the associated tax basis for the JDFX stock."  (R. 123,

Order Directing Additional Briefing, PgID 2817).  Specifically, the order directed

the government to explain "what principle of law permits the Government to take

up the question of Defendant's tax liability for 2008 and 2009 in a sentencing

hearing in 2019, but forecloses the Defendant from furnishing evidence of a lower

taxable income."

## Discussion

*The court can and should consider Pieron's overstatement of his basis in JDFX
stock when computing the tax loss because it is illegal relevant conduct.*

As discussed in greater detail in a prior filing (R. 112, Gov.'s First Sup. Tax

Loss Br., PgID 1787& 1795-97), in 2008 and 2009, Pieron sold 35% of his JDFX

stock to Market Shot, LLC for $15.25 million. In his initial income tax returns for 2008, Pieron claimed that he sold shares of JDFX stock for $9,346,617 and that the JDFX stock had a cost basis of $6,675,034.

| 7 Net short-term capital gain or (loss). Combine lines 1 through 6 in column (f) . . . . . . . . . . . | 7 | −295,024. | | | | |
|---|---|---|---|---|---|
| **Part II  Long-Term Capital Gains and Losses - Assets Held More Than One Year** | | | | | |
| (a) Description of property (Example: 100 sh. XYZ Co.) | (b) Date acquired (Mo., day, yr.) | (c) Date sold (Mo., day, yr.) | (d) Sales price (see instructions) | (e) Cost or other basis (see instructions) | (f) Gain or (loss) Subtract (e) from (d) |
| 8 Saxobank | 11/23/2007 | 12/31/2008 | 600,141. | 1,200,282. | −600,141. |
| JDFX | 01/14/2004 | 02/04/2008 | 9,346,617. | 6,675,034. | 2,671,583. |

(R. 112-5, Gov. Ex. 40: 2008 Form 1040, PgID1821). In his initial 2009 return, Pieron claimed that he sold shares of JDFX stock for $4,450,460 and that the JDFX stock had a cost basis of $3,276,786.

| 7 Net short-term capital gain or (loss). Combine lines 1 through 6 in column (f) . . . . . . . . . . | 7 | −295,024. | | | | |
|---|---|---|---|---|---|
| **Part II  Long-Term Capital Gains and Losses - Assets Held More Than One Year** | | | | | |
| (a) Description of property (Example: 100 sh. XYZ Co.) | (b) Date acquired (Mo., day, yr.) | (c) Date sold (Mo., day, yr.) | (d) Sales price (see instructions) | (e) Cost or other basis (see instructions) | (f) Gain or (loss) Subtract (e) from (d) |
| 8 Saxobank | 11/23/2007 | 12/31/2009 | 33,919. | 67,838. | −33,919. |
| JDFX | 01/14/2004 | 10/13/2009 | 4,450,460. | 3,276,786. | 1,173,674. |

(R. 112-7, Gov. Ex. 42: 2009 Form 1040, PgID1854). Later, Pieron filed amended returns showing drastically different amounts. Pieron's 2008 Form 1040X return included a cost basis of $710,129 for the stock that he sold to Market Shot for ten million dollars.

4

| 7 | Net short-term capital gain or (loss). Combine lines 1 through 6 in column (f) | | | | | 7 | -116,434 |

**Part II  Long-Term Capital Gains and Losses—Assets Held More Than One Year**

| (a) Description of property (Example: 100 sh. XYZ Co.) | (b) Date acquired (Mo., day, yr.) | (c) Date sold (Mo., day, yr.) | (d) Sales price (see page D-7 of the instructions) | (e) Cost or other basis (see page D-7 of the instructions) | (f) Gain or (loss) Subtract (e) from (d) |
|---|---|---|---|---|---|
| 8  JDFX | 1/14/04 | 2/04/08 | 10,000,000 | 710,129 | 9,289,871 |

(R. 112-6, Govt. Ex. 41: 2008 1040X, PgID 1835). His 2009 Form 1040X return did not claim any basis for the stock that he sold to Market Shot for 5.25 million dollars.

| 7 | Net short-term capital gain or (loss). Combine lines 1 through 6 in column (f) | | | | | 7 | -13,505 |

**Part II  Long-Term Capital Gains and Losses – Assets Held More Than One Year**

| (a) Description of property (Example: 100 sh. XYZ Co.) | (b) Date acquired (Mo., day, yr.) | (c) Date sold (Mo., day, yr.) | (d) Sales price (see page D-7 of the instructions) | (e) Cost or other basis (see page D-7 of the instructions) | (f) Gain or (loss) Subtract (e) from (d) |
|---|---|---|---|---|---|
| 8  JDFX | 01/14/04 | 10/13/09 | 5,250,000 | | 5,250,000 |
| | | | | | |

| 9 | Enter your long-term totals, if any, from Schedule D-1. | | | | |

(R. 112-8, Govt. Ex. 48: 2009 1040X, PgID 1868). The inconsistency in these filings is striking.

Additionally, Pieron never purchased JDFX stock from anybody else. As discussed in the government's prior brief, JDFX was a start-up company, so any basis that Pieron had in JDFX stock would be from capital contributions. Though Pieron's 2008 amended return claimed a basis of $710,129, Pieron simply did not have the resources for such a large capital contribution. As noted in the government's prior supplemental brief, between 2003 and 2007, Pieron reported $386,092 in gross income from all income sources. (R. 112, Gov.'s First Sup. Tax

Loss Br., PgID 1797).  And if Pieron did make capital contributions to JDFX,

those contributions would be apportioned to all of Pieron's stock, not just the stock

he sold in 2008.  For him to have a basis of  $710,129 in 20% of the stock he sold

in 2008, he would have had to make capital contributions totaling $3,550,645. Yet,

Pieron's amended 2009 return reported no basis in the 15% of stock that he sold in

2009.

Perhaps most tellingly, Pieron now does not appear to dispute the

government's claim that he did not have basis in the JDFX stock that he sold in

2008, because he now denies that he sold JDFX stock at all.  He now claims that

JDFX was selling its own treasury stock.  As discussed more below, Pieron's ever-

shifting positions on his the tax consequences of his sale of JDFX stock appear to

be based only on what is most expedient for him at a given moment.

In light of all of this, it is apparent that Pieron's claim that he had $710,129

of cost basis in the 20% of JDFX stock that he sold in 2008 is simply false.[1]

---

[1]It is immaterial as to whether Pieron personally made modest capital contributions
to JDFX.  The government does not have records of such contributions, and Pieron
has not endeavored to present any.  The sentencing guidelines state that in some
circumstances, "the amount of tax loss may be uncertain; the guidelines
contemplate that the court will simply make a reasonable estimate based on the
available facts."  U.S.S.G. §2T1.1, comment, (n. 1).  Sixth Circuit case law agrees:
"Loss need not be determined with precision"; it can "be founded on general
factors such as the nature and duration of the fraud." *United States v. Milligan*, 17
F.3d 177, 183 (6th Cir.1994).  Even if Pieron made a modest personal capital
contribution, it is highly unlikely that it would affect the base offense level.

Pieron's inclusion of the false basis amount was "conduct violating the tax laws,"

and it was part of Pieron's scheme to evade and defeat his 2008 taxes. Under

U.S.S.G. §2T1.1 application note 2, the court should include the inflated cost-basis

amount in determining the total tax loss.

Sixth Circuit case law also supports including relevant conduct in the

calculation of the tax loss. In *United States v. Edkins*, 421 F. App'x 511 (6th Cir.

2010), the defendant unsuccessfully objected to the district court's inclusion of

unpaid taxes for years that were not part of the defendant's offense of conviction in

calculating the defendant's tax loss score under the guidelines. The Sixth Circuit

quoted U.S.S.G. §2T1.1 application note 2 and held that "in determining the tax

loss attributable to the offense, 'all conduct violating the tax laws should be

considered as part of the same course of conduct or common scheme or plan unless

the evidence demonstrates that the conduct is clearly unrelated.'" *Edkins*, 421 F.

App'x at 516. In *Edkins*, the Sixth Circuit also reiterated its prior holding that "the

guidelines permit 'the use of tax loss resulting from uncharged [criminal] conduct'

in calculating total tax loss," citing *United States v. Pierce*, 17 F.3d 146, 150 (6th

Cir. 1994). *Id*. (bracket in original). *Accord*, *United States v. Lombardo*, 582 F.

App'x 601, 619 (6th Cir. 2014) (noting that it was irrelevant that the defendant was

not charged regarding some years used in computing the tax loss and holding that

the loss properly included interest and penalties for those uncharged years.)

Pieron was convicted of tax evasion for 2008 and 2009.  His purpose in committing the crime was to evade and defeat payment of his taxes to the IRS. The false basis amount that Pieron claimed on his amended 2008 return—which also included a frivolous theft-loss argument—was part of a common scheme or plan to not fully pay his 2008 and 2009 income tax liabilities.  Accordingly, the court should include the false cost-basis amount in the tax loss calculation.

*The court should not allow Pieron to re-write the history of his stock transaction.*

After the jury convicted Pieron at trial, Pieron began to argue that he did not have any tax liability stemming from the sale of his JDFX stock to Market Shot, Inc.  The court should give no credence to Pieron's latest argument because it is not supported by credible evidence and because this sentencing hearing is not the proper forum for Pieron to revisit his civil tax liability.

Prior to his conviction, Pieron and his attorneys consistently maintained that Pieron personally sold JDFX stock to Market Shot, Inc, and that he re-invested the sale proceeds into JDFX.  (R. 112, Gov.'s First Sup. Tax Loss Br., PgID 1787& 1795-97).  For example, Pieron wrote to his tax preparer, Kim Pavlik:

Dear Mr. Pavlik,

I was a resident in Switzerland from 1998 to 2010. While in Switzerland I founded a company called JDFX Holding AG. JDFX specialized in high frequency trading technology. In 2008, I sold 20% of JDFX to Market Shot LLC of Minnesota and received a capital gain of 10 Million USD. One year later (2009), I sold an additional 15% of JDFX to Market Shot and received a capital gain of 5.25 million USD.

During the period of 2007 through 2009, I loaned a substantial portion of the capital gains back to JDFX as working capital. In Switzerland there is no capital gain tax for a Swiss nationals and the aforementioned sale and loan vehicle was properly structured. However as a US citizen, the selling of corporate shares should have been done through the corporation itself.

(R. 112-14, Gov. Ex 204: Pieron letter to Pavlik regarding JDFX's failure, PgID 1921.)

Market Shot, Inc., the purchaser of the JDFX stock, was in fact a Ponzi scheme, so the Securities and Exchange Commission had a receiver appointed to look for assets to return to victims. In numerous communications with the SEC receiver, Pieron and his attorney reiterated that Pieron had personally sold JDFX stock to Market Shot.

9. **Documents reflecting Cook's payments to Mr. Pieron for purchase of Pieron's shares in JDFX Holding.** Keep in mind what I have reported to you on several occasions, namely, Cook did not purchase his interest in JDFX Holding from the entity, but he brought his interest in JDFX Holding from Mr. Pieron. I refer you to the documents Bate stamp 1-14 to verify this fact. Cook's ownership

(See attached, Gov. Ex 208: Email from John Fedders (Pieron's Attorney) on June 13, 2011, at ¶ 9.)

In 2008 and 2009 it was expedient for Pieron—who was also subject to Swiss tax laws— to structure a deal whereby he personally sold $15.25 million worth of JDFX stock to Market Shot and then re-invest the proceeds. In 2011 it

9

was expedient for Pieron and his attorney to reiterate to the SEC that Market Shot

bought the JDFX stock from Pieron rather than the entity.  Even at trial, prior to his

conviction, Pieron reaffirmed to the court outside the presence of the jury that the

paperwork for the stock sale was in his name and the sale proceeds went to the

company.  (R. 53: Tr., 808).  But now, after Pieron's 2019 tax conviction, that

position is far less expedient, so Pieron wants to use this sentencing hearing to

revisit only the tax consequences of his sale of stock.  The court should not do this

and the sentencing guidelines do not permit it.

The sentencing guidelines focus on intended loss, not the actual loss to the

government. It simply does not matter for sentencing purposes whether Pieron

could have structured his stock sale transaction in a different manner to avoid

incurring individual income tax liabilities.  In several contexts, the Sixth Circuit

has explained that tax loss "is based on the amount by which the income was

understated on the false tax returns and not on whether the government ultimately

lost money." *United States v. Tandon,* 111 F.3d 482, 490–91 (6th Cir.1997*); see

also United States v. Daulton*, 266 F. App'x 381, 387 (6th Cir.2008) ("The amount

of loss is based on the loss the defendant intended to inflict and not the

government's actual loss.") (citing *United States v. Kraig*, 99 F.3d 1361, 1370–71

(6th Cir.1996)).  It is simply immaterial whether Pieron could have structured his

stock sale in a way to avoid a personal U.S. tax consequence, because the trial and

10

evidence established that Pieron filed returns which reported income from the transactions, claimed false credits to offset the reported income, and evaded payment of the tax due. Pieron's tax loss should be based on the stock transaction as he structured it in 2008 and 2009, and he should not be able to re-write the transaction to lower his criminal sentence.

*The Sentencing Guidelines are the relevant and applicable law.*

The government is not currently asking the court to assess a tax or even to determine whether the IRS has properly assessed a tax. The government has prepared tax calculations in order to assist the court in determining Pieron's criminal tax loss amount. That is the only issue that is before the court. At the end of the day, the defendant's civil tax liability may or may not be different from his criminal tax loss amount.

The court is correct that the civil tax authorities did not seek an audit of Pieron's 2008 and 2009 taxes and that the IRS issued a Notice of Balance Due to Pieron for 2008 and 2009. (R. 114-37 (Notice for 2008); R. 114-36 (Notice for 2009). Perhaps the civil tax authorities will seek to assess a tax amount different from the amount that Pieron reported on his 2008 and 2009 amended tax returns— which were accepted by the IRS and form the basis of the IRS's current civil assessment. If they do, they may have to navigate the statutes of limitations in 26 U.S.C. §§ 6501 and 6212. Perhaps at a civil proceeding Pieron will argue that he

11

did not personally sell the JDFX stock, or maybe he will seek a theft-loss deduction, or argue a claim-of-right issue or raise something completely new. Thankfully, however, this court does not need to reach any of those issues in deciding Pieron's criminal tax loss amount under the federal sentencing guidelines.

## Conclusion

For the reasons above, the court should accept the government's criminal tax loss calculations and should not allow Pieron to re-write the JDFX stock sale transaction from over ten years ago in order to lower his base offense level for sentencing in this criminal case.

Respectfully submitted,

Date:  October 11, 2019

Matthew Schneider
United States Attorney

s/Jules M. DePorre
Jules M. DePorre (P73999)
Assistant U. S. Attorney
600 Church Street
Flint, Michigan 48502-1280
(810) 766-5026
jules.deporre@usdoj.gov

s/Janet L. Parker
Janet L. Parker (P34931)
Assistant U.S. Attorney
101 First Street, Suite 200
Bay City, MI 48708
(989) 895-5712
janet.parker2@usdoj.gov

<u>Certificate</u>

On October 11, 2019, I filed this pleading and the attached exhibit by using the Clerk of the Court's ECF system.  The ECF system will automatically serve counsel of record.

<u>s/Jules DePorre</u>