**From:** jfedders@██████████████████████] **On Behalf Of** John Fedders
**Sent:** Monday, June 13, 2011 9:23 AM
**To:** Russell Rigby
**Subject:** Cook Receiver/James Pieron/Fedders/Discovery Issues

Mr. Rigby:

This email follows up on our Tuesday, June 6, telephone conversation during which we discussed the Cook Receiver's May 25, 2011 Subpoena to my client, James Pieron. This email reflects my understanding of our discussions.

1.   Your office will PDF to me the sheet marked "Draft" which I provided to you when we met with Mr. Pieron in my office here in D.C. more than a year ago.

2.   I understand that the Receiver has in his possession the 685 documents which I produced to the S.E.C. staff in Chicago in Fall 2009 under cover of letters dated November 11, November 18 and November 19, 2009. I will not be responsible for reproducing those 685 documents to the Cook Receiver or you.

3.   Those 685 documents were responsive to an S.E.C. Subpoena, as modified by the S.E.C. staff. Importantly, those 685 documents are responsive to the requests in the Receiver's May 25, 2011 Subpoena. **SPECIAL NOTE:** Among the 685 documents are indexes that identify the documents that follow each index. You will find the indexes at the documents Bates stamped 1, 15, 75, 313 and 346. The indexes are a very helpful guide.

4.   On behalf of Mr. Pieron, I have provided to you a few other documents from time to time in response to particular requests you made of me. In addition, as counsel for Sandra Werwega, I produced to you documents on January 21, 2011.

5.   At my direction and after conversations with you, in January 2010 the JDFX Fund Manager Ltd. wire transferred approximately $125,000 to the Cook Receiver and then in mid-October 2010 the JDFX Fund Manager voluntarily wire transferred approximately $350,000 to the Cook Receiver. At that time, I believed the latter wire represented monies in JDFX Holding (Swiss) to which Cook was entitled. To my considerable embarrassment, I have now learned that the wire transfer of approximately $350,000 was excessive by about $150,000. The correct



GOVERNMENT
EXHIBIT
208

amount that should have been wired is about $200,000, and I will be preparing an accounting to verify this and asking for a refund to Mr. Pieron.

6.      When we spoke on Tuesday, we agreed that our understandings then made are without prejudice. By that I mean, you said that any understandings between us now for production by Mr. Pieron will not be a bar to you requesting at a later time other documents deemed by you to be covered by the May 25, 2011 Subpoena. And, as I added, nothing now understood between us impedes or restricts me from objecting by motion or otherwise to any request or requests made subsequently under the May 25 Subpoena based on my assertion of irrelevance or other objections.

7.      Now with respect to the documents which you wish produced in the immediate future.

8.      **Documents reflecting monies deposited by Cook and others for trading on the JDFX platform.** In 2009, the government attorneys investigating Cook's conduct were provided by me a **summary sheet** reflecting funds in and out of JDFX Fund for trading on the platform. I was told when meeting with the government officials in Minnesota that my calculations from the trading were within $5.00 of the governments' own calculations – and they had the benefit of documents which I did not have. I believe you have the schedule that the government prepared. I will **again produce** to you a schedule of the deposits by Cook and others for trading on the JDFX platform, and this will be a copy of a schedule which you already have.

Among the 685 documents which you already have are numerous documents which underlie Cook's trading activity, and reflect what is reported in the aforementioned schedule. Documents Bates stamped 75-312 report in various ways Cook's trading on the JDFX platform (at JDFX Fund) for 2007, 2008 and 2009. Documents Bates stamped 313-345 are the documents reflecting money sent from JDFX Fund, or money sent to JDFX entities, involving Trevor Cook, Bo Beckman, UBS Diversified Growth, LLC, Oxford FX Growth L.P., Oxford Global Advisors, LLC, Oxford Global Partners, LLC, Market Shot, LLC and PFG Coin and Bullion.

You also asked for the trading records reflecting each of the individual transactions on the platform, as well as the records of the executing broker. First, I do not have the records of the executing broker. Second, in 2009, the government officials questioning Mr. Pieron made inquiry about the same records. I provided a Monthly Summary Report for each month that Cook traded on the platform, and those Reports are among the 685 documents. If you, in fact, wish the heavy volume of underlying trading records for 2007, 2008 and 2009, **I will produce** them. There are between 100 pages and 1,300 pages of records for each month. Tell me if you wish this volume of documents.

9.  **Documents reflecting Cook's payments to Mr. Pieron for purchase of Pieron's shares in JDFX Holding.** Keep in mind what I have reported to you on several occasions, namely, Cook did not purchase his interest in JDFX Holding from the entity, but he brought his interest in JDFX Holding from Mr. Pieron. I refer you to the documents Bate stamp 1-14 to verify this fact. Cook's ownership in JDFX Holding (Swiss) is separate and apart from Cook's subscription for trading purposes in the JDFX Fund, B.V.I.

While I believe you already have the schedule reflecting Cook's payments to Mr. Pieron, I again **will produce** the schedule listing the Cook monies paid to Mr. Pieron.

As you know, providing details with respect to "application of funds" is difficult in view of the fact that money is fungible. Despite this fact, I will provide to you a schedule of Mr. Pieron's general use of those funds where specific identification is possible.

You also asked for the production of documents, including correspondence, reflecting the liquidation of JDFX Fund and JDFX Holding. **I will produce** those documents. Mr. Pieron has scant few documents in this regard. Keep in mind that JDFX Fund was not a corporate entity. JDFX Fund had subscribers. Since 2009, the Fund has had no subscribers. As to JDFX Holding, there is little documentation concerning the liquidation. My understanding is that all creditors were paid, except for a Swiss tax liability in JDFX RMS. After the creditors were paid, the balance of less than $10,000 was taken by the JDFX Receivers as fees.

Mr. Rigby, you will recall that on August 10, 2010 I sent to you an extensive email—at least eight pages in length with two attachments. Therein, I provided

you details of post-liquidation assets and offered, on behalf of Mr. Pieron, to purchase some of those assets. I have received no response indicating the Receiver was interested in discussing those assets. Of course, their value has now dwindled.

10.     **Documents reflecting Mr. Pieron's investment in Institutional Liquidity, referred to as ILQ.** Of course, this request is with respect to Mr. Pieron's use of his personal funds in view of the fact that the monies he received from Cook were when Cook purchased a portion of Mr. Pieron's ownership in JFDX Holding (Swiss). I believe this request could be objected to on the grounds of relevance. Notwithstanding that fact, I **will provide** you the documents that reflect an approximately $350,000 financial interest in ILQ. ILQ has nothing to do with the JDFX entities.

We spoke of the documents by which in April 2010 ILQ purchased iTrade, and we reached an understanding that at least at present I need not deliver the transaction documents reflecting the closing of that purchase -- except to the extent that any of those documents reflect Mr. Pieron's financial interest in ILQ.

11.     I believe the foregoing accurately reflects our telephone conversation on Tuesday afternoon, June 7. If I have omitted any substantive understanding which we reached, please let me know promptly. I will do my best to have all of the aforementioned documents to you within 10-14 days, namely, before June, 24. Tell me whether you want the large volume of trading records referred to in the third paragraph of item 8 above.

Respectfully submitted, John Fedders.

--
John M. Fedders
Attorney at Law
Washington, D.C. 20036-1608

E-mail: jfedders
Website:

