UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-CR-20489 |
| Plaintiff, | Thomas L. Ludington |
| v. | United States District Judge |
| JAMES D. PIERON, JR., | Patricia T. Morris |
| Defendant. | United States Magistrate Judge |
| _____/ | |

**Government's Response to Defendant James Pieron, Jr.'s Supplemental Brief Concerning Tax Loss**

Pursuant to the court's order (R. 123), the government filed its second supplemental brief on tax loss issues on October 11, 2019. (R. 125: Brief, 2841-57). That same day, James D. Pieron, Jr. submitted a supplemental brief under seal, purportedly to address the tax loss calculations that should be made by the court to determine Pieron's guidelines sentencing range. The government makes the following response to Pieron's submission, and submits that the court can and should make its tax loss findings without conducting an evidentiary hearing.

Brief

As a threshold matter, the government rejects James Pieron's contention that it was somehow improper for the government to offer and the court to receive into evidence the tax returns signed by Pieron with the attestation that those returns

1

were "true, correct and complete."[1] The tax returns that Pieron sent to the IRS were statements of a party opponent, without regard to the truthfulness of Pieron's statements or his current desire to impeach his own sworn representations to the IRS. Rule 801(d)(2) of the Federal Rules of Evidence. Moreover, while it is true, as Pieron has observed (R. 124: Pieron brief, p.8),[2] that some of the government's trial evidence contradicts the tax returns Pieron submitted to the IRS, the contradictions result from the fact that Pieron's various tax returns for the relevant years were part of his evasion scheme and thus – particularly as to his claimed stock basis, theft-loss claim and claim-of-right argument – not in all respects "true, correct and complete."

The government acknowledges that the IRS sent James Pieron, Jr. tax bills, not tax deficiency notices. (R. 114-37 (Govt. Ex. 94: Balance Due Notice for 2008); R. 114-36 (Govt. Ex. 93: Balance Due Notice for 2009). However, that fact is irrelevant for purposes of computing Pieron's guidelines score.

The pertinent difference between a Notice of Balance Due (tax bill) and a deficiency notice (90 day letter) is that a deficiency notice follows the results of an audit, and 26 U.S.C. § 6212 gives the taxpayer 90 days to file a complaint with the

---

[1] Pieron signed and sent to the IRS different versions of his 2008 and 2009 tax returns, each showing that he owed a tax, but he did not tender payment of the taxes with those returns.

[2] The government infers from the docket that Pieron's supplemental brief is R. 124.

Tax Court to challenge an IRS assessment. A notice of balance due simply notifies the defendant of outstanding taxes owed. In this case, those taxes were self-assessed by the defendant's own return, so there would be nothing to challenge.

Despite the fact that Pieron's 2008 and 2009 tax returns and amended tax returns included an inflated cost-basis for the JDFX stock that he sold and a frivolous theft-loss argument, the returns were not audited by the civil-side of the IRS because the IRS criminal agent investigating the Pieron case put a "freeze code" on Pieron's file. The freeze code served to preserve Pieron's Fifth Amendment privilege against self-incrimination in that the freeze code kept the civil side of the IRS from auditing Pieron's tax returns, a process that would have involved Pieron being questioned by the IRS while under oath. Thus understood, it is apparent that the "freeze code" served to protect Pieron's rights in the criminal case at the expense of the IRS's ability to collect taxes owed by Pieron and, in pursuit of IRS collection actions, to issue deficiency notices to Pieron. Pieron would have had a valid complaint if a civil audit had been conducted by the IRS while he was the target of a criminal investigation.

Pieron contends, without citation to any authority, that "a taxpayer can amend a tax return at any time." (R. 124: Pieron brief, p. 2). The Sixth Circuit has found otherwise in *Allred v. United States*, 689 F. App'x 392, 396 (6th Cir. 2017), holding that the IRS may, but is not obligated to, process an amended return. More

3

important, Pieron's contention is irrelevant for purposes of computing the tax loss for which Pieron is responsible under the guidelines.

The guidelines provide, "The tax loss is not reduced by any payment of the tax subsequent to the commission of the offense." USSG §2T1.1(c)(5). Because the guidelines prohibit reducing the tax loss by the amount of any payment made after the offense, it follows that a defendant's intended tax loss under USSG §2T1.1(c)(1) cannot be reduced or eliminated by the simple (and less expensive) expedient of filing an amended return that purports to show no tax owed after conviction of a tax offense.[3] In addition, neither Pieron's payment of a portion of his previously unpaid taxes for 2008 and 2009 in March of 2018, when he knew that he was about to be indicted,[4] nor his additional payment after he was actually indicted in July of 2018, may be considered by the court in determining the tax loss for which Pieron is responsible. USSG §2T1.1(c)(5).

As the court has noted, Pieron now claims that he did not own the JDFX shares that he sold for $15.2 million. As shown by Pieron's many statements made

---

[3] USSG §2T1.1(c)(1) provides, "If the offense involved tax evasion or a fraudulent or false return, statement, or other document, the tax loss is the total amount of loss that was the object of the offense (*i.e*, the loss that would have resulted had the offense been successfully completed)."

[4] Not only had Pieron previously entered into tolling agreements with the government, but in the spring of 2018, he also rejected a plea agreement that his attorneys had negotiated with the government.

prior to his conviction, and summarized in the government's prior briefs regarding tax loss (R. 112: Brief, 1787, 1795-97; R. 125: Brief, 2843-59), for at least a decade Pieron represented to all concerned that he – not a corporate entity – sold the stock at issue. Indeed, though Pieron has conceded that his attempt to rely on either a theft loss or claim of right theory to negate the income he realized from his stock sales is legally unsustainable, as the court also has noted (R. 123: Order, 2815-16),[5] the fact remains that Pieron would not have attempted to rely on those theories if he had not sold his own stock in JDFX.

    It is fair to ask at this juncture why Pieron has consistently acknowledged for so many years before to his conviction that he personally sold the stock at issue, but now that he has been convicted, he seeks to re-write that history. The answer to that question is readily apparent: Pieron's current, futile attempt at fabricating yet another set of assertions to evade his 2008 and 2009 taxes is intended to negate the sentencing consequences of his tax evasion conviction.[6]

---

[5] (R. 117: Pieron Brief, p. 6, sealed). Note 2 in his current brief (R. 124, p. 6), suggests that Pieron may attempt to revive his legally and factually unfounded theft loss theory.

[6] It is likewise fair to question the authenticity of the stock certificates Pieron has provided to the court as attachments to his tax loss briefs. One might also ask if Pieron plans to share with the Swiss taxing authorities, or the SEC and its receiver, the same representations he now is making to the court for sentencing purposes.

The final argument made in Pieron's most recent tax loss brief essentially is that the court need not determine the tax loss for which Pieron is responsible, but should instead grant his motion for new trial. That argument betrays Pieron's awareness of his inability to provide credible tax loss information that refutes the government's tax loss computations, despite Pieron having been given multiple opportunities to do so by the court. Because Pieron admittedly is a very smart man, he must understand that providing sworn hearing testimony that contradicts his own earlier statements does little to nothing to establish the truth of the matter to which the statements relate.[7] Given that awareness, it is understandable that he might hope for better success at a second trial.

Conclusion

The court has given Pieron multiple opportunities to either accept the government's tax loss calculations or challenge those calculations with persuasive evidence. Pieron has done neither. The observations above, along with others made in the briefs provided to the court by the government, and the insufficiency of Pieron's briefing on the tax loss issue, lead to the conclusion that a three-day

---

[7] Pieron also must comprehend that providing sworn testimony at an evidentiary hearing that contradicts other statements he has made, often under oath, may subject him to charges of perjury, false statements, or obstruction of justice. What Pieron may not know or appreciate is that even without a separate prosecution for perjury, false statements or obstruction of justice, the court can find that it is appropriate to add points to Pieron's offense score under USSG §3C1.1.

evidentiary hearing is not needed for the court to make the tax loss determination required by the federal sentencing guidelines in this case. Rather, the court should adopt the $3.5 million to $9.5 million tax loss range, and resulting base offense level of 24, that the government's calculations have demonstrated to the court in Pieron's case.

                                              Respectfully submitted,

Date: October 16, 2019                   Matthew Schneider
                                                  United States Attorney

| s/Jules M. DePorre | s/Janet L. Parker |
|---|---|
| Jules M. DePorre (P73999) | Janet L. Parker (P34931) |
| Assistant U. S. Attorney | Assistant U.S. Attorney |
| 600 Church Street | 101 First Street, Suite 200 |
| Flint, Michigan 48502-1280 | Bay City, MI 48708 |
| (810) 766-5026 | (989) 895-5712 |
| jules.deporre@usdoj.gov | janet.parker2@usdoj.gov |

<u>Certificate</u>

     On October 16, 2019, I filed this pleading by using the Clerk of the Court's ECF system. The ECF system will automatically serve counsel of record.

                                              s/Janet Parker