UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

              Plaintiff,                          Case No. 18-20489

v                                                 Honorable Thomas L. Ludington

JAMES D. PIERON, JR.,

              Defendant.

_____/

**OPINION AND ORDER ADDRESSING TAX LOSS GUIDELINE**

On July 18, 2018, an indictment was returned against Defendant James D. Pieron for tax evasion. ECF No. 1. On March 7, 2019, a jury found Defendant guilty of the offense. In April 2019, a status conference was conducted. The primary purpose for the conference was to address the Federal Sentencing Guideline issues that the parties anticipated would need to be resolved.

Following the April status conference, the Government was directed to file a Tax Loss Assessment and Defendant was directed to file a response. ECF No. 59. The Government's tax loss assessment suggested that the income reported on the form 1040 filed by Defendant on his income tax return filed on January 16, 2012 for 2008 and 2009 is reasonably accurate. ECF No. 60 at PageID.1097. It concluded that the tax loss for 2008 was $2,517,958 and for 2009, $777,320. *Id.* at PageID.1097-1098. On the other hand, Defendant concluded that he had no tax loss for 2008 and 2009 because Trevor Cook did not purchase his stock from Defendant, but from JDFX or alternatively, a new Swiss JDFX entity. ECF No. 65.

Due to these contradictory factual assertions, the parties were directed to submit supplemental briefing. The Government's briefing explained that it had selected the July 16, 2012 returns for 2008 and 2009 because they are simply "more accurate than the initial returns prepared by Carol Nathan" because they more correctly correspond to the "available bank records." ECF

No. 112 at PageID.1791. The Government concluded that the JDFX stock sold by Defendant to Mr. Cook had no tax basis because the Government was "not aware of source documents reflecting any capital contribution that Pieron made to JDFX Holdings prior to the stock sales." ECF No. 112 at PageID.1796.

Defendant's supplemental briefing included documents corroborating in part his suggestion that the funds received from Cook were for a new JDFX entity. This included a "Share register" listing three JDFX shareholders: Market Shot LLC (Cook's company), Defendant, and Clive Diethelm. ECF No. 117-16. According to the register and accompanying share certificates, JDFX had 10,000,000 registered shares. On December 15, 2006, 2,000,000 shares were issued to Market Shot LLC, 1,000,000 shares were issued to Clive Diethelm, and 7,000,000 shares were issued to Defendant. Defendant contends that he "sold no shares to Cook and thus no actual capital asset was sold." ECF No. 117 at PageID.2507. Defendant further claims that the "documents were recently obtained from Clive Diethelm…", but provides no further explanation about their location since December 2006. *Id.*

Defendant also included the Government's Exhibit 138 from trial. It consists of various bank transaction reports from 2006 to 2009 documenting the receipt of funds by JDFX . Defendant contended that pursuant to Exhibit 138, "it is legally impossible to characterize the $10,000,000 wire transfers in 2006 and 2007 as a capital gain to Pieron" because all the funds were received by JDFX and not Pieron. ECF No. 117 at PageID.2509. Defendant contended that Exhibit 138 demonstrates that Defendant never sold his personal shares to Cook. Instead, Cook purchased the shares directly from JDFX. He further argued that "Pieron did not receive $10,000,000 in 2008 and $5,250,000 in 2009 as indicated on the 2008 and 2009 tax returns." *Id.* In subsequent briefing, Defendant claimed that "even if this Court found that Pieron had capital gains as a result of Cook's

$15 million investment, only $5 million was invested in JDFX in 2008 and 2009." ECF No. 124 at PageID.2824.

Requiring further clarity, the Court directed the parties to file additional supplemental briefing. The parties' arguments remain the same in both sets of briefing and the Court has reached the following conclusions.

## I.

Defendant's supplemental briefing characterizing his sale of JDFX stock as the sale of JDFX treasury stock or a JDFX Swiss affiliate is rejected as too much too late. This argument is making its debut now after years of contrary representations.

### A.

Defendant's assertions are contradicted by his numerous filed returns, statements made by Defendant to the SEC, and statements made by Defendant's counsel during trial. Such conduct is not permissible under the doctrine of judicial estoppel. The Supreme Court has held

> [W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position…

*New Hampshire v. Maine* 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). This is to "protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* (quotations omitted).

Judicial estoppel may be avoided "when a party's prior position was based on inadvertence or mistake." *Id.* (citations omitted). Defendant has not offered any evidence of good faith inadvertence or mistake concerning his understanding of the sale of the stock. Indeed, the jury was instructed that it was a complete defense to the charge to rely on an accountant or tax professional

– the jury found no good faith defense. Defendant has repeatedly represented that he personally sold his shares to Cook. In a letter to his accountant, Kim Pavlik, he stated

> I was a resident in Switzerland from 1998 to 2010. While in Switzerland I founded a company called JDFX Holding AG. JDFX specialized in high frequency trading technology. In 2008, I sold 20% of JDFX to Market Shot LLC of Minnesota and received a capital gain of 10 Million USO. One year later (2009), I sold an additional 15% of JDFX to Market Shot and received a capital gain of 5.25 million USO.
>
> During the period of 2007 through 2009, I loaned a substantial portion of the capital gains back to JDFX as working capital. In Switzerland there is no capital gain tax for a Swiss nationals [sic] and the aforementioned sale and loan vehicle was properly structured. However as a US citizen, the selling of corporate shares should have been done through the corporation itself.

ECF No. 112-14 at PageID.1921.

In a letter to the SEC, his attorney at the time, John Fedders, explained that Defendant had personally sold his JDFX stock to Market Stock. It provides

> Keep in mind what I have reported to you on several occasions, namely, Cook did not purchase his interest in JDFX Holding from the entity, but he brought [sic] his interest in JDFX Holding from Mr. Pieron…While I believe you already have the schedule reflecting Cook's payments to Mr. Pieron, I again will produce the schedule listing the Cook monies paid to Mr. Pieron.

ECF No. 125-1 at PageID.2856.

During trial, Defendant's attorneys at the time, Michael Minns and Ashley Arnett, made similar statements to the Court during a sidebar. The transcript provides

> THE COURT: [Y]ou agree, and as would your client, that there was $15 million advanced to him in at least 2007/2008.
>
> ***
>
> MS. ARNETT: It went to the company.
>
> MR. MINNS: It went to the company?
>
> THE DEFENDANT: The paperwork.

> MR. MINNS: The paperwork was in his name; the money went to the company. Is that correct?
>
> THE DEFENDANT: That's correct.
>
> MR. MINNS: So he didn't take personal possession of the money, but the paperwork put the money in his name. The money went to the company.
>
> THE COURT: Where did the stock go?
>
> MR. MINNS: The stock went to the investor, Cook.
>
> THE COURT: From whom?
>
> MR. MINNS: It came from Mr. Pieron. It should have come from the company.
>
> THE DEFENDANT: Yeah, yeah, that was a mistake.
>
> THE COURT: That would have been helpful.
>
> MR. MINNS: I think he's stuck with it civilly, Your Honor.

ECF No. 53 at PageID.806-808. Again, the exchange demonstrates that Cook purchased the stocks from Pieron, not from JDFX.

Defendant argues that "[r]egardless of the filed tax returns or the tax positions taken by Pieron, his lawyers, and his accountants, this Court has an obligation to make its own findings based on *reliable* facts, concerning disputed sentencing issues." ECF No. 124 at PageID.2821 (emphasis in original). Such a claim is extraordinary. Where are reliable facts to be found if the Court may not consider assertions made by Defendant, his counsel, his accountants, and his tax returns? Defendant signed each of his tax returns, affirming that the information contained therein was accurate. He now attempts to reject them wholesale by contending that they are based on "erroneous facts." *Id.* at PageID.2822.

Some or all of Defendant's three tax returns are necessarily based on erroneous factual assertions. The values vary dramatically from one return to the next. However, such

inconsistencies do not obviate one fact consistent throughout the returns: Defendant sold his shares to Cook. Defendant's new argument made after the eleventh hour that he did not sell the JDFX stock to Cook is untenable. Defendant's tax returns and statements to the SEC and the Court indicate that he did in fact sell his stock.

**B.**

Defendant argues that "there is no statute of limitations concerning a taxpayer's ability to amend a tax return." *Id.* at PageID.2820. He explains that pursuant to 26 U.S.C. §6511, a taxpayer has "3 years from the time the return was filed or 2 years from the time the tax was paid" to make a claim for credit or refund of an overpayment. 26 U.S.C. §6511. Defendant paid his 2008 and 2009 taxes in 2018 he explains, permitting him to amend his return and claim refunds until 2020. Accordingly, he reasons that "[i]t defies logic to suggest that Pieron cannot take a tax position at a sentencing hearing even though he is able to file an amended return and claim refunds taking such positions." *Id.* at 2821.

Though Pieron may still be able to file amended returns, the IRS is entitled to reject them. As stated by the Supreme Court, "the Internal Revenue Code does not explicitly provide either for a taxpayer's filing, or for the Commissioner's acceptance, of an amended return; instead, an amended return is a creature of administrative origin and grace." *Badaracco v. Commissioner of Internal Revenue Service*, 464 U.S. 386, 393 (1984). Defendant furnishes no explanation that would support the IRS accepting his amended returns. Nothing has changed in his circumstances since the time of his initial tax return. The only thing that has changed is Defendant's characterization of the facts. For the same reasons, the Court is also entitled to reject Defendant's newly minted "tax position at a sentencing hearing."

## II.

At sentencing, the burden of proof for Guideline issues of fact is proof by a preponderance of the evidence. The burden falls to the government to prove the initial offense level and then shifts to the party seeking an adjustment to that initial offense level. *See U.S. v. Rodriguez*, 896 F.2d 1031, 1032–33 (6th Cir. 1990) ("[T]he government bears the burden of proof to establish facts that would enhance a sentence and [] the level of proof is by a preponderance of the evidence for contested facts."); *U.S. v. McGhee*, 882 F.2d 1095, 1097–99 (6th Cir. 1989).

Because the Government bears the initial burden of proof for the tax loss, it necessarily should bear the burden of proof of Defendant's taxable revenue for 2008 and 2009, including the sales of proceeds of the Defendant's JDFX stock. It may not simply rely upon Defendant's 1040Xs as appearing to be consistent with source documents. The Government may not choose one of the three because it most closely corresponds with the available bank records. It must prove what the bank records demonstrate. The burden of proof lies with the Government to establish the amount of Defendant's taxable income.

By the same token, Defendant bears the burden of proving any offsetting deductions, particularly the tax basis for the stock and any later contributed amounts, serving to reduce his tax liability for 2008 and 2009. Using source documentation, he must prove any offsetting deductions he believes apply to reduce his tax liability.

**III.**

Defendant's sentencing hearing is scheduled for October 29-31, 2019. The parties are **DIRECTED** to present their oral arguments consistent with the conclusions presented in this order.

Dated: October 23, 2019                          s/Thomas L. Ludington
                                                                                 THOMAS L. LUDINGTON
                                                                                 United States District Judge