UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                      Case No. 18-20489

v                                        Honorable Thomas L. Ludington

JAMES D. PIERON, JR.,

        Defendant.
_____/

**ORDER DIRECTING SUPPLEMENTAL BRIEFING**

On July 18, 2018, an indictment was returned against Defendant James D. Pieron for tax evasion. ECF No. 1. On March 7, 2019, a jury found Defendant guilty of the offense. This order provides for additional briefing on issues addressing the Government's tax loss.

**I.**

During 2008 and 2009, the Defendant, a United States citizen, resided in Switzerland where he owned and operated a currency trading company called JDFX and several related companies. The Defendant was the founder and organizer of JDFX. According to the Defendant's income tax returns, the most significant financial transaction he engaged in in 2008 and 2009 was the sale of a portion of his JDFX stock to a Mr. Trevor Cook and a company named Market Shot controlled by Cook.

The Defendant was interviewed by the SEC in November of 2009. The following excerpt from the interview transcript is a summary of the Defendant's description of his transactions with Cook and Market Shot during the relevant time period:

> JDFX consists of three companies: Holdings, Tech, and Risk and Management Services ("RMS"). JDFX has two products: ITP – allows traders to trade at best price and it is used by various entities, including, JPMorgan, Barclay, Tresner, UBS, Deutche, and Bank of America and its function is to route orders at best price; Kontrol – risk management product which allows retail brokers to run

business from one station, it controls executions, risk trends and hedges at best price.

JDFX Holdings (formed in 2007) owns the two subsidiaries - Tech (formed in 2006) and RMS (formed at end of 2007 or early 2008). Tech is where the development takes place, it has workers and bills, takes cares of work permits and visas. RMS was created with the idea of being the vendor for the product like a marketing and sales entity. JDFX has not launched the Kontrol program because of regulatory issues. All JDFX entities were formed by Pieron and are based in Switzerland.

JDFX Fund is an entity incorporated in the Virgin Islands which holds brokerage relationship with Deutche Bank – who credits. JDFX Fund is a regulated entity by Financial Services Commission ("FSC"). JDFX Fund Manager manages JDFX Fund. Neither of these entities have any legal relationship with JDFX Holdings. The JDFX name came from **"James" – "David" (attorney who helped Pieron form JDFX)** and FX. Pieron is the CEO, founder and majority holder of all of the JDFX entities. JDFX Funds was formed in 2005.

JDFX Holdings owners are: Market Shot 35%; James Pieron 52.5%; and Clyde Diethelm 12.5%. **Market Shot (Cook's company) increased its % ownership in 2009 from 20 to 35%** and Diethelm earned its share thru time.

Pieron met Cook thru Nolan S. from PFG, Inc of Chicago. Pieron got a telephone call from Nolan telling him Cook was in town (in Switzerland) and wanted to meet with him. Cook showed up in Zurich around Sept or Oct 2006. Pieron later met Beckman thru Cook in his office in St. Paul around 2007. Cook wanted to meet with Pieron because he was making a tour of several FX companies. There was no purpose for the meeting; Cook was looking at FX companies. They talked about technology and Pieron gave Cook a demonstration of the ITP which was 90% developed and Kontrol's prototype. Cook did not say why he was interested in Pieron's products. Pieron was trying to do business with PFG and met Cook as a favor. The meeting was around l0 PM, and it was very inconvenient for Pieron.

Pieron doesn't recall when he spoke with Cook after than – sometime between Sept to December 2006. Cook was very impressed with the technology and was interested in trading in his platform and in investing in the company. At that time, Pieron was negotiating with FXOQ for an investment in the JDFX entities and they had done an evaluation. When Cook said he wanted to buy part of the company, Pieron had two deals on the table (Cook and FXOQ). The difference between the deals is that Cook wanted a bigger piece of the company and sent up a deposit immediately to show he was serious. The evaluation made for JDFX was for $50 million. [Per Fedders - the evaluation may be less; they don't know the value of JDFX as of today.]

>        Cook's said he wanted to invest in JDFX because he wanted to personally diversify himself. Cook wanted to invest twice as much as FXOQ. There were no representation made by Cook, he was interested in trading in JDFX's platform because he will be savings millions per year. **Cook's offer was $10 million for 20% ownership.** Cook didn't say where the money was coming from – he sent half million deposit. [Per Fedders - the deposit came from UBS Diversified Growth ("UBS Diversified") account on 12/4/06.] **There were several transfers after the initial deposit - it ended up being $10 million for 20% of company. From December 2006 (deposit) through the end of 2008 or early 2009 Cook invested $15.2 million to buy stock from Pieron in the name of Market Shot for its current ownership of 35%.** [Per Fedders - most checks came from UBS Diversified, 2 from Cook and 2 from Market Shot.]
>
>        Not all money received from Cook represented purchase of shares, some of the money to the Holding company. [Per Fedders – Cook was buying 35% investment, other money to trading platform for trading and Cook exercised own discretion without Pieron's input. Beginning in 3/6/07 up to June 2007, Cook transferred money (including some from Beckman's entity). Cook deposited for trading was about $22.3 million and withdrew $13 million. Cook had some success trading and was up 30% at some point but suffered losses of about $9.5 during 2007-2009. Balance on the account is now between $123-125,000. Cook took 2 withdraws back to back: 1/20/09 for $5 million and 1/26/09 for $7 million *{bank records show this withdrawal on 6/26/09}* and had previously taken out $1 million on 6/28/07.] Cook didn't say why he was withdrawing funds.
>
>        Funds for the stock purchase went mostly to JDFX Holdings' two accounts at Credit Suisse and UBS. but because JDFX Holdings didn't exist when Cook started sending funds for his investment, the funds were sent to JDFX Management at Credit Suisse. Funds for the trading platform were sent to JPMorgan-London. Funds from Cook to UBS AG and Credit Suisse were for stock and funds to JPMorgan were for trading. [Per Fedders there were also $500,000 from Oxford Global Advisors ("Oxford Advisors") as loan payback on 4/14/08 – loan payback of $650,000 and $150,000 was returned. There were 3 deposits from Oxford Global FX Growth ("Oxford FX"): 4/20/08 $1 million; 5/8/08 $2 million and 5/19/08 $1 million. Shares were transferred by certificate from Cook.]

ECF No. 112-10 at PageID.1902-1904 (sic throughout) (emphasis added).

## II.

In March 2019, a jury convicted Pieron of tax fraud. The Defendant's initial tax preparer, Carol Nathan, testified during the trial, but no other tax preparers who the Defendant communicated with were called as witnesses. The Defendant also elected not to testify. On April

- 3 -

10, 2019, the Court held a status conference to address the Federal Sentencing Guideline issues that the parties anticipated would need to be resolved. Following the April status conference, the Government was directed to file a Tax Loss Assessment and Defendant was directed to file a response. ECF No. 59. The parties were later ordered to submit two sets of supplemental briefing. ECF Nos. 110, 123.

**A.**

The Defendant's description of the transactions in his supplemental briefing on tax loss varied dramatically from the information reported in his tax returns. In his tax returns, Defendant represented that Mr. Cook purchased the stock from him, not from JDFX. In his supplemental briefing, he explained that he, Mr. Cook, and Mr. Diethelm each acquired treasury stock issued by the corporation.

Defendant further explained that while Cook paid for his stock in numerous payments, each shareholder received a single stock certificate directly from JDFX. More specifically, stock certificates were issued only once in December of 2006. They were issued to Trevor Cook (2,000,000 shares), Clive Diethelm (1,000,000 shares), and James Pieron (7,000,000 shares). ECF No. 117-16. Importantly, Defendant sought to clarify that he never sold any JDFX stock to Cook. Cook purchased his stock from JDFX.

Equally important to the Defendant was his further clarification that he never personally received any of the funds from Cook. It appears that this assertion is corroborated by the Government's Exhibit 138.

**B.**

Shortly before the Sentencing Hearing, the Court entered an opinion and order addressing the tax loss guideline. The Court concluded that Defendant was not entitled to advance his newly

minted factual explanation concluding that he was judicially estopped from claiming that Cook purchased his shares from JDFX rather than from him. The Court's reasoning was based on Defendant's numerous filed returns, statements made by Defendant to the SEC, and statements made by Defendant's counsel during trial.

> In a letter to his accountant, Kim Pavlik, Defendant stated
>
> I was a resident in Switzerland from 1998 to 2010. While in Switzerland I founded a company called JDFX Holding AG. JDFX specialized in high frequency trading technology. **In 2008, I sold 20% of JDFX to Market Shot LLC of Minnesota and received a capital gain of 10 Million USO. One year later (2009), I sold an additional 15% of JDFX to Market Shot and received a capital gain of 5.25 million USO.**
>
> During the period of 2007 through 2009, I loaned a substantial portion of the capital gains back to JDFX as working capital. In Switzerland there is no capital gain tax for a Swiss nationals [sic] and the aforementioned sale and loan vehicle was properly structured. However as a US citizen, the selling of corporate shares should have been done through the corporation itself.

*See* ECF No. 112-14 at PageID.1921 (emphasis added).

In a letter to the SEC, his attorney at the time, John Fedders, explained that Defendant had personally sold his JDFX stock to Market Shot. It provides

> Keep in mind what I have reported to you on several occasions, namely, **Cook did not purchase his interest in JDFX Holding from the entity, but he brought [sic] his interest in JDFX Holding from Mr. Pieron**…While I believe you already have the schedule reflecting Cook's payments to Mr. Pieron, I again will produce the schedule listing the Cook monies paid to Mr. Pieron.

ECF No. 125-1 at PageID.2856 (emphasis added).

During trial, Defendant's attorneys at the time, Michael Minns and Ashley Arnett, made similar acknowledgments on the Defendant's behalf. ECF No. 53 at PageID.806-808.

### III.

On October 29, 2019, the Government's counsel and Defendant's counsel convened in chambers in advance of the anticipated Sentencing Hearing scheduled to address the issues. An

extensive discussion followed, concerning several subjects. The topics included the following, which all present agreed needed additional thought and briefing:

1. First, the Defendant disputes the applicability of the doctrine of judicial estoppel barring him from explaining that Cook purchased his JDFX stock from JDFX and not him. He contends that he was simply mistaken in reporting the sale(s) and that his initial erroneous understanding of the transaction began with advice by a Swiss advisor whose objective was to minimize Swiss taxation. Switzerland apparently, does not tax capital transactions. He seeks an opportunity to address the propriety of the doctrine of judicial estoppel since it is undisputed that there was a single transaction with stock certificates and that all of the proceeds received from Cook/Market Shot were invested in JDFX.

2. Second, the discussion focused on numerous questions if Defendant remains judicially estopped from disputing that he sold his JDFX stock to Cook/Market Shot. For example, at least the following factual and legal questions remain:

    a. Where did Defendant acquire the stock he sold to Cook and is there an attributable cost basis for the stock?

    b. What shares of stock did Defendant sell to Cook and when? How many shares and at what price?

    c. Was there a contract for the sale of stock with payment to be made over a number of years? Or were there numerous shares of sock sold in separate transactions? It appears that the parties agree that the funds advanced by Cook/Market Shot were paid in the following years:

        2006
            December 1, 2006     $500,000

        2007

    January 18, 2007  $500,000
    February 22, 2007  $500,000
    March 19, 2007  $1,000,000
    March 20, 2017  $1,150,000
    March 20, 2007  $350,000
    March 30, 2007  $5,000,000
    April 12, 2007  $1,000,000

 2008
    December 17, 2008  $2,100,000

 2009
    January 23, 2009  $2,125,000
    May 26, 2009  $1,025,000

d. If Pieron's sale of the stock was for less than the $15 million, what is the tax characterization of the additional payments received by the Defendant but contributed directly to JDFX?

## IV.

Accordingly, the parties are **ORDERED** to submit supplemental briefing addressing the issues identified in Section III by **November 7, 2019**. The briefing is not to exceed 20 pages.


Dated: November 1, 2019         s/Thomas L. Ludington
                     THOMAS L. LUDINGTON
                     United States District Judge