UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-CR-20489 |
| Plaintiff, | Thomas L. Ludington |
| v. | United States District Judge |
| | Patricia T. Morris |
| JAMES D. PIERON, JR., | United States Magistrate Judge |
| Defendant. | |

_____/

### GOVERNMENT'S OPPOSITION TO MOTION TO COMPEL TESTIMONY

James D. Pieron, Jr., has filed a motion to compel the testimony of the case agent.  (R. 138: Motion, 3062-87).  The government opposes that motion.

Brief

In his current motion, James Pieron asks the court to compel the testimony of the case agent, Scott Hollabaugh of IRS Criminal Investigation, during a hearing at which the only issue is the tax loss intended by Pieron.  (R. 138: Motion, 3062-87).[1]  Pieron's motion should be denied.

Scott Hollabaugh is a special agent with IRS Criminal Investigation.  He is not a CPA or otherwise a tax expert, but rather a law enforcement officer charged

_____

[1] Pieron indicated during the conference on October 29, 2019, that his sole witness at an evidentiary hearing would be Chelsea Rebeck, offered to provide opinion testimony demonstrating that Pieron had no 2008 and 2009 income tax obligation.

1

with gathering information in the course of criminal investigations, just like special agents with other federal criminal investigative agencies and law enforcement components within federal agencies, such as the FBI, DEA, ATF, EPA-CID, USDA-OIG, DHS-HSI, etc.  In cases where testimony involving some level of tax analysis is required from the IRS, the government generally relies on revenue agents for that testimony.

Hollabaugh was the third IRS-CI special agent assigned to the Pieron investigation.  In fact, Hollabaugh was assigned to the Pieron investigation only after the grand jury investigation was initiated in the U.S. Attorney's Office for the Eastern District of Michigan.  The records he collected during his participation in the investigation prior to indictment, including the bank records at issue, were not obtained through any IRS administrative process, but rather, through grand jury subpoenas.

Pieron was indicted on a charge of criminal tax evasion in July of 2018.  A copy of Hollabaugh's testimony before the grand jury was provided to Pieron's counsel by the government during discovery, even though the government was not obligated to disclose that transcript until Hollabaugh testified at trial or some other proceeding.  Pieron can offer all or part of Hollabaugh's grand jury testimony to the court if he deems that helpful to his case.

2

However, Hollabaugh did not testify during the trial that led to Pieron's conviction, nor has Hollabaugh testified on behalf of the government in the hearing regarding the tax loss intended by Pieron.  The tax loss hearing has been conducted by the court as part of the guidelines sentencing process, during which the actual tax loss is not a relevant issue.  Nevertheless, Pieron seeks to compel the testimony of Hollabaugh during the continued hearing regarding the tax loss intended by Pieron.

Pieron emailed a subpoena for Hollabaugh's testimony to counsel for the government on October 4, 2019.  The subpoena does not purport to require production of any documents by Hollabaugh because Pieron already has copies of the documents that Hollabugh gathered in the course of the grand jury investigation.  In fact, the government has represented to the court and defense counsel that the government will not contest the foundation for any document provided by the government to the defendant as discovery.

Further, to the very limited extent that Pieron has provided information regarding the evidence Pieron seeks to present through testimony from Hollabaugh, the bank records are already a part of the record developed in the earlier hearings held on the issue of the tax loss intended by Pieron.  The court is quite able to read those bank records.  Hollabaugh simply cannot add anything to the records that are already in evidence.  In addition, Pieron has already offered

3

"expert" testimony regarding an interpretation of those bank records advanced by Pieron for sentencing purposes, albeit without providing an explanation as to why those same records were not presented to Pieron's stepfather, Christopher Werwega, Carol Nathan of American Tax Solutions, or CPA Kim Pavlik and others of Pavlik's firm, or how those bank records can be reconciled with other statements made by Pieron between 2008 and his conviction at trial.

Despite all of the above, Pieron seeks to compel testimony by Agent Hollabaugh.  His motion to compel should be denied.

In his motion, Pieron states that there "is authority" that *Touhy v. Ragen*, 340 U.S. 462 (1951), 5 U.S.C. §301, and implementing regulations are "not applicable in criminal cases."  (R. 138: Motion, at 3064).  That is not the longstanding view of the Sixth Circuit, as reflected in *United States v. Marino*, 658 F.2d 1120, 1125-26 (6th Cir. 1981), and *United States v. Lyimo*, 574 F. App'x 667, 669-70 (6th Cir. 2014), nor is Pieron's contention consistent with this court's ruling in *United States v. Threet*, 2011 WL 5865076 (E.D. Mich. 2011) (J. Ludington), denying defendant's motion to compel testimony by DEA agents.[2]  *Accord*, *United States v.*

---

[2] Pieron seeks to evade the consequences of his failure to comply with *Touhy* requirements by claiming that the government waived its objections to the subpoena by not filing a motion to quash.  It is worth noting in that regard that this court addressed a motion to compel rather than a motion to quash in *Threet*.  In addition, a waiver of *Touhy* is a waiver of sovereign immunity and a jurisdictional prerequisite for subject matter jurisdiction, and as such "must be unequivocally expressed."  *Edwards v. U.S. Department of Justice*, 43 F.3d 312 (7th Cir. 1994).

4

*Soriano-Jarquin*, 492 F.3d 495, 504 (4th Cir. 2007); *United States v. Wallace*, 32

F.3d 921, 928-29 (5th Cir. 1994); *United States v. Allen*, 554 F.2d 398, 406-07

(10th Cir. 1977).  Therefore, *Touhy* does apply in the context of Pieron's motion to

compel in this criminal case.

Another error in Pieron's motion is his interpretation of the IRS's *Touhy*

regulations and his related claim that DOJ *Touhy* regulations do not apply to

Hollabaugh because he is an IRS special agent.  In his brief, Pieron quotes an IRS

example used to illustrate when IRS *Touhy* regulations do apply, and seems to

correctly interpret that example to clarify that an IRS special agent is subject to the

IRS regulations only until the point in an investigation when the agent is acting

"under the direction and control of the United States Attorney's Office in the

Federal grand jury investigation."  (R. 138: Motion, 3065).  What Pieron fails to

comprehend is that when an IRS criminal investigation becomes a grand jury

investigation, the DOJ *Touhy* regulations become applicable to any subpoena

issued to an IRS employee participating in that investigation.

As stated above, Hollabaugh participated only in the grand jury investigation

into Pieron's criminal conduct, and in that phase of the investigation obtained the

records at issue.  Furthermore, Pieron has acknowledged that he is seeking

testimony regarding matters investigated by Hollabaugh under the auspices of the

grand jury.  (R. 138-1: Motion, 3073).  Therefore, while IRS *Touhy* regulations do

5

not apply in this context, Pieron's subpoena for Hollabaugh's testimony during a hearing regarding the tax loss intended by Pieron is subject to the DOJ *Touhy* regulations.

One of the essential requirements for obtaining a *Touhy* waiver is that the party seeking the waiver must provide a "scope and relevance" statement, preferably in the form of an affidavit, "setting forth a summary of the testimony sought" to the attorney handling the case.  28 U.S.C §16.23(c).[3]  Pieron sent a subpoena for Hollabaugh's testimony to government's counsel via email on October 4, 2019.  (R. 138-1: Motion, 3071-71).  Government counsel accepted service of the subpoena, but reminded Pieron of the need to comply with *Touhy*.

Pieron's subsequent, untimely attempts at satisfying the "scope and relevance" requirement initially consisted of an emailed statement that Pieron seeks "testimony from SA Scott Hollabaugh concerning matters he investigated during the course of the grand jury investigation.  Including, but not limited to, his statement that he had reviewed and was in possession of 'bank records showing the wire transfers to Mr. Pieron for the $10,000,000 capital gain.'" [*sic*] (*Id.*, at 3073). The government responded on October 21, 2019, explaining to Pieron's counsel

---

[3] Subsection (c) of 28 U.S.C §16.23 provides in its entirety, "If oral testimony is sought by a demand in a case or matter in which the United States is a party, an affidavit, or if not feasible, a statement by the party seeking the testimony or by the party's attorney setting forth a summary of the testimony sought must be furnished to the Department attorney handling the case or matter."

6

that "we cannot conclude that Special Agent Hollabaugh's grand jury testimony or his interpretation of James Pieron's financial records are relevant matters for inquiry" during the upcoming hearing, but "affording [counsel] an opportunity to specify some other line(s) of inquiry that [counsel] intend to pursue that, in turn, will allow us to conclude that Agent Hollabaugh's testimony should be allowed under *Touhy*." (*Id.*, at 3072). Notwithstanding the fact that Pieron's counsel knew that Hollabaugh was not authorized to testify, Pieron attempted to call Hollabaugh as a witness during the November 7, 2019 intended tax loss hearing. (R. 139: Tr., 3089, 3095-97).

In the wake of the unsuccessful attempt at calling Hollabaugh on November 7, and after Pieron filed his motion to compel, counsel for Pieron emailed the government an affidavit on November 22, 2019. In that affidavit, counsel for Pieron stated, "Mr. Pieron specifically seeks to elicit testimony related to SA Hollabaugh's findings that (1) $10,000,000 in capital gains should have been reported by Mr. Pieron [in] 2007, not 2008[,] and (2) bank records show wire transfers to Mr. Pieron for $10,000,000 in capital gains in 2007[,]" citing the grand jury transcript excerpt in Pieron's tax loss exhibit binder. (Hurford affidavit, p. 2, attached as Govt. ex 216). Pieron's counsel also claimed, "SA Hollabaugh's testimony is highly relevant to Mr. Pieron's tax loss hearing; as noted in previous

7

briefing, the government urged the jury and this Court to accept Mr. Pieron's 2008 and 2009 tax returns as true." (*Id*.).

By any reasonable measure, Pieron has not complied with the requirement that he provide an adequate statement of the scope and relevance of the testimony he seeks from Hollabaugh in a hearing regarding the tax loss intended by Pieron. The scope of the testimony is inadequately and improperly defined, and the proffered relevance is lacking. In addition, Pieron's motion to compel and attempt at *Touhy* compliance are untimely, and untimeliness is often fatal in *Touhy* litigation. *E.g.*, *United States v. Wallace*, 32 F.3d 921, 929 (5th Cir. 1994), citing the Sixth Circuit decision in *United States v. Marino*, 658 F.2d 1120, 1125 (6th Cir. 1981).[4] Pieron cannot ask the court to compel compliance with the subpoena when he has not fully and properly complied with 28 C.F.R. §16.23(c) and given the government the time needed to assess his request for a *Touhy* waiver. *E.g.*, *United States v. Lyimo*, 574 F. App'x 667, 670 (6th Cir. 2014); *United States v. Threet*, 2011 WL 5865076 (E.D. Mich. 2001).

---

[4] Pieron delayed well more than a month, and to a Friday evening before the Thanksgiving holiday, to provide a facially inadequate affidavit to support his *Touhy* request, and provided that emailed affidavit to the government <u>after</u> having filed his motion to compel. (Compare the time designations on the ECF notice for Pieron's motion to compel with the email transmitting the affidavit in Govt. ex 216).

As the court is well aware, the wire transfer documents at issue are already in evidence.  Hollabaugh's testimony is not needed to authenticate the wire transfer documents or the excerpt from his grand jury testimony.

Moreover, Hollabaugh has not and cannot make "findings" from the wire transfer records or other documents in evidence.  Whatever interpretations of those records Hollabaugh might have now, or might have had in the past, are not within the scope of testimony that a special agent can offer pursuant to a *Touhy* waiver. To illustrate the point, a sample *Touhy* authorization obtained by the undersigned contains standard provisions prohibiting the authorized witness from testifying to facts of which the witness has no personal knowledge, disclosing thought processes of agency personnel, answering hypothetical questions, discussing indictment-related decisions, and speculating on matters on which the witness does not have "sure knowledge," among other prohibitions.  Thus, even if Pieron had complied with Touhy in a timely fashion, and provided "scope" information regarding matters that would not fall within the standard prohibitions, any *Touhy* waiver authorizing Hollabaugh to testify would not have included the "findings" specified in the November 22, 2019 affidavit provided by Pieron.

Pieron also has failed to demonstrate that the testimony he seeks from Hollabaugh is relevant now.  Pieron has been tried and convicted by a jury.  The

9

issue before the court now is the tax loss intended by Pieron.[5]  Hollabaugh cannot

testify regarding Pieron's intent.  Pieron is the only witness who can provide

testimony as to his own intent during the time covered by the indictment and when

Pieron engaged in his relevant conduct.

Only Pieron can interpret the wire transfer records in the light of <u>all</u> of the

records created by Pieron, including his stock sales and purchase agreements;

Pieron's communications with (and information withheld from) his series of tax

return preparers; and his representations to the SEC, IRS (including his theft loss

and claim of right assertions), his many former attorneys, and even the court.  Most

important, only Pieron can attempt to explain his own repeated sworn statements to

the IRS on his 2006, 2007, 2008 and 2009 income tax returns regarding when he

received the income on which he attempted to evade taxation for several years.

Pieron may decline to provide his own testimony on these matter, but he cannot

---

[5] The Sixth Circuit has held that for guidelines purposes, "the relevant point in time for determining loss is at the time the crime was detected, rather than at sentencing[.]"  *United States v. Flowers*, 55 F.3d 218, 221 (6th Cir. 1995) (determining loss in fraud context), and *United States v. Maddux*, 917 F.3d 437, 450 (6th Cir. 2019) (applying *Flowers* in tax fraud case).  Likewise, in *Raymond v. United States*, 511 F.2d 185, 189-91 (6th Cir. 1975), the Sixth Circuit placed the burden on the taxpayer to present contemporaneous evidence, not testimony given years later, regarding the proper characterization of a transaction.  The Sixth Circuit emphasized that the contemporaneous evidence requirement was essential to minimize the danger that taxpayers will wait to characterize transactions until the tax consequences of the characterizations are known.  That danger is quite evident in Pieron's current assertions to the court.

obtain testimony from Hollabaugh and use that testimony as a substitute for his own testimony.  Suffice it to say that, if called to testify regarding Pieron's intent, Hollabaugh would testify that Pieron handled his financial affairs in a way that revealed Pieron's intent to evade his tax obligations for many years and that Pieron's 2008 and 2009 federal income tax returns were part of Pieron's evasion scheme.

In addition, Pieron cannot make Hollabaugh's testimony relevant by repeatedly insinuating that the government behaved improperly by using Pieron's 2008 and 2009 tax returns as evidence.  Pieron's tax returns were admissible evidence under Rule 801(d)(2) of the Federal Rules of Evidence.[6]  The government properly used Pieron's tax returns as part of a much larger quantity of evidence to prove Pieron's evasion of his tax obligations.  Pieron swore to the accuracy of his 2006 tax return, his 2007 return, his multiple 2008 returns, and his 2009 return.  No one from the government has sworn that those returns were accurate.  Pieron now seeks to recant his sworn statements on all of his tax returns for those years.  Again, Pieron may personally testify to contradict his own sworn statements, but he may not rebut his own sworn statements regarding his income with testimony by Hollabaugh.

---

[6] Likewise, the statements made by Pieron's various tax preparers and attorneys in their representative capacities are admissible under FRE 801(d)(2).

11

Finally, Pieron's Sixth Amendment Confrontation Clause claim is legally

and factually unfounded.  As a matter of law, the Supreme Court's seminal

decision in *Touhy v. Ragen*, 340 U.S. 462 (1951), rejected the notion that the

Constitution required compliance with a subpoena in the absence of DOJ

authorization, citing an even older case involving the IRS, *Boske v. Comingore*,

177 U.S. 459, 468-70 (1990) (rejecting a challenge to the lawfulness of a

predecessor statute and implementing regulation).  A legion of subsequent cases

have rejected constitutional challenges to the application of various agencies'

*Touhy* regulations to subpoenas to federal agents and agencies.  *E.g.*, *United States*

*v. Soriano-Jarquin*, 492 F.3d 495, 504-05 (4th Cir. 2007) (rejecting compulsory

process claim because the testimony desired was not relevant, material, and "vital

to the defense.").  More important, given Pieron's failure to fully-comply with

*Touhy* before moving to compel, courts have consistently refused on jurisdictional

grounds to consider the merits of constitutional challenges to the government's

decision to not comply with a subpoena directed to an agent or agency in the

absence of compliance with *Touhy* requirements by the subpoenaing party.  *E.g.*,

*United States v. Marino*, 658 F.2d 1120, 1125 (6th Cir. 1981); *United States v.*

*Lyimo*, 574 F. App'x 667, 670 (6th Cir. 2014); *United States v. Threet*, 2011 WL

5865076 (E.D. Mich. 2011); *United States v. Wallace*, 32 F.3d 921, 929 (5th Cir.

1994); *United States v. Allen*, 554 F.2d 398, 407 (10th Cir. 1977).  This court

12

should likewise decline to reach the merits of Pieron's purported constitutional claim.

As to the factual premise asserted in support of Pieron's Confrontation Clause claim, Pieron's self-serving contention that Hollabaugh's testimony would be relevant, helpful, or even necessary to his defense has already been refuted. Because the guidelines require the court to focus on the tax loss that Pieron intended to inflict on the IRS, Pieron's actions and representations during the relevant times alone are relevant to his intent. Conversely, the after-the facts thoughts of third parties or documents that Pieron did not provide to his tax preparers and the IRS in the relevant timeframe, simply are not relevant. Pieron cannot use post-conviction, revisionist-analysis, based on ambiguous information that was not made available to his tax preparers or the IRS while Pieron pursued his evasion scheme, to influence the intended loss for which he is responsible for sentencing purposes. To the extent that evidence presented by the government is subject to clarification or refutation, the one person who might be able to clarify or refute that evidence and resolve the inconsistencies between Pieron's pre-verdict assertions and his own financial records is Pieron.

Even if one puts aside for a moment Pieron's non-compliance with *Touhy*, an understanding of the transactions in Pieron's previously undisclosed financial records (revealing money received from sources known and unknown over several

13

years via many transactions) and Pieron's intent relative to his tax obligations arising out of those transactions, cannot be derived from testimony by Special Agent Scott Hollabaugh.  Therefore, one is left with the firm conviction that Pieron's subpoena for Hollabaugh's testimony is merely a fishing expedition undertaken as a means of deposing Hollabaugh without authorization to do so, especially when one recalls that Pieron hopes to obtain a new trial via yet another of his pending post-trial motions.

Conclusion

For the reasons given above, James Pieron's motion to compel testimony by Hollabaugh should be denied.

Respectfully submitted,

Date:  December 2, 2019

Matthew Schneider
United States Attorney

s/Jules M. DePorre
Jules M. DePorre (P73999)
Assistant U. S. Attorney
600 Church Street
Flint, Michigan 48502-1280
(810) 766-5026
jules.deporre@usdoj.gov

s/Janet L. Parker
Janet L. Parker (P34931)
Assistant U.S. Attorney
101 First Street, Suite 200
Bay City, MI 48708
(989) 895-5712
janet.parker2@usdoj.gov

Certificate

On December 2, 2019, I filed this pleading by using the Clerk of the Court's ECF system.  The ECF system will automatically serve counsel of record.

s/Janet L. Parker

14