UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                            Case No. 18-20489

v                                            Honorable Thomas L. Ludington

JAMES D. PIERON, JR.,

                Defendant.

_____/

**OPINION AND ORDER DENYING THE DEFENDANT'S MOTION TO COMPEL THE TESTIMONY OF SPECIAL AGENT HOLLABAUGH AS MOOT**

On July 18, 2018, an indictment was returned against the Defendant James D. Pieron for tax evasion for 2008 and 2009. ECF No. 1. A jury found the Defendant guilty of the offense on March 7, 2019.

The case is now in the sentencing phase and testimony has been received during two hearings. The Defendant has filed a motion to compel the testimony of IRS Special Agent Scott Hollabaugh. ECF No. 138. According to the Government, Agent Hollabaugh is a special agent with IRS Criminal Investigation ("IRS-CI"). ECF No. 140. The Government explains that Agent Hollabaugh was the third IRS-CI special agent assigned to the Defendant's investigation and was brought onto the investigation only after the Government had initiated the grand jury investigation. Agent Hollabaugh testified before the grand jury and the Defendant was furnished with a transcript of that testimony. He did not testify during the Defendant's trial nor has the Government called him as a witness during the Defendant's sentencing hearing.

For the following reasons, the Defendant's motion to compel will be denied as moot.

**I.**

On August 1, 2018, the Government filed a Bill of Particulars which provides, as it is relevant to the immediate issue, as follows:

> To demonstrate that James D. Pieron, Jr., willfully attempted to evade paying the federal income taxes he owed for 2008 and 2009, and that he committed affirmative acts of evasion in furtherance of his attempt to evade his tax obligations, the government intends to present evidence of the following at trial:
>
> ***
>
> 2. For several years, including 2008 and part of 2009, James D. Pieron, Jr., was a U.S. citizen residing in Switzerland and, as such, was required to annually file federal income tax returns and pay the taxes owed on his income. Between 1998 and 2009, while Pieron lived in Switzerland, the only federal income tax return that Pieron filed was for the year 2000. He reported on that return that he had negative income and no tax due.
>
> 3. Pieron received taxable income in 2008, for which federal income tax was due and owing on April 15, 2009. Pieron did not timely file a federal income tax return for 2008, request an extension, nor timely pay any federal income tax owed by him. Pieron had the means to pay his federal income tax for 2008 because he had received approximately $10,000,000 between December of 2006 and April of 2007, and $5,250,000 between December of 2008 and May 2009. He had sufficient funds available in April 2009 to pay his tax liability for 2008.
>
> 4. In July of 2009, Pieron completed and submitted an application to open a personal account with Peregrine Financial Group, Inc., on which Pieron stated that he did not have a social security identification number and that he was not a U.S. citizen. In connection with his application to open the same account, Pieron submitted an IRS form W8BEN from which he withheld his social security number and on which he stated falsely, but subject to the penalty for perjury, that he was "not a U.S. person."
>
> 5. In November of 2009, Pieron wired $750,000 from a Swiss bank account held by a business that was solely-owned by Pieron to an account at a bank in Mount Pleasant, Michigan held by IB Technologies, Inc., another business owned by Pieron.
>
> ***
>
> 9. In April of 2010, Pieron transferred $250,000 from IB Technologies, Inc., to his personal bank account and then transferred $250,000 from his personal account to Navitas Investments, LLC.

10. At various times in 2010, Pieron made wire transfers from Swiss bank accounts to his personal bank account in Mt. Pleasant, Michigan. Pieron did not use the funds to pay his tax liabilities. Rather, in August 2010, he transferred over $100,000 to Navitas Investments, LLC.

11. In November of 2010, approximately five weeks before he filed his 2008 and 2009 returns, Pieron withdrew approximately $820,000 from one of his personal foreign bank accounts. Later in November of 2010, Pieron transferred $800,000 from his personal Swiss bank account to an account in Mount Pleasant, Michigan, for his solely owned business entity, Komplique, Inc.

12. In June of 2010, Pieron contacted American Tax Solutions, Inc., seeking assistance in the preparation of his tax returns for 2007, 2008 and 2009. Pieron provided spreadsheets, rather than source documents, to ATSI for use in preparing those tax returns. Based on the information provided by Pieron, ATSI prepared income tax returns for Pieron for tax years 2007, 2008 and 2009.

\*\*\*

14. Shortly before he filed his 2007, 2008 and 2009 returns, Pieron retained the services of Kim Pavlik, a CPA with an accounting firm in Saginaw, Michigan. Pieron gave Pavlik spreadsheets with information that was different from the information that was on the spreadsheets Pieron had provided to ATSI. The spreadsheets that Pieron provided to Pavlik also did not include information about Pieron's foreign bank accounts.

\*\*\*

18. In the spring of 2012, Pieron gave Pavlik a new spreadsheet that included incomplete information about Pieron's foreign bank accounts. In May of 2012, Pavlik mailed Pieron unsigned Foreign Bank Account Reports with instructions for Pieron to sign and file the reports with the IRS. Pieron did not file the reports until after he learned he was under criminal investigation. The reports that Pieron eventually did file with the IRS disclosed a bank account that Pieron had not included on the spreadsheet that he gave to Pavlik in the spring of 2012. On his FBAR report for 2009, Pieron falsely stated that the maximum balance in a Swiss bank account for one of his businesses was $250,000 during 2009. In fact, the maximum balance in that account was at least $749,975 in 2009.

ECF No. 5.

## II.

## A.

The primary focus of the tax loss assessment has been the Defendant's reported sale of stock in a Swiss corporation, JDFX, incorporated in 2006 to trade foreign currencies. The Defendant's initial set of income tax returns for 2008 and 2009, completed with the assistance of American Tax Solutions, were filed in January of 2011. Amended returns completed with the assistance of Mr. Pavlik were filed in January of 2012. Schedule D reporting the sale of the Defendant's JDFX stock was as follows:

|      |      | Acquired | Sold     | Price        | Basis       | Gain         |
|------|------|----------|----------|--------------|-------------|--------------|
| 2011 | 2008 | 1/14/04  | 2/4/08   | $9,346,617   | $6,675,034  | $2,671,583   |
|      | 2009 | 1/14/04  | 10/13/09 | $4,450,460   | $3,276,786  | $1,173,674   |
|      |      |          |          |              | TOTAL GAIN  | **$3,845,257** |
|      |      |          |          |              |             |              |
| 2012 | 2008 | 1/14/04  | 2/4/08   | $10,000,000  | $710,129    | $9,289,871   |
|      | 2009 | 1/14/04  | 10/13/09 | $5,250,000   | $0          | $5,250,000   |
|      |      |          |          |              | TOTAL GAIN  | **$14,539,871** |

**B.**

In April 2019, a status conference was conducted between counsel for the Government and counsel for the Defendant. The primary purpose of the conference was to begin to address the Federal Sentencing Guideline issues that would apply to the Defendant's sentencing hearing. The Government was directed to file a draft tax loss assessment and the Defendant was directed to file a response. ECF No. 59. The Government's tax loss assessment, rather uniquely in a tax evasion prosecution, relied on the accuracy of the Defendant's first amended tax return filed with the Internal Revenue Service on January 16, 2012. ECF No. 60 at PageID.1097. The result according to the Government's draft return was $15,250,000 of long-term capital gain net of a tax basis of zero. Indeed, during the initial sentencing hearing, the Defendant conceded that he did not contribute any cash to capitalize JDFX and that his basis in the stock he did own was zero.

In supplemental briefing, the Government explained its rationale for relying upon the accuracy of the Defendant's first amended tax return. The Government explained as follows:

The Form 1040X returns filed in January 2012 are more accurate than the initial returns prepared by Carol Nathan. The 2008 and 2009 1040X amended returns include income reflected in the available bank records. This is likely because Pieron provided far more information and source documents (including bank records) to Pavlik and his accounting firm than he did to Carol Nathan, who prepared the original returns for 2008 and 2009 which were filed in January of 2011.

One example of a difference between Pieron's original 2008 Form 1040 return and the 2008 Form 1040X amended return is that the original return only reported a stock sales price of $9,346,617, instead of the accurate stock sale price of $10 million, which was correctly reported in the 2008 From (sic) 1040X amended return. Similarly, the original 2009 return only reported a stock sale price of $4,450,460, rather than the accurate stock sale price of $5,250,000, which was correctly reported in the 2009 Form 1040X amended return.

The 2008 and 2009 Form 1040X amended returns that were filed in 2012 appear to accurately report Pieron's income.

ECF No. 112 at PageID.1791.

Equally unusual is the Defendant's assertion that none of his filed tax returns are accurate.

He contends, in seeking Agent Hollabaugh's testimony, that

The government urged the jury and this Court to accept Pieron's 2008 and 2009 tax returns as true. This was done despite the government's knowledge that the 2008 and 2009 tax returns are incorrect. While it is true that Pieron signed the returns and they constitute a party-opponent admission, the fact remains that the government continues to knowingly present false evidence to this Court.

To prove that the 2008 and 2009 tax returns signed by Pieron are incorrect, Pieron seeks the ability to call the government's lead case agent, SA Hollabaugh, who has previously testified under oath that, among other things, the $10,000,000 in capital gains should have been reported in 2007, not 2008. (July 18, 2018 Transcript at pp. 13–15, at Tab 18 in Pieron's Tax Loss Hearing exhibit binder.) SA Hollabaugh also testified that he "had bank records showing the wire transfers to Mr. Pieron for the $10,000,000 capital gain in two thousand—mostly in 2007." (Id. at p. 15.)

This testimony is relevant and material to the resolution of sentencing issues that will affect Pieron's sentence. This information is critical to Pieron's defense at the tax loss hearing.

ECF No.138 at PageID.3068.

Agent Hollabaugh's testimony is in fact not necessary. The Government's Bill of Particulars provides that Defendant "had received approximately $10,000,000 between December of 2006 and April of 2007, and $5,250,000 between December of 2008 and May 2009." ECF No. 5 at PageID.10. This is corroborated by the Government's Trial Exhibit 138 which contains bank records demonstrating that Cook transferred $10,000,000 to JDFX entities in 2006 and 2007, not in 2008. The exhibit demonstrates that Cook only transferred $5,250,000 to JDFX entities in 2008 and 2009.

### III.

Accordingly, it is **ORDERED** that the Defendant's motion to compel the testimony of Agent Hollabaugh, ECF No. 138, is **DENIED** as moot.

Dated: December 6, 2019

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge