UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-CR-20489 |
| Plaintiff, | Thomas L. Ludington |
| v. | United States District Judge |
| | Patricia T. Morris |
| JAMES D. PIERON, JR., | United States Magistrate Judge |
| Defendant. | |
| _____/ | |

**GOVERNMENT'S "FINAL" GUIDELINES BRIEF**

In its February 10, 2020 order, the court directed the parties to file final briefs regarding James D. Pieron, Jr.'s guidelines range. (R. 152: Order, at 3799). However, the parties have not received a draft presentence report for Pieron from the probation office. The government respectfully submits that until it has received a draft presentence report regarding Pieron, it cannot prepare a "final" brief regarding Pieron's guidelines range. Therefore, endeavoring to comply with the order to provide additional briefing on the proper scoring of Pieron's offense to the extent that it can do so without a presentence report, the government submits the following for consideration by the court and the probation office.

As an initial matter, the government notes that it has addressed the proper scoring of Pieron's offense under USSG §§2T1.1(a) and 2T4.1 in a series of briefs, culminating in the government's fifth supplemental brief on intended tax loss

1

issues. As summarized in the conclusion of that brief, the tax loss for which James D. Pieron, Jr., is accountable remains within the $3.5 million to $9.5 million range previously calculated by the government, and Pieron's base offense level under the sentencing guidelines is 24. Pieron should receive 2 points pursuant to USSG §2T1.1(b)(1) for failing to report or correctly identify the source of more than $10,000 obtained from criminal activity in 2008 and 2009. Pieron's offense level should also be increased by 2 points under USSG §2T1.1(b)(2) because he used sophisticated means, including off-shore bank accounts and other measures, to deceive his tax preparers, including CPA Kim Pavlik, and to evade and defeat collection by the IRS of Pieron's unpaid 2008 and 2009 taxes. (R. 155: Government's Fifth Supplemental Brief, 381, 3826-27. See also, *e.g.*, Government's Criminal Tax Loss Calculations, filed under seal on April 12, 2019; R. 128: Government's Third Supplemental Brief on Tax-Loss Issues, 2873-75; R. 131: Government's Fourth Supplemental Brief, 2891-2931).

In Pieron's case, attention also must be given to the adjustments in chapter 3 of the sentencing guidelines. While most of the adjustments in chapter 3, including the reduction for acceptance of responsibility in USSG §3E1.1, do not apply to Pieron, he should be assessed 2 points under USSG §3C1.1 for obstruction of justice. Pieron has attempted in multiple ways to obstruct justice with regards to sentencing for his offense of conviction.

The intended tax loss for which Pieron is responsible controls his base offense level under the sentencing guidelines. As manifested by the many briefs that the court sought from the parties on the intended tax loss issue, the six evidentiary hearing held on that sole question, and the comments made by the court during those hearings, determining the tax loss is a critical step in the process of computing Pieron's guidelines range. Pieron has attempted to subvert that process by presenting false information and unauthenticated documents to the court.

Perhaps the most significant example of Pieron's obstructive behavior during his sentencing proceedings to date is his presentation of testimony by Chelsea Rebeck in support of his claim that $5.25 million of the money he received from Trevor Cook was not income to Pieron. As the court has observed, Pieron claimed that the $5.25 million was not income because that sum "was actually an advance by Mr. Cook to Pieron to be used as a deposit for the purchase of a bank, Banque DuBois[,]" (R. 152: Order, 3792-93, 3794-95). If accepted as fact, that testimony potentially could have reduced the tax loss for which Pieron should be scored under the guidelines. However, Pieron's bank purchase claim has been proven false.

It is undisputed that the wire transfers that constitute the $5.25 million at issue were sent by Cook to Pieron on **December 18, 2008** ($2.1 million), **January 23, 2009** ($2.125 million), and **May 26, 2009** ($1.025 million). (R. 142: Tr., 3272-

3

80; R. 114-85: Govt. ex 138, at 2422). Pieron caused Cook to send him all of those wire transfers **after** Pieron had paid the $2.5 million deposit for the bank purchase **from Pieron's personal account** on **December 1, 2008**. (R. 155-1: Govt. ex 217, wire transfer confirmation, 3828; R. 131-7: Govt. ex 215, letter demanding return of bank purchase deposit, 2930-31). Pieron's contemplated bank purchase collapsed by **February of 2009,** after which he fought to get his deposit returned to himself, not Cook. (*Id.*). Significantly, Pieron sought only the return of **his** $2.5 million investment (*id.*), rather than the $5.25 million he now claims was only an "advance" from Cook that happened to flow through accounts controlled by Pieron, without resulting in any income to Pieron.

If one accepts the rather dubious proposition that Cook's statement to federal criminal investigators should be believed, Pieron defrauded Cook of $5.25 million by convincing the unwitting Cook to send Pieron that series of wire transfers for the purchase of the bank. (R. 142: Tr., 3272-80; R. 114-85: Govt. ex 138, at 2422). However, until he was convicted by a jury, Pieron maintained that he received that $5.25 million from Cook in exchange for stock in JDFX Holdings, and presented documentation to substantiate that explanation for the $5.25 million in wire transfers he had received from Cook. (*E.g.*, R. 131-2: Govt. ex 202(a), Sale and Purchase Agreement, 2914-17; R. 112-14: Govt. ex 204, Pieron letter to Pavlik, 1921; R. 112-17: Govt. ex 207, Offer in compromise, 1973-93, at 1977). Under either scenario, the $5.25 million was income to Pieron and taxable as such.

4

The salient fact for purposes of obstruction of justice analysis, however, is that Pieron sought to negate $5.25 million in income by presenting a false narrative to the court. It is true, but irrelevant, that Pieron did not personally take the stand to present that false narrative. Pieron sat at counsel table, a few feet away from his hired witness as she acted as his surrogate, testifying to that false narrative. The court repeatedly observed that Pieron's surrogate witness testified "nearly exclusively" on the basis of information supplied either by Pieron directly or through his defense counsel. (R. 142: Tr., 3243. See also *e.g.*, *id.*, 3245-46). Pieron, unlike his witness, knew that the narrative was false, but either encouraged or acquiesced in the presentation of that false narrative to the court. As such, Pieron engaged in conduct that obstructed justice and warrants the 2-point guidelines enhancement.

Pieron has engaged in other conduct during the sentencing process in this case that provides additional justification for assessing an enhancement for obstruction of justice.

On the one hand, Pieron has withheld from the court the source records and accounting documents that Pieron would have had to have maintained to manage his own financial affairs, along with the affairs of his many evolving, multi-million dollar entities. Pieron also would have needed to make and maintain such records to comply with his Swiss tax obligations. Pieron's non-production of

authenticated, contemporaneous source documents has impeded the court's quest for an accurate understanding of Pieron's intended tax loss.

On the other hand, as the court and the government have repeatedly noted, Pieron has produced a large volume of unauthenticated documents and presented them to the court to try to influence the court's tax loss determination.[1] One prime example of a purportedly significant but unauthenticated document presented by Pieron is his "use of proceeds" summary, identified as defendant's tab 27 but not offered or received during the hearing, in which Pieron purports to show what he did with the $15.25 million he received from Trevor Cook.

Pieron did not provide any information regarding who prepared the "use of proceeds" summary. Furthermore, Pieron did not provide adequate source documentation for much of the information that his summary purports to provide. For example, the information that Pieron made available often indicated that funds moved out of one account or into another, but did not reveal both halves of the transaction recorded in the summary. Pieron's summary also did not explain how he used the money after he transferred it to the place indicated in his summary.

---

[1] The exhibits on which the government has relied throughout this case were authenticated through certificates of authenticity supplied to defense counsel and/or through testimony, other than the demonstrative sentencing exhibits prepared by the IRS using "mock" tax returns forms, marked as Govt. exhibits 501 through 506, and filed with the court under seal as attachments to R. 60.

Many other documents presented by Pieron during his tax loss hearings likewise suffer from a lack of authentication and reliability. One particularly striking example is reflected on the record of Pieron's last tax loss hearing. Pieron attempted to present to the court and the government two documents, marked as defense exhibits 68 and 69, for the first time during the final tax loss hearing, despite the fact that the documents purportedly were in Pieron's possession well before that hearing. (R. 151: Tr., 3755-68). Both documents were supposedly obtained by Pieron from foreign sources. One of the documents was an uncertified statement, purportedly by a business associate, accompanied by an attachment in German but without a translation, much less a certified translation of the German text. The other document was a letter that Pieron attempted to present to prove the contents of Swiss tax law. As the court observed, those documents could have been produced in someone's basement. (*Id.*, 3768). The same can be said of many other documents produced by Pieron in the course these proceedings.

Pieron's attempt to influence his sentence has not been limited to the tax loss calculations underpinning his base offense, however. Pieron has also presented false personal information to burnish his image in the eyes of the court, attempting thereby to gain leniency at sentencing.

By way of example, Pieron claimed in one of his tax loss briefs that he worked with the FBI in the development of an automated fingerprint identification system. (R. 132: Pieron's Third Supplemental Brief Addressing Tax Loss, 2932,

7

2933).  Pieron made a similar assertion when he was under investigation regarding his dealings with Trevor Cook and his Ponzi scheme.  The FBI investigated Pieron's claim and could not substantiate it.  (Govt. ex 226: Affidavit of FBI agent, attached).  Pieron also claimed in one of his tax loss briefs that he made exceptional contributions to the military while in the service and was honored for those efforts.  (R. 132: Pieron's Third Supplemental Brief Addressing Tax Loss, 2932, 2932-33).  However, the government has been unable to verify many of Pieron's claims.  What the government has learned is that Pieron did not rise above the rank of corporal and, while he received various medals, those same commendations apparently were received by Army personnel in good standing and on active duty at the same time.

Many other claims made by Pieron regarding his personal history, though intended to garner favorable sentencing from the court, could not be verified by the government.  The court should not rely on Pieron's assertion of self-serving but unverifiable claims made in support of Pieron's quest for sentencing leniency.  Rather, the court should consider his false or unverifiable claims regarding his personal history, along with the other matters discussed above, and find that Pieron has earned an enhancement for obstruction of justice under USSG §3C1.1.

## Conclusion

James D. Pieron, Jr.'s base offense level is 24. Pieron should receive 2 points under USSG 2T1.1(b)(1), 2 points under USSG 2T1.1(b)(2), and 2 points for obstruction of justice under USSG §3C1.1. As a result, Pieron's offense level total is 30.

                                          Respectfully submitted,

Date: March 9, 2020                  Matthew Schneider
                                                  United States Attorney

| s/Jules M. DePorre | s/Janet L. Parker |
|---|---|
| Jules M. DePorre (P73999) | Janet L. Parker (P34931) |
| Assistant U. S. Attorney | Assistant U.S. Attorney |
| 600 Church Street | 101 First Street, Suite 200 |
| Flint, Michigan 48502-1280 | Bay City, MI 48708 |
| (810) 766-5026 | (989) 895-5712 |
| jules.deporre@usdoj.gov | janet.parker2@usdoj.gov |

## Certificate

On March 9, 2020, I filed this pleading by using the Clerk of the Court's ECF system. The ECF system will automatically serve counsel of record.

                                          s/Janet L. Parker