UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,
    Plaintiff,

                                          Case No. 18-CR-20489
-vs-                                    Judge Thomas L. Ludington

JAMES D. PIERON, JR,
    Defendant.
_____/

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS WITH PREJUDICE

      On March 3, 2019 Defendant filed a Motion To Dismiss With Prejudice. ECF No. 39. The motion argued that Government conduct had violated Defendant's guarantee of due process of law in (1) over a period of years, repeatedly failing to allow James Pieron his rights required by statue and regulations; and, (2) at trial, withholding the delivery of documents, including documents obtained from Peregrine Financial Group, Inc.

      Arguments were heard on this motion on March 4, 2019 with the docket notation indicating that the motion was "to be decided at a later date." Defendant does not believe this motion has ever been ruled upon.

      Defendant files this supplemental memorandum to urge this Court to rule

upon the motion and provides additional facts and authority in support of the arguments that the Brady violation as well as the failure of the Internal Revenue Service to follow the law in this case have deprived him of his Fifth Amendment rights.

## **DUE PROCESS HAS BEEN DENIED BY THE BRADY VIOLATION**

In his Motion to Dismiss, Defendant argued, in part, that his rights had been violated by the withholding of numerous documents until trial. See *Fed. R. Crim. P. 16(a)(1)(B); Brady v. Maryland, 373 U.S. 83 (1963).* Defendant relies upon his arguments in the original filing on this issue but provides additional information concerning the prejudice he has suffered as a result of the withholding of some of these documents.

At trial, the government presented documentary evidence showing that a form W8-BEN had been filed by James Pieron. This form certified that Mr. Pieron was not a U.S. citizen. The defense has always maintained that the signing and submission of the form was just a mistake and that James Pieron never intentionally attempted to mislead Peregrine or anyone else about his citizenship.

The government discovery provided to the defense included 47 pages of documents obtained from Peregrine. *D. Ex. 1019.* These documents were not organized. At trial, the government sought to introduce documents concerning the

opening of a personal account by James Pieron in 2009. Included was a form W8-BEN that certified that Mr. Pieron was not a U.S. citizen. *G.Ex. 115; ECF No. 114-55, PageID.2267.*

In reviewing the 47 pages, after trial had commenced, defense counsel noticed that pages had a second set of Bates numbers on them and that some pages were not included. A defense demand for further documents resulted in the production of approximately 950 pages that the government had obtained from Peregrine. *D. Ex. 1032.* They were delivered to the defense on the night of March 1, 2019 which required counsel to review the documents over the weekend while also preparing for other witnesses. No explanation for the late production has ever been provided. Nor was any explanation provided as to why only 47 pages out of the 950 pages received years early were selected for production to the defense.

The documents ultimately produced included substantial evidence that undercut the government's theory that Pieron had intentionally tried to deny his citizenship. Included were numerous documents where Mr. Pieron supplied his social security number and several copies of Pieron's U.S. Passport that had been sent to Peregrine. These documents were used to cross-examine the witness from Peregrine when testimony resumed on Monday, March 4, 2019.

The government, however, refused to concede that Pieron had not intentionally tried to deceive Peregrine. Instead, they argued that the social

security numbers and passports were provided for Pieron's business accounts. The W8-BEN, they argued, was used to hide his personal account from the IRS. *See, Closing Argument of the Government, ECF No. 55, PageID.1033-1035.*

Defense counsel has now had a further opportunity to review the documents that were withheld until the middle of trial. They provide further evidence that the government claim regarding Pieron hiding his citizenship is completely without merit.

First, close examination of the late received documents reveals that a W8-BEN form was not only filed to open a personal account. Such a form had been mistakenly filed two years earlier, on September 26, 2007, to open business accounts. That this earlier submitted W8-BEN was mistakenly filed is clear Ibecause Pieron also sent his U.S. passport and completed a form that provided his social security number on September 24, 2007. *D.Ex. 1032, PEG Bates #43, 203*.

Second, the W8-BEN that was provided in opening Pieron's personal account, which the government has relied upon to prove he was trying to hide assets, was sent as one page of a four page fax. *D.Ex. 1032, PFG Bates #513-517*. The defense argued at trial that the final page, although of very poor quality, appeared to be a passport. On further examination, it now seems clear that this is not only a U.S. passport, it is the passport of James Pieron. The words "James Dayton" can be made out on the passport. Dayton is Mr. Pieron's middle name

and appears on his passport. *Compare D.Ex. 1032, PFG Bates #517 with PFG Bates #441.* Further, a comparison of the signature on the nearly illegible passport with a legible copy of Pieron's passport shows that they are distinctive and appear to be identical. *Id.* If any other evidence is necessary to prove this was Pieron's passport, it is found in an email sent three days after the original fax. In response to a request that Pieron "resend the photo ID", Pieron instructs his assistant that "if you have my passport on file (PDF) send via a <reply to all>." *D. Ex. 1032, PFG Bates #623."*

The government's argument regarding the 8W-BEN could have been shown to be completely without merit. Only the lack of time to carefully review the voluminous withheld documents prevented the defense from doing so. It is now clear that this evidence had no probative value. It was, however, highly prejudicial. The Brady violation, which the government has yet to explain, should result in dismissal.

## DUE PROCESS HAS BEEN DENIED BY DENIAL OF RIGHTS

The Indictment in this case, in a single count, alleged that James Pieron attempted to evade and defeat the payment of income taxes from approximately April 2009 until "the present" - presumably July 18, 2018 the date of the Indictment's return. For the majority of the nine year period when the crime was

allegedly committed, and for virtually all of the time when prosecution would not be barred by the statute of limitations, the Government, through it's agency, the Internal Revenue Service, denied Mr. Pieron the most rudimentary rights to due process of law.  He was denied notice.  He was denied the opportunity to be heard.  He was denied an appeal.  He was denied the basic right to be informed.

### I.

James Pieron initially filed his 2008 and 2009 tax returns in 2011.  The returns showed amounts owing of $268,445 and $125,490. *G. Ex. 40, ECF No. 112-5, PageID.1819; G.Ex. 42, ECF No. 112-7, PageID1852; ECF No. 52, PageID.549-550.* IRS regulations allow taxpayers to file amended returns.  Amended returns, filed in 2012, showed amounts owing of $365,062 and $74,272. G.*Ex. 41, ECF No. 112-6, PageID.1831; G.Ex. 48, ECF No. 112-8, PageID.1863*.  In April 2014, a 2011 amended return was filed.  This return calculated a credit which, when combined with payments that had been made, resulted in a calculation that Mr. Pieron had an overpayment on his earlier taxes. D. *Ex. 1034; ECF No. 54, PageID.66-871, p. 27-32.*

The IRS also recognizes the right of taxpayers to seek a payment plan for payment of taxes or to attempt to settle issues on the amount that is owed.  IRS Form 9465 allows the taxpayer to seek a settlement when he or she has a doubt as

to the liability of the tax owed. IRS Form 656-L allows the taxpayer to dispute the existence or amount of the correct tax debt under the law. James Pieron, through his representatives, attempted to set up a payment plan in 2012. *G.Ex. 45; ECF No. 114-15, PageID.118.* He filed IRS Form 656-L (Doubt as to Liability) in 2014. *G.Ex. 46; ECF No. 114-16, PageID.122.*

The filing of the April 2014 amended return has particular significance to the issue before the Court. With the filing of this return Mr. Pieron's accountant told him that he had no tax liability for 2008 or 2009. "[W]e concluded that his tax liability was satisfied based on the claim of right doctrine." *Sentencing Hrg. Testimony of Kim Pavlik; ECF No. 146, PageID.554.* Mr. Pavlik's reliance on the "claim of right doctrine" may have been totally in error. However, there has been no suggestion as to why James Pierson would not rely upon him at the time. His co-worker testified, as to Kim Pavlik's reputation in the accounting community, that "[h]e is highly respected, very knowledgeable, very experienced." *Testimony of Dale VanConett, ECF No. 54, PageID.864.*

In summary, James Pieron filed amended returns and sought a payment plan in 2012. In 2014, he filed an amended return which, if correct, resulted in his owing no taxes for 2008 or 2009. Additionally, in 2014, he presented an offer of settlement in an attempt to resolve any disputes with the IRS. These were all filings permitted by the agency.

II.

The IRS has long recognized that taxpayers have certain rights. The "Taxpayer Bill of Rights" was promulgated by the IRS to highlight the most important of these rights. It contains 10 provisions which are summarized as follows:

        1 The Right to be informed
        2 The Right to Quality Service
        3 The Right to Pay No More than the Correct Amount of Tax
        4 The Right to Challenge the IRS's Position and Be Heard
        5 The Right to Appeal an IRS Decision in an Independent Forum
        6 The Right to Finality
        7 The Right to Privacy
        8 The Right to Confidentiality
        9 The Right to Retain Representation
        10 The Right to a Fair and Just Tax System

*D.Ex. 1031.*

The Taxpayer Bill of Rights did not aim to create new rights. Rather it grouped existing rights into categories that would be easier for taxpayers and the IRS employees to understand. *See, Report of the National Taxpayer Advocate, discussed in Facebook v. Internal Revenue Service, 2018 WL 2215743, at \*5 (N.D. Cal. 05/14/18).*

The Taxpayer Bill of Rights is now not only the rules the IRS promises to abide by but also the law as enacted by Congress. The Taxpayer Bill of Rights is codified at 26 U.S.C. § 7803(a)(3).

III.

Having filed amended returns amended returns, sought out a payment plan, and filed a dispute to the existence of the amount of the correct debt under the law, James Pieron's representatives repeatedly attempted to obtain resolutions from the Internal Revenue Service.

Mr. Pieron's accountants were granted power of attorney to act on his behalf with the IRS. D. *Ex. 1008; ECF No. 54, Page ID.886-887*. The accountants repeatedly attempted to contact the agency regarding the status of his tax liability by phone and by correspondence. During a sentencing hearing, Mr. Pavlik testified that his office attempted to contact the IRS "something well over 10 times. They contacted the IRS over a period of years asking the status of that amended return." *ECF No. 146, PageID.3554-3555*. This was confirmed by the trial testimony of Dale VanConett and by the records of phone calls and correspondence. D. *Ex. 1007, 1026, 1027; ECF No. 54, PageID.878-881,883,885-886*. The government agency turned a deaf ear to all of the attempts by James Pieron to determine whether he owed any taxes for the years in question, whether a compromise could be reached, or whether, if taxes were owed, a payment plan could be established.

IV.

The IRS has procedures in place that allow a taxpayer to seek payment plans, attempt to settle issues on the amount owed, and to permit the filing of

amended returns that reduce or even eliminate the amount of taxes owed. In this case, however, the IRS denied James Pieron the opportunity to even attempt to benefit from any of these procedures. The IRS had entered a "freeze code" on Mr. Pieron. According to Government Counsel, this was put on in March 2012. ECF No. 53, PageID.832. This "freeze code" had the result of denying Mr. Pieron the basic rights in dealing with the IRS that are otherwise accorded to all others. It denied him an opportunity to seek a payment plan, an opportunity to settle a dispute as to the amount owing, and, ultimately, denied him an opportunity to determine what- if any - taxes he owed. It denied him his rights under the IRS own rules and denied his rights under the federal tax code.

The government's reliance on the placement of the "freeze code" does not have any support in the Taxpayer Bill of Rights. There is no exception allowing the IRS to deny a taxpayer his rights because the agency has decided to commence a criminal investigation.

It is not necessary, however, to determine whether it is always improper to impose a "freeze code." Defendant will assume that there may be many times, perhaps most times, when a "freeze code" is appropriate. To maintain a "freeze code" for over 6 years, to refuse to allow a taxpayer to seek a payment plan, to seek a settlement, or to challenge whether he actually owes any taxes, is not appropriate. To charge, and now convict, a taxpayer for not paying taxes his

accountant told him he did not owe, after denying him all of his rights to challenge the taxes, is not just unfair. It is unconstitutional.

V.

The failure to provide James Pieron with the basic rights that the IRS promises to every taxpayer fundamentally undermines this prosecution and conviction. He sought to determine what tax, if any, he owed; and arrange to pay. Instead of resolving the uncertainty, the IRS ignored the rights that had been guaranteed to James Pieron. Some of these rights were the following:

**The Right to be Informed.**

*"Taxpayers … have the right to be informed of IRS decisions about their tax accounts and to receive clear explanations of the outcomes."* D.Ex 1031.

The various efforts to reach out to the IRS are summarized as follows:

### IRS CONTACT LOG

| YEAR | EXHIBIT | TYPE | ACTION | | RESULT |
|---|---|---|---|---|---|
| 2012 | G48 | IRS FILING | 1040X (2009) | X | ignored |
| | D1020 | IRS FILING | Installment Agreement | X | ignored |
| 2014 | G46 | IRS FILING | OIC - Doubt as to Liability | X | ignored |
| | D1001 | IRS FILING | 1040X (2011) | X | ignored |
| 2015 | D1007 | CALL TO IRS | 14-Jan | X | not assigned |
| | D1007 | CALL TO IRS | 26-Feb | X | not finalized |
| | D1007 | CALL TO IRS | 16-Apr | X | referred |
| | D1007 | CALL TO IRS | 29-Apr | X | not processed |
| | D1007 | CALL TO IRS | 29-Jun | X | under review |
| | D1007 | CALL TO IRS | 29-Jul | X | not processed |
| | D1007 | CALL TO IRS | 22-Sep | X | call back 30 days |
| | D1007 | CALL TO IRS | 2-Dec | X | referred |
| 2016 | D1015 | CALL TO IRS | 19-Jan | X | not assigned |
| | D1016 | CALL TO IRS | 30-Jun | X | case closed |

|      | ID    | Description                 | Date   |   | Result          |
|------|-------|-----------------------------|--------|---|-----------------|
|      | D1027 | CERTIFIED LETTER TO THE IRS | 30-Jun | X | re-open case    |
|      | D1007 | CALL TO IRS                 | 8-Aug  | X | case not open   |
|      | D1007 | CALL TO IRS                 | 12-Sep | X | case reassigned |
|      | D1007 | CALL TO IRS                 | 29-Jul | X | no information  |
| 2017 | D1026 | CERTIFIED LETTER TO THE IRS | 13-Jun | X | no case status  |
|      | D1007 | CALL TO IRS                 | 17-Oct | X | not processed   |

James Pieron's right to be informed was repeatedly denied.

**The Right to a Quality of Service.**

*"Taxpayers have the right to receive prompt, courteous, and professional assistance in their dealings with the IRS,… to receive clear and easily understandable communications from the IRS."* D.Ex. 1031.

James Pieron did not receive "prompt, courteous, and professional assistance." He received no assistance. He did not receive "clear and understandable communications." He received no communications.

**The Right to Pay No More than the Correct Amount of Tax**

*"Taxpayers have the right to pay only the amount of tax legally due, including interest and penalties, and to have the IRS apply all tax payments properly."* D.Ex. 1031.

In 2012 James Pieron filed amended returns for 2008 and 2009. According to the IRS transcript, the agency accepted the 2008 amendment and rejected the 2009 amendment. G Ex 18, ECF 114-112-2, PageID.1801; G Ex

20, ECF 112-3; PageID2060. They accepted an amendment where the tax amount increased but rejected an amendment where the tax amount decreased. Since the tax position is the same on both years, by any application of tax code this cannot be correct. Of course, no explanation was ever set forth.

In 2013 James Pieron's accountant notified Pieron he would file a Doubt as to Liability because he believed Mr. Pieron did not owe taxes for 2008 and 2009. In 2014 Pieron, through his accountant, again filed an amended return which, if correct, meant he owed no taxes for 2008 or 2009. He had a right to know if this was correct. He was denied this basic right.

There was no IRS determination of what, if any, tax was due and owing. Mr. Pieron's accountant's conclusion was that no tax for 2008 and 2009 was due and owing. The IRS never issued a Notice of Deficiency. It is unlikely that any taxpayer would provide significant payments under these circumstances.

**The Right to Challenge the IRS's Position and Be Heard**

*"Taxpayers have the right to raise objections and provide additional documentation in response to formal IRS actions or proposed actions, to expect that the IRS will consider their timely objections and documentation promptly and fairly, and to receive a response if the IRS does not agree with their position."* D. Ex. 1031.

The IRS did not allow James Pieron to challenge their position. They did not consider "timely objections and documentation promptly and fairly" and did not give him a response. This was true not only of the amended returns but with respect to the proposal for a payment plan and the offer to compromise filed because of the doubt as to liability. Instead of receiving his rights, James Pieron remained in an uncertain position - not knowing if his owed any taxes, not knowing what payments would be considered acceptable if he did owe taxes, and not being able to attempt to resolve any disputes the IRS had with his returns.

Because James Pieron self-assessed, the IRS, if they disagreed, could have provided their own assessment and issued an Notice of Deficiency under 26 U.S.C. §6212. This appears to be the action by the agency that is contemplated by statute. A Notice of Deficiency was never issued.

**The Right to an Appeal**

*"Taxpayers are entitled to a fair and impartial administrative appeal of most IRS decisions, including many penalties, and have the right to receive a written response regarding the Office of Appeals' decision. Taxpayers generally have the right to take their cases to court."* D.Ex. 1031.

The IRS has procedures in place that allow a taxpayer to seek payment

plans, attempt to settle issues on the amount owed, and to permit the filing of amended returns that reduce or even eliminate the amount of taxes owed. In this case, however, the IRS denied James Pieron the opportunity to even attempt to benefit from any of these procedures.

Had the IRS issued a Notice of Deficiency, James Pieron would have been given 90 days to file a complaint with the U.S. Tax Court to dispute the tax liability. This period never commenced, however, because the IRS did not issue a Notice of Deficiency.

**The Right to a Fair and Just Tax System**

*"Taxpayers have the right to expect the tax system to consider facts and circumstances that might affect their underlying lia ilities, ability to pay, or ability to provide information timely." D. Ex. 1031.*

Mr. Pieron was charged under 26 U.S.C. § 7201. To convict someone under this section, it is necessary to prove, among other things, that a tax was due and owing. *See, e.g., Sansone, v. United States, 380 U.S. 343, 351 (1965); United States v. Daniel, 956 F.2d 540 (6th Cir. 1992); United States v. Moody, 339 F.2d 161 (6th Cir. 1964).* Mr. Pieron sought, repeatedly, for an opportunity to determine whether a tax was, in fact, due and owing.

VI.

An agency's failure to follow it own regulations "tends to cause unjust discrimination and deny adequate notice" and may result in a denial of due process.  *Wilson v. Commissioner of Social Security, 378 F.3d 541, 545 (6th Cir. 2004) quoting Sameena, Inc. v. United States Air Force, 147 F.3d 1148, 1153 (9th Cir. 1998).*  Here, the IRS ignored James Pieron's filings of the forms it had approved and provided. It denied Mr. Pieron most of the rights he was supposedly guaranteed including the right to be informed, the right to quality service, the right to pay no more than the correct amount of tax, the right to challenge the IRS' position, the right to be heard, the right to appeal the IRS decision, the right to finality,  and the right to a fair and just tax system.  That the rights of taxpayers became a law, rather than just an agency rule, did nothing to change the failure of the IRS to provide any of his rights to James Pieron.

Disregard of its own rules and even disregard of an act of Congress might not be enough to set aside the conviction of James Pieron.  The failure to accord Mr. Pieron his basic rights, however, go further.  They go to the very heart of the protections accorded by the Due Process Clause.

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Matthews v.*

*Eldridge, 424 U.S. 319, 333 (1976) quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965).* "The essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'" *Matthews, v. Eldridge, supra, at 348-49 quoting Joint Anti-Fascist Comm. v. McGrath, 341 U.S. 123, 171-72 (1951)(Frankfurter, J., concurring).* James Pieron's right to be heard was completely denied. He was not allowed to be heard on issues concerning payments or settlements. Most significantly, he was not allowed to be heard on the ultimate question of whether he owed any taxes.

The violation of rules, regulations and statutory law by the Internal Revenue Service went to heart of the prosecution in this matter. As previously stated, to convict under 26 U.S.C. §7201 requires proof that a tax is due. *See, e.g., Sansone, v. United States, 380 U.S. 343, 351 (1965); United States v. Daniel, 956 F.2d 540 (6th Cir. 1992); United States v. Moody, 339 F.2d 161 (6th Cir. 1964).* Mr. Pieron sought, repeatedly, to have an opportunity to determine whether a tax was, in fact, due and owing. In disregard of its own rules, of an act of Congress, and of Mr. Pieron's constitutional rights, the IRS refused to allow him to obtain an opportunity to determine whether any tax was owing.

VII.

James Pieron filed amended returns in 2014 under which, if his accountant was correct, he would owe no income taxes for the years in question. If his accountant was wrong, he understood that he would be subjected to severe penalties and interest in addition to the back taxes. He was absolutely entitled, under the laws governing the Internal Revenue Service and the agency's own regulations, to a determination as to whether the position advanced by his accountant was correct. The law clearly provided James Pieron the right to be informed, the right to quality service, the right to pay no more than the correct amount of tax, and the right to challenge the IRS's position and be heard. Instead of the law that James Pieron, and every other taxpayer, are guaranteed, the IRS chose to ignore his rights. Not for days or weeks or months, but for years. The government than choose to charge, and now convict him, for failing to pay taxes that were clearly in dispute. Fundamental fairness demands more.

Nor is it an answer to say that Kim Pavlik's position were wrong and that, had he been accorded his rights, James Pieron would have owed the money in any event. James Pieron has been convicted of evading the payment of taxes without any decision that he actually owed the taxes. Had the agency followed the law, considered his position, rejected it, and had Mr. Pieron than

evaded payment, this would be a much different case. The IRS failed to grant James Pieron the basic rights required by the law, left him in a state of uncertainty as to what, if any, back taxes he owed, and than prosecuted him for not paying taxes that they had never determined to be correct and his accountant believed were inaccurate.

    The prosecution of this case offends the most basic concepts of due process of law. The indictment should be dismissed.

s/Kenneth R. Sasse  
Kenneth R. Sasse  
Attorney for James D. Pieron  
Kenneth R Sasse PLLC  
27 E. Flint St., 2nd Floor  
Lake Orion, Michigan 48362  
(248) 821-7325  
(P24365)

March 17, 2021

CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the attached Memorandum with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

s/Kenneth R. Sasse
Kenneth R. Sasse
Attorney for James Pieron, Jr.
Kenneth R Sasse PLLC
27 E. Flint St., 2nd Floor
Lake Orion, Michigan 48362
(248) 821-7325
(P24365)

Dated: March 17, 2021