UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-CR-20489 |
| Plaintiff, | |
| v. | Thomas L. Ludington<br>United States District Judge |
| | |
| | Patricia T. Morris |
| JAMES D. PIERON, JR., | United States Magistrate Judge |
| Defendant. | |
| _____/ | |

**GOVERNMENT'S RESPONSE OPPOSING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE, ECF NO. 39.**

In March 2019, James Pieron was tried and convicted of one count of attempting to evade or defeat the payment of his 2008 and 2009 federal income taxes. On March 3, 2019, during the trial, Pieron filed a motion to dismiss the indictment. (Def's Motion to Dismiss, ECF No. 39, PageID.228-239). In the motion, Pieron argued that the government violated *Brady v. Maryland* and Rule 16, and he claimed the IRS violated the Taxpayer Bill of Rights. Though the parties discussed the motion during trial, (Trial Tr. Vol 4, ECF No. 53, PageID.781-814) the court did not rule on it, and Pieron has filed a post-conviction supplemental brief pressing his claims. (Def's Supp. Br., ECF No. 177, PageID.3992-4011). As discussed below, the court should deny Pieron's motion. Pieron cannot show any prejudice with respect to his alleged *Brady* and Rule 16

1

claim, and Pieron cannot show any violation of his constitutional rights with respect to his alleged Taxpayer Bill of Rights claim. Because of this, the court should deny his motion.

### 1. Pieron is not entitled to relief on any Brady or Rule 16 claims.

During the course of trial, the government provided Pieron's defense team with records that had not been produced in pretrial discovery. Government counsel did not act in bad faith and disclosed the records as soon as they realized their mistake. Pieron cannot show any prejudice from the mid-trial disclosure of the documents, and therefore he cannot show a *Brady* violation or that he would be entitled to relief under Rule 16.

There are three elements to a *Brady* claim. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Pieron must establish (1) that the evidence was favorable to him; (2) that the government suppressed the evidence (whether "willfully or inadvertently:); and (3) that prejudice ensued. *Id.* To satisfy the prejudice element, Pieron must show a "reasonable probability" that he would have been acquitted. *Id.*

"Generally speaking, *Brady* does not apply to delayed disclosure, but only to a complete failure to disclose." *United States v. Spry*, 238 F. App'x 142, 147 (6th Cir. 2007) (citing *United States v. Davis,* 306 F.3d 398, 421 (6th Cir.2002)). "If previously undisclosed evidence is disclosed, as here, during trial, no *Brady* violation occurs unless the defendant has been prejudiced by the delay in

2

disclosure." *Spry*, 238 F. App'x at 147 (quoting *United States v. Word,* 806 F.2d 658, 665 (6th Cir.1986)).

To demonstrate prejudice, Pieron "must show what he would have done differently had he been given more time to address the *Brady* evidence, and specifically how, had the evidence been given to the defendant earlier, a reasonable probability exists [that the jury would have acquitted him]." *Spry*, 238 F. App'x at 147–48 (6th Cir. 2007) (citing *Farrell v. United States*, 162 Fed.Appx. 419, 424 (6th Cir.2006); *United States v. Delgado*, 350 F.3d 520, 527 n. 10 (6th Cir.2003); *United States v. Blackwell,* 459 F.3d 739, 759 (6th Cir.2006)). Because Pieron cannot meet this high standard, the court should deny his *Brady* claim.

With respect to Pieron's claims under Federal Rule of Criminal Procedure 16, the court has considerable discretion in whether to impose a sanction for a Rule 16 violation. *United States v. Maples*, 60 F.3d 244, 246 (6th Cir. 1995). In exercising its discretion, the court should consider whether the government acted intentionally or in bad faith, the degree of prejudice, and whether the prejudice can be cured with a less severe course of action. *Id*. at 246. "District courts should embrace the 'least severe sanction necessary' doctrine".… *Id.* at 247. As discussed below, government counsel did not make the mid-trial disclosures in bad faith, and the defendant did not suffer prejudice. Dismissal of the indictment would not be an appropriate sanction under Rule 16.

In his motion, Pieron described the mid-trial disclosures as records from Peregrine Financial Group, Certified IRS records, Records from American Tax Services, Inc., (Def Motion to Dismiss, ECF No. 39, PageID.231-232). With respect the records from Peregrine Financial Group, the defense team had the records before they completed cross exam of the witness from Peregrine. On Friday, March 1, 2019, the government called a custodian-of-records witness from Peregrine Financial Group, a company where Pieron had a personal currency trading account along with several currency trading accounts held by Pieron's businesses. (Trial Tr. Vol 3, ECF No. 52, PageID.599). Early during the government's direct examination, defense counsel objected to the admission of an exhibit and told the government and the court that it believed it was missing records from Peregrine. (Id., ECF No. 52, PageID.610). Government counsel stated "as far as I know, we gave you everything," but agreed to double check. (Trial Tr. Vol 3, ECF No. 53, PageID.611). The trial ended for the week.

That evening government counsel reviewed its prior discovery productions, realized that it had not produced all of the Peregrine records, and provided additional documents—957 pages total—for defense counsel to review over the weekend. After reviewing the Peregrine documents, government counsel checked the discovery records from other entities, including American Tax Services, and disclosed six additional pages of records.

4

As defense counsel noted, there was a massive amount of discovery in this case. (Trial Tr. Vol 4, ECF No. 53, PageID.638, line 9-15). As soon as the government recognized that it had not produced discoverable documents related to Peregrine Financial and American Tax Services, it turned them over.

Trial resumed the following Monday, March 3, 2019, with the custodian-of-records witness from Peregrine. On direct examination, the government introduced and admitted Government Exhibit 115, which was an account application and a W-8BEN form, signed by Pieron, that stated that Pieron was not a U.S. citizen (Gov't Ex. 115, ECF No. 114-55, PageID.2267; Trial Tr. Vol 4, ECF No. 53, PageID.664). The witness from Peregrine explained that when a person completes a W-8BEN stating that they are not a U.S. citizen, Peregrine keeps the form on file and does not issue 1099 forms to the IRS to disclose the person's income from currency trading. (*Id.*, ECF No. 53, PageID.651).

On cross examination, defense counsel showed the witness numerous forms that Perion submitted to Peregrine stating he was a US citizen and showed the witness numerous photocopies of Pieron's US passport that were kept with the Peregrine records. (*Id.*, ECF No. 53, PageID.657; 669-677). Specifically, defense counsel showed the witness a copy of a US passport that was with the account

records containing the W-8BEN form:

```
Case 1:18-cr-20489-TLL-PTM  ECF No. 53, PageID.675  Filed 03/28/19  Page 53 of 217
                        Schweder - Cross                                    53

 1  Q.    And what is that particular page?  Can you tell?
 2  A.    It appears to be a copy of a passport.
 3  Q.    Copy of a United States passport; is that correct?
 4  A.    Yes, it appears to be.
 5  Q.    Now let's go to page 506 of the same account.
 6  A.    Okay.
 7  Q.    And do you, again, recognize the passport of James Pieron?
 8  A.    Yes.
 9  Q.    And that particular passport is in the very same file as
10        that W-8BEN form that the Government brought you in to testify
11        about; is that correct?
12  A.    Correct.
```

(Id., ECF No. 53, PageID.675). At the end of cross, the witness agreed there were "passports and applications galore in the files of [Peregrine] saying that [Pieron] is a US citizen." (Id., ECF No. 53, PageID.677). As was anticipated by the court, the cross examination was consistent with the defense theory that Pieron's submission of the W-8BEN to Peregrine was a mistake, rather than an intentional effort to avoid disclosure of assets to the IRS. (Id., ECF No. 53, PageID.642).

Despite the cross examination testimony, Pieron now claims that if the records were disclosed earlier, he would have hired a handwriting expert to give opinion testimony that Pieron's signature appeared on the copy of the passport that

was faxed to Peregrine with the account application and W-8 BEN in Government Exhibit 115, ECF No.114-55. (Affidavit of Rosmarie Urbanski, ECF No. 185, PageID.4073). This claim seems highly unlikely. During the lengthy discussions at trial, Pieron's attorneys never mentioned hiring a handwriting expert, and they never asked for an adjournment to hire such an expert. Nor would the expert had added anything beyond the Peregine witness's cross examination testimony—specifically, that the passport which was submitted in the fax along with Pieron's W-8BEN and account application was Pieron's U.S. passport.

During the closing statements, government counsel argued that Pieron intended to submit a false form W8-BEN to Peregrine, so that he could hide assets from the IRS. (Trial Tr. Vol 6, ECF No. 55, PageID.1033-1035). In its closing statement, defense counsel countered that Pieron was not trying to hide his citizenship from Peregrine as evidenced by the fact that he submitted his passport along with the account application and W-8BEN in the fax he sent to Peregrine. (ECF No. 55, PageID.1044-1045.) In rebuttal argument, government counsel stood by its argument that Pieron intended to represent to Peregrine he was not a US citizen.  The government argued that if Pieron wanted to, he could have sent a clearer copy of his passport—similar to legible passport photocopies that Pieron submitted to Peregrine for his business accounts. (Trial Tr. Vol 6, ECF No. 55, PageID.1071).

7

Even if Pieron had retained a handwriting expert to testify at trial, it would not have changed any of these arguments. The fact would have remained that Pieron could have submitted a more legible copy of his passport along with his account application and W-8BEN—both of which stated that he was not a US citizen.

In addition to the records from Peregrine, the government also disclosed six pages of records from American Tax Services, as discussed above. In the government's case-in-chief, the government called Carol Nathan, a tax return preparer who prepared some of Pieron's tax returns including his 2008 return. Ms. Nathan testified on March 1, 2019 (Trial Tr. Vol 3, ECF No. 52, PageID.523-594). Pieron received the six additional pages of records on the evening of March 1, 2019. In his motion, Pieron argued that if his defense team had the six pages of records prior, they would have questioned Ms. Nathan about documents or emails she authored. (Def's Motion to Dismiss, ECF No. 39, PageID.235). But Pieron has failed to show how this would have impacted the outcome of the trial. This is probably because the records were mostly emails that Pieron sent to Nathan. Pieron likely had these emails in his own records since he either sent or received the emails: the defense has not claimed otherwise. And the emails authored by Pieron would have been inadmissible hearsay, unless offered by the government under the so-called party-opponent hearsay exception, FED. R. EVID. 801(d)(2). Also, if

Pieron, after reviewing the six pages of records, realized he had an important question for Carol Nathan, Pieron could have called Nathan as a witness or asked the government to recall her. He did not do either.

Similarly, Pieron cannot show any prejudice from the certified IRS records that were produced on March 1, 2019. In the government's case-in-chief, it called an IRS employee, Robert Miller, to testify, among other things, that Pieron was required to file FBARs (IRS Form 114, Report of Foreign Bank and Financial Accounts). Miller testified on direct examination and started cross examination on February 28, 2019. (Trial Tr. Vol 2, ECF No. 51, PageID.368-426). He completed testifying on cross examination, re-direct, and re-cross on March 1, 2019. (Trial Tr. Vol 3, ECF No. 52, PageID.464-478). On March 1, 2019, after trial, government counsel received certified copies of IRS records. All of the records were previously produced to defense, but not with certifications of authenticity. Government counsel received the records after trial concluded on Friday, March 1, 2019, and they disclosed them to defense counsel that evening.

Pieron claims that if he had the certified copies sooner, he would have offered, as an exhibit, an addendum that was submitted with an FBAR that Pieron filed. (Def's Motion to Dismiss, ECF No. 39, PageID.234-235). Pieron had copies of the addendum long before trial. In fact, the addendum was included in one of the defendant's proposed exhibits—proposed Defense Exhibit 1013—which defense

9

counsel asked to be admitted on February 28, 2010. (Trial Tr. Vol 2, ECF No. 51, PageID.392-394). The government objected to the addendum on hearsay grounds. (ECF No. 51, PageID.391, line 2 & 3; ECF No. 51, PageID395, line 18 & 19.) The court sustained the objection. (Id).

The court initially reasoned that the addendum in proposed Defense Exhibit 1013 was not certified, and therefore Mr. Miller was not the proper foundational witness. (Id). But even if the record was certified, it would have still had been inadmissible as an out-of-court statement concerning why Pieron filed his FBARs late. Because the government did not offer the statement under the party-opponent exception to the hearsay rule in Federal Rule of Evidence 801(d)(2), the addendum was inadmissible even if defense counsel had a certified copy of the FBAR addendum.

After Pieron received the certified IRS records, Pieron attempted to admit the same proposed exhibit (proposed Defense Exhibit 1013) through a different witness, Dale VanConett, who was an accountant and records custodian for Andrews Hooper Pavlik PLC, one of Pieron's accounting firms. (Trial Tr. Vol 5, ECF No. 54, PageID.889-891). At sidebar, the court again refused to admit the exhibit, because the addendum to the FBAR was hearsay:

10

```
13              (Sidebar conference as follows:)
14         MR. MINNS:  This is the complete FBAR.  I think it
15   should come in through this witness, but in light of the
16   Court's prior rulings, I don't know if I'm permitted to do
17   that.
18         THE COURT:  That would include the second page?
19         MR. MINNS:  Yes, sir.  This witness can testify that
20   it was sent in from her, and it's also a certified record that
21   it was separated and now it's --
22         THE COURT:  And that part I don't have any difficulty
23   with.  The difficulty I have is the factual assertion that is
24   made in -- in that document.
25         MR. MINNS:  It's the actual return filed.

              US v. Pieron, Jr. - TRIAL - VOLUME 5 - March 5, 2019
```

```
     VanConett - Cross                                         51

1          THE COURT:  I understand that, and it's authentic, I
2    agree.
3          MR. MINNS:  May I offer it into evidence?
4          THE COURT:  The problem is the hearsay objection with
5    respect to the content of the additional page.
6          MR. MINNS:  The additional page is part of the tax
7    return.
8          THE COURT:  I understand that.  I get that.
9          MR. SASSE:  Isn't the first two pages hearsay, too?
10         THE COURT:  Nope.
```

(Id., ECF No. 54, PageID.889-890). The result would have been the same if Pieron had the certified copy when he tried to admit the exhibit with Mr. Miller.

Lastly, in Pieron's motion to dismiss, he alleged that Mr. Miller gave false testimony regarding the contents of the certified IRS records and whether they

11

contained addendums. (ECF No. 39, PageID.235-236). This serious accusation is completely false. The trial transcripts show that Mr. Miller never gave any untruthful testimony regarding the FBAR addendum or anything else. (Trial Tr. Vol 2, ECF No. 51, PageID.368-426; Trial Tr. Vol 3, ECF No. 52, PageID.464-478). To its credit, Pieron's post-trial supplemental brief (ECF No. 177) does not repeat the accusation or even discuss the certified IRS records.

The court should deny Pieron's *Brady* claims, because the mid-trial disclosures did not prejudice him. The court should likewise deny Pieron's request to dismiss the indictment as a Rule 16 sanction, because Pieron cannot show prejudice and because government counsel did not act in bad faith.

### 2. *Pieron is not entitled to relief on his Taxpayer Bill of Rights claim.*

Defendant never raised any Due Process claims or claims related to the Taxpayer Bill of Rights before the motion-cutoff of October 31, 2018, or before trial. Pieron's supplemental brief appears to focus on the IRS's actions prior to the indictment and trial. For this reason, the alleged claims should have been raised in a pretrial motion prior to the motion cut-off. *See* FED. R. CRIM. P. 12(b)(3). Even if the court were to consider the untimely claims, it should deny them because there is no legal basis for them, they are not supported by the evidence, and the jury considered and rejected them.

Pieron has not raised any cognizable Due Process claim. Despite an exhaustive search, there is no case law stating that the rights in the Taxpayer Bill of Rights, are "fundamental rights" or are rights protected by the Fifth Amendment's Due Process Clause. Pieron's motion to dismiss, ECF No. 39, PageID.233, cites *Santosky v. Kramer*, 455 U.S. 745, 785 (1981) a civil case which addressed parental rights in a domestic matter. In that case, the Supreme Court held, "Before a state may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence." *Id* at 748. Pieron's case is very different. Pieron was convicted after the government supported its allegations by proof beyond a reasonable doubt as to each element of Pieron's crime—including that income tax was due. (*Jury Instructions*, Trial Tr. Vol 6, ECF No. 55, PageID 1020-1021).

Pieron had a federal criminal trial in which he was guaranteed his fundamental and Due Process rights including the right to present evidence on his behalf. He was given notice of the allegations against him in the indictment and in a bill of particulars, and he was entitled to challenge the allegations by calling witnesses or by testifying. In consultation with his trial team, Pieron decided to do neither. Though Pieron provided the government notice of his intent to call expert witnesses regarding his tax liability, he ultimately chose not to call the witnesses.

13

Pieron also chose not to call his accountant, Kim Pavlik, and Pieron himself chose not to testify, which was his right under the Fifth Amendment. He was not deprived of due process.

Pieron has made numerous allegations against the IRS, without citing to the record or any evidence. Several of the Pieron's claims focus on the fact that he did not receive a notice of deficiency under 26 U.S.C. § 6212. (ECF No. 177, PageID.4004-4006). But it is undisputed that a notice of deficiency is only required when the IRS assesses the tax—not when the tax is self-assessed by a taxpayer's tax return. (ECF No. 177, PageID.4005, "Because James Pieron self-assessed, the IRS, if they disagreed, could have provided their own assessment and [issue a] Notice of Deficiency...."). *See also*, *Miklaski v. United States*, 18 F. Supp. 2d 707, 710 (E.D. Mich. 1997) (Taxpayer who self-assessed is not entitled to a notice of deficiency.)). Here, Pieron's 2008 and 2009 income tax assessments were self-assessed, based on the returns and amended returns that Pieron signed and filed. Pieron had notice of the tax he owed to the IRS because he signed and filed the tax returns which assessed the tax. Pieron does not cite any portion of the record to support his claim that he was denied a notice of deficiency and there is no evidence to support Pieron's other Taxpayer Bill of Rights claims.

The court gave Pieron latitude to present his arguments regarding the Taxpayer Bill of Rights to the jury. Pieron elicited testimony about the Taxpayer

14

Bill of Rights from a government witness, IRS Revenue Agent Robert Miller (Trial Tr. Vol 2, ECF No. 51, PageID.423-426), and during the testimony the court admitted Defense Exhibit 1031, which recited the Taxpayer Bill of Rights. Pieron's counsel addressed the Taxpayer Bill of Rights again during closing statements. (Trial Tr. Vol 6, ECF No. 55, PageID.1050-1051). The jury considered all of the evidence—including the evidence regarding the Taxpayer Bill of Rights, yet it still convicted him. The court should not overturn that verdict by dismissing the indictment after the conviction.

Because Pieron's claims regarding the Taxpayer Bill of Rights are untimely, without legal or evidentiary support, and have been considered and rejected by the jury, the court should deny Pieron's claims.

### Conclusion

Pieron's motion to dismiss—including the alleged *Brady* and Rule 16 claims, and the alleged Taxpayer Bill of Rights claims—should be denied.

Dated: May 17, 2021              SAIMA S. MOHSIN
Acting United States Attorney

*/s Jules M. DePorre*
JULES M. DePORRE (P73999)
Assistant United States Attorney
600 Church Street
Flint, Michigan 48502-1280
Phone: (810) 766-5026
Fax: (810) 766-5427
jules.deporre@usdoj.gov

15

## CERTIFICATE OF SERVICE

I certify that on May 17, 2021, I filed the foregoing document using the court's CM/ECF system which will send notice to all registered parties.

                                              */s Jules M. DePorre*
                                              Assistant U.S. Attorney