UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                                Case No. 1:18-cr-20489
                                                          Honorable Thomas L. Ludington
v.                                                 Magistrate Judge Patricia T. Morris

JAMES D. PIERON, JR.,

        Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND GRANTING DEFENSE COUNSEL'S MOTIONS TO WITHDRAW**

This matter is before the Court pursuant to Defendant's Motion to Dismiss, ECF No. 39, and two motions to withdraw by defense counsel, ECF Nos. 178, 179. Defendant was convicted by a jury in March 2019 of one count of tax evasion. ECF No. 47. He recently filed a supplemental brief asking this Court to expressly rule on a motion to dismiss that was filed during trial. ECF No. 177. For the reasons set forth below, Defendant's Motion to Dismiss will be denied, and the Motions to Withdraw will be granted.

**I.**

Defendant is a United States citizen, entrepreneur, and accomplished computer programmer. For roughly a decade before 2009, Defendant lived in Switzerland, where he owned and operated various businesses but failed to report his foreign bank accounts or file income tax returns. After returning to the United States in 2009, Defendant transferred millions of dollars from foreign bank accounts to domestic accounts held by entities that he controlled. Some of these transferred funds came from the sale of Defendant's interest in JDFX Holding AG ("JDFX"), a

currency trading company he had formed in Switzerland. Between 2006 and 2009, another United States citizen, Trevor Cook,[1] paid Defendant over $15,000,000 for part of his interest in JDFX.

On July 18, 2018, a grand jury indicted Defendant with one count of tax evasion in violation of 26 U.S.C. § 7201. ECF No. 1. After several months of motion practice, the parties proceeded to trial on February 28, 2019. ECF No. 51. At trial, the Government presented evidence that Defendant had sold his interest in JDFX, had reported substantial income from that sale on his untimely-filed tax returns, and had evaded payment of his tax liabilities by, among other things, concealing his personal assets and expenses within a network of business entities that he controlled.[2]

On March 7, 2019, the Government rested its case. Defendant elected not to testify or call any witnesses. The jury was sent into deliberation at 1:34 P.M and returned the next morning at 11:36 A.M. with a guilty verdict.

Shortly after trial, two of Defendant's trial attorneys, Mr. Michael L. Minns and Ms. Ashley B. Arnett, withdrew from the case, and two new defense attorneys, Messrs. Patrick J. Hurford and Mark S. Pendery, filed their appearances.

---

[1] Cook was later convicted of operating a $158 million Ponzi scheme where he "solicited investors to participate in a fabricated foreign currency trading program." *See Zayed v. Buysse*, No. 11-CV-1042, 2012 WL 12893882, at *1 (D. Minn. Sept. 27, 2012) (discussing Cook and his Ponzi scheme). After Cook's scheme was revealed, Swiss institutions cut their ties with JDFX, apparently causing the company to liquidate.

[2] At the center of the case against Defendant are his own representations; specifically, his curious and ever-changing tax returns. In his initial 2008 and 2009 returns, prepared by Carol Nathan, Defendant reported a capital gain approaching $4,000,000. *See* ECF No. 162 at PageID.3869 (discussing evidence introduced at trial and post-trial hearings). His 2008 and 2009 returns were later amended by accountant Kim Pavlik, who calculated a capital gain of more than $14,500,000. *Id.* at PageID.3873. Defendant later filed another set of amended 2008 and 2009 returns, also prepared by Pavlik, asserting less than $10,000 in tax liability. *Id.* at PageID.3874. In essence, Defendant represented that he had been a victim of Cook's Ponzi scheme and that his tax liability from the sale of the JDFX stock was nearly eliminated by operation of the "claim of right" doctrine. *Id.* Defendant even filed a Form 656-L Offer in Compromise (Doubt as to Liability) with the IRS, offering to settle his tax liabilities for $30,000. *Id.* Defendant's post-trial counsel later retreated from the claim of right doctrine, claiming that it had no proper application to Defendant's tax liability. *Id.* at PageID.3889–90.

On May 15, 2019, Defendant, through his new counsel, moved for a judgment of acquittal or, alternatively, a new trial. ECF Nos. 66, 68. Shortly after the motions were filed, Defendant's third trial attorney, Mr. Kenneth R. Sasse, also sought to withdraw, citing the "possibility of an evidentiary hearing wherein [he] might be required to testify" and his confidence that Messrs. Hurford and Pendery would "advocate forcefully and effectively on [Defendant's] behalf." ECF No. 72 at PageID.1523–24. Mr. Sasse's Motion to Withdraw was granted. ECF No. 73.

In his post-trial Motions, Defendant argued, among other things, that the evidence was insufficient to sustain his conviction and that his trial counsel—Messrs. Mimms and Sasse and Ms. Arnett—had been ineffective in a number of material ways. The motions were fully briefed but went undecided for over a year while several evidentiary hearings were conducted to determine the appropriate amount of tax loss under the sentencing guidelines.

Finally, on June 9, 2020, this Court entered an order adopting the Government's tax loss assessment. ECF No. 162. The parties were subsequently directed to submit supplemental briefing on Defendant's post-trial motions. ECF No. 167. After considering the supplemental briefing and oral argument from counsel, this Court denied Defendant's Motion for a Judgment of Acquittal and Motion for a New Trial in a written order issued on December 15, 2020. ECF No. 172.

On February 23, 2021, Mr. Sasse filed another appearance on behalf of Defendant. Shortly thereafter, Defendant, through Mr. Sasse, filed a supplemental brief asking this Court for an express ruling on the motion to dismiss that he had filed during trial on March 3, 2019. ECF No. 177.

The same day that Mr. Sasse's supplemental brief was filed, Defendant's post-trial counsel, Messrs. Hurford and Pendery, moved to withdraw, citing the fact that Defendant had once again retained Mr. Sasse, who was a member of the trial team. ECF Nos. 178, 179. Messrs. Hurford and

Pendery expressed their opinion that Mr. Sasse would "no doubt advocate effectively for Mr. Pieron." ECF No. 178 at PageID.4013; ECF No. 179 at PageID.4018. Their motions to withdraw remain pending.

During a status conference held on April 29, 2021, the parties were asked to file additional briefing regarding Defendant's Motion to Dismiss. Additional briefing was subsequently filed in the form of a response brief from the Government and a reply brief from Defendant. *See* ECF Nos. 187, 188.

## II.

In his Motion to Dismiss, Defendant offers two independent arguments for dismissal. The first argument is premised on the Government's mid-trial disclosure of three separate groups of documents from Peregrine Financial Group, Inc., American Tax Defenders, Inc., and the Internal Revenue Service (the "IRS"). Defendant contends that these documents were exculpatory and that their untimely disclosure constituted a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Defendant also contends that the untimely disclosures warrant dismissal of the indictment as a sanction under Federal Rule of Criminal Procedure 16(d)(2).

Defendant's second argument is that the IRS deprived him of due process by failing to comply with the "Taxpayer Bill of Rights."

For the reasons set forth below, neither the untimely disclosure of documents nor the Service's purported violations of the Taxpayer Bill of Rights warrant dismissal of the indictment.

### A.

In *Brady*, *supra*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

*Brady*, 373 U.S. at 87. "To establish a violation of *Brady*, [the defendant] has the burden of establishing that the prosecutor suppressed evidence; that such evidence was favorable to the defense; and that the suppressed evidence was material." *Gillard v. Mitchell*, 445 F.3d 883, 894 (6th Cir. 2006) (quoting *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000)). Generally, however, "the principles announced in *Brady* do not apply to a tardy disclosure of exculpatory information, but to a complete failure to disclose." *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986). "If previously undisclosed evidence is disclosed, as here, during trial, no *Brady* violation occurs unless the defendant has been prejudiced by the delay in disclosure." *Id.*

"[T]he question of whether a delay causes prejudice is really just a type of inquiry into materiality." *Joseph v. Coyle*, 469 F.3d 441, 471 n.23 (6th Cir. 2006). As the Sixth Circuit has explained, the defendant bears the burden of showing what he would have done differently had the *Brady* material been disclosed earlier:

> To demonstrate the type of materiality, and, thus, prejudice necessary to establish a *Brady* violation based upon delayed disclosure, a defendant must show what he would have done differently had he been given more time to address the *Brady* evidence, and specifically how, had the evidence been given to the defendant earlier, a reasonable probability exists that the result of the defendant's trial would have been different.

*United States v. Spry*, 238 F. App'x 142, 147–48 (6th Cir. 2007). Apart from the requirements of due process and *Brady*, the pretrial disclosure of evidence is also governed by the Federal Rules of Criminal Procedure. Under Rule 16, the government is required to disclose certain categories of evidence before trial, including prior statements of the defendant and documents that are "within the custody or control of the government and which are material to the defense or intended for use by the government in its case-in-chief at trial or which were obtained from or belong to the defendant." *United States v. Presser*, 844 F.2d 1275, 1285 (6th Cir. 1988). If a party fails to comply with its Rule 16 obligations, the court may "grant a continuance; prohibit that party from

introducing the undisclosed evidence; or enter any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2) (enumeration omitted). Courts are nonetheless directed to impose "the least severe remedy available to cure prejudice where a potential Rule 16 violation has occurred." *United States v. Collins*, 799 F.3d 554, 573 (6th Cir. 2015) (internal quotation marks omitted).

**1.**

As mentioned above, Defendant argues that the Government violated *Brady* and Rule 16 by failing to disclose three sets of documents before trial. The first set of documents pertained to Peregrine Financial Group, Inc. ("Peregrine"), a brokerage firm where Defendant maintained various currency trading accounts.

Before trial, the Government produced approximately 47 pages of discovery from Peregrine. On, Friday, March 1, 2019, the Government called Peregrine's custodian of records, Zachary Schweder, to testify. During his direct examination, the Government attempted to admit Government Exhibit 115 into evidence. ECF No. 52 at PageID.601 (trial transcript from March 1, 2019). Exhibit 115 was an application to open a currency trading account at Peregrine that Defendant had completed in July 2009. *Id.* at 600–04. The application falsely stated that Defendant was not a United States citizen. *See* ECF No. 114-55 at PageID.2262 (Government's Exhibit 115). Exhibit 115 also included a Form W-8BEN[3] that had been submitted to Peregrine around the same time, falsely certifying that Defendant was not a United States citizen. *Id.* at PageID.2267.

One of Defendant's trial attorneys, Mr. Sasse, objected to the admission of Exhibit 115 on the ground that the Government's pretrial disclosure was incomplete. CF No. 52 at PageID.604. Mr. Sasse argued that the bates numbering on the Peregrine documents suggested that hundreds of

---

[3] As IRS Revenue Agent and Government witness, Robert Miller, testified earlier at trial, a Form W-8BEN is an IRS form that is typically filed by non-citizens. ECF No. 51 at PageID.406–07 (trial transcript from February 28, 2019). The purpose of the form is to notify the filer's banking institution that the institution may need to make income withholdings, "but typically at a treaty or reduced rate." *Id.* at PageID.407.

pages had not yet been produced. *Id.* at PageID.605–06. Although the Government maintained that "everything" had already been produced, *id.* at PageID.611, this Court concluded proceedings for the day to allow defense counsel "an opportunity to better prepare and understand what additional information Peregrine may have had," *id.* at PageID.612. That evening, counsel for the Government produced an additional 957 pages of documents from Peregrine. Defense counsel apparently spent the weekend reviewing the new disclosure. ECF No. 53 at PageID.639 (trial transcript from March 4, 2019).

Trial resumed on Monday and began with oral argument on Defendant's Motion to Dismiss, which had been filed the night before. In essence, defense counsel argued that the undisclosed Peregrine documents included evidence that Defendant had accurately represented his citizenship on numerous occasions when opening other currency trading accounts with the company. *Id.* According to defense counsel, the application in Exhibit 115 had been mistakenly prepared and was only being offered by the Government to mislead the jury into believing that Defendant had intentionally misrepresented his citizenship. *Id.* at 632, 639–41.

The Government responded that Defendant knew or should have known of the additional Peregrine documents and that, as a result, the untimely disclosure did not amount to a *Brady* violation. *Id.* at PageID.634. The Government also argued that the application in Exhibit 115 was significant because unlike the other Peregrine applications, which accurately represented Defendant's citizenship, the application in Exhibit 115 was for a personal currency trading account, not one that would be held by one of Defendant's businesses. *Id.* at PageID.635–36.

This Court reserved ruling on Defendant's Motion to Dismiss, and trial resumed with the direct examination of Peregrine's custodian of records. Over the objections of defense counsel,

Exhibit 115 and other Peregrine documents were admitted into evidence. ECF No. 53 at PageID.644.

On cross-examination, defense counsel introduced numerous Peregrine documents from the untimely disclosure. As argued by defense counsel, these documents indicated that Defendant had accurately represented his citizenship when opening other accounts with Peregrine. *See id.* at PageID.656–72. Defense counsel even introduced a page from the Form W-8BEN filing that appeared to include a copy of Defendant's United States passport. *Id.* at PageID.674–75. The custodian of records agreed that the page appeared to depict a United States passport and that Peregrine had "passports and applications galore in [its] files . . . saying that [Defendant] [was] a US citizen." ECF No. 53 at PageID.675–77.

The Government has never provided a legitimate explanation for the untimely disclosure of the Peregrine documents. Nevertheless, without minimizing the Government's apparent neglect, there is no indication that the untimely disclosure prejudiced Defendant in any material sense.

First, as discussed above, defense counsel reviewed the additional Peregrine documents and used them to cross-examine Peregrine's custodian of records, who eventually admitted that the company possessed considerable evidence that Defendant was a United States citizen. The fact that defense counsel used the Peregrine documents to elicit testimony consistent with their theory that the misrepresentation in Exhibit 115 was inadvertent strongly suggests that no prejudice was inflicted. *See Presser*, 844 F.2d at 1285 (holding that *Brady* "only require[s] disclosure in time for effective use at trial"); *United States v. Uwazurike*, 580 F. App'x 440, 447–48 (6th Cir. 2014) (holding that prosecution's disclosure of plea hearing transcript of witness on second day of trial did not violate *Brady* where defense counsel still cross-examined witness with the transcript).

In his supplemental brief, Defendant argues that if the disclosure had been made earlier, he would have hired a handwriting expert who could testify that the United States passport included with the Form W-8BEN belonged to Defendant. But defense counsel never mentioned a handwriting expert at trial—or in his original Motion to Dismiss—and never sought a continuance from the Court to retain one. "The failure to ask for a continuance suggests that the defense had sufficient time to prepare and thus was not prejudiced by the delayed disclosure." *United States v. Hicks*, 495 F. App'x 633, 640 (6th Cir. 2012); *see also United States v. Crayton*, 357 F.3d 560, 569 (6th Cir. 2004) ("Any disadvantage that a defendant might suffer because of the tardiness of impeachment material can be cured by asking for a recess.").

Furthermore, it seems unlikely that testimony from a handwriting expert would have been material to the jury. Peregrine's custodian of records had already testified on cross-examination that the Form W-8BEN included what appeared to be Defendant's United States passport. Indeed, during closing argument, defense counsel vigorously argued that the misrepresentation in Exhibit 115 was a mistake and that the passport proved it. *See* ECF No. 55 at PageID.1046 ("[Defendant] had told them 11 out of 12 times [that he was a United States citizen], and even in that one package he gave them his passport. There's no stronger way to say I am an American citizen, and I'm proud of it, than to show someone your passport.").

Simply put, there is no reason to believe that the untimely Peregrine disclosure "was so serious that there is a reasonable probability that a [timely disclosure] would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 281 (1999). For the same reasons, dismissing the indictment as a sanction under Rule 16(d)(2) would be improper. Defendant has not demonstrated that he was prejudiced by the untimely disclosure, and dismissal would be plainly

contrary to the principle that courts must apply the "least severe sanction" for discovery violations under Rule 16. *Collins*, 799 F.3d at 573.

**2.**

The second set of documents consists of six pages of records from American Tax Services, Inc. that were disclosed at the same time as the additional Peregrine documents. American Tax Services, Inc. ("ATS") employed Carol Nathan, the accountant who prepared Defendant's first set of 2008 and 2009 tax returns and one of the Government's witnesses at trial. In summary, Nathan's testimony furnished additional evidence that Defendant knew of his tax liabilities and had been "moving money around" to conceal his personal assets. *See* ECF No. 52 at PageID.545.

The ATS documents are only briefly addressed in Defendant's Motion to Dismiss and go completely unmentioned in his recent briefing. During oral argument on Defendant's Motion, the parties agreed that the six pages consisted of email correspondence between Defendant and Nathan. ECF No. 53 at PageID.794–95. According to defense counsel, the most pertinent communication was an email from Defendant to Nathan wherein Defendant asked, "[C]an you please send me the IRS address. I would like to sign and send the forms today." *Id.* at PageID.796. Defense counsel argued that this statement was exculpatory because it showed that Defendant had not intended to delay the filing of his tax returns. *Id.* at PageID.797. Defendant's Motion offers no further insight into those six pages and states only that they would have been "useful" in cross-examining Nathan. ECF No. 39 at PageID.232.

Even assuming that the ATS documents were favorable to Defendant, their untimely disclosure could not have caused any material prejudice. First, as noted by this Court at trial, the documents consisted of Defendant's out of court statements. ECF No. 53 at PageID.798. To the extent that defense counsel wanted to introduce those statements to prove the assertions therein,

the documents were hearsay and therefore inadmissible absent some valid hearsay exception. *See* Fed. R. Evid. 801, 802; *Gumm v. Mitchell*, 775 F.3d 345, 363 (6th Cir. 2014) ("[W]ithheld information is material under *Brady* only if it would have been admissible at trial or would have led directly to admissible evidence.") Second, even if the documents could have been used for impeachment, it remains unclear how defense counsel would have used the documents to impeach Nathan. For example, Mr. Minns stated during oral argument that he "would have questioned [Nathan]" about the email from Defendant asking about the IRS address. ECF No. 53 at PageID.796. He did not explain how doing so would have undermined Nathan's credibility or any of the testimony she provided.

For the foregoing reasons, the Government's untimely disclosure of the ATS documents did not violate *Brady*. Moreover, because Defendant has not shown any material prejudice from the untimely ATS disclosure, dismissing the case as a sanction under Rule 16(d)(2) would be improper.

**3.**

The final set of documents is the roughly 500 pages of certified IRS records that were disclosed the same evening as the Peregrine and ATS documents. As with the ATS documents, Defendant only addresses the IRS records in his original Motion to Dismiss and does not elaborate on their exact contents. According to the Government, the documents were merely certified copies of the same IRS records that had already been disclosed to Defendant before trial. ECF No. 187 at PageID.4088.

The only IRS record that Defendant discusses with specificity is the Foreign Bank Account Report[4] ("FBAR") addendum that was prepared by Kim Pavlik, one of Defendant's accountants. *See* ECF No. 39 at PageID.234–35. The addendum had apparently been sent to the IRS along with Defendant's FBARs to offer some explanation for their untimely filing. *See* ECF No. 53 at PageID.782–88. The addendum and the evidentiary problems associated with it were raised at several points during trial.

On February 28, 2019, the Government called IRS Revenue Agent Robert Miller to testify regarding certain discrepancies in Defendant's FBARs. During direct examination, the Government attempted to introduce Defendant's 2009 FBAR into evidence but one of Defendant's trial attorneys, Ms. Arnett, objected that the FBAR was incomplete. ECF No. 51 at PageID.390. Specifically, Mr. Arnett claimed that the FBAR lacked a certain explanatory addendum that would have been filed with it. *Id.* Mrs. Arnett was given an opportunity to establish a foundation for the addendum, which she apparently possessed, but after some brief examination of Agent Miller, this Court concluded that another witness would probably be required. *Id.* at PageID.394.

Later that same day, Agent Miller was asked on redirect examination about the FBAR addendum. *Id.* at PageID.401. He testified that such addendums are typically noted and transcribed on an "FBAR transcript" that is created and retained by the IRS. *Id.* He further testified that he had "not see[n] any notations . . . that were added with any of the FBAR transcripts" introduced by the Government. *Id.*

Agent Miller returned to provide additional testimony the following day, Friday, March 1, 2019, and was thereafter excused as a witness. That evening, the Government disclosed 500 pages

---

[4] Taxpayers are required to file FBARs to report their foreign bank accounts. *See* ECF No. 51 at PageID.372. At trial, IRS Revenue Agent Robert Miller testified that inaccurate information in FBARs can impair the ability of the IRS to identify assets for collection. *Id.* at PageID.389.

of certified IRS records to defense counsel. The FBAR addendum was apparently among the certified records disclosed.

During oral argument the following Monday, defense counsel argued that the addendum was exculpatory because it provided an explanation for the untimely FBARs; specifically, the addendum "discussed . . . the steps that [Defendant] went through to try to get an accurate accounting of [his] bank records" and the apparent difficulty he encountered. ECF No. 53 at PageID.788. Defense counsel also accused the Government of withholding the addendum and misleading the jury, citing Agent Miller's testimony that he had not seen any notation of an addendum in reviewing the FBAR transcripts. *See id.* at PageID.788–93. Counsel for the Government responded that it had not received the certified IRS records until the night of March 1, 2019—after Agent Miller had been excused—and that the certified records were immediately produced.[5] *Id.* at PageID.788–89. The Government also argued that the addendum, while part of the certified records, was inadmissible hearsay. *Id.* at PageID.784. After reciting portions of the addendum to counsel, this Court agreed with the Government that the addendum was hearsay for which defense counsel had not offered an exception. *See id.* at PageID.789–91.

Later, during the cross-examination of one of Defendant's accountants, Dale VanConnett, defense counsel attempted once more to introduce the addendum. ECF No. 54 at PageID.889–90. During a sidebar conference, this Court declined to admit the addendum and reminded counsel that even if the addendum itself was authentic, the statements therein were hearsay. *Id.*

---

[5] It remains unclear why there was no evidence of the addendum in the FBAR transcripts, as Agent Miller testified, if the addendum been appropriately filed by Defendant's accountants. Nonetheless, there is no basis for the serious accusation in Defendant's Motion to Dismiss that Agent Miller offered false testimony. ECF No. 39 at PageID.236. Agent Miller simply denied having seen any notation indicating that such an addendum was filed. ECF No. 51 at PageID.401. Defendant has not introduced any evidence indicating that the addendum was, to the contrary, properly noted on the FBAR transcripts.

Based on the foregoing, the Government's mid-trial disclosure of the certified IRS records was not a violation of *Brady*. First, the addendum—which is essentially Defendant's own statement, as prepared by his accountant—*was* disclosed to defense counsel before trial. Indeed, defense counsel tried to introduce the addendum before the certified IRS records were even produced. Second, the addendum was inadmissible, not because of its authenticity, but because of the reason it was being offered. As defense counsel explained during oral argument, the purpose of the addendum was to offer a benign explanation for why Defendant had filed untimely FBARs. But offering the addendum for such a purpose made it hearsay and therefore inadmissible. Accordingly, whatever prejudice Defendant may have suffered by the untimely disclosure of the addendum, such prejudice was not so material as to "undermine confidence in the verdict." *Spry*, 238 F. App'x at 148 ("[A defendant] must show that the *Brady* evidence could be taken to put the whole case in such a different light as to undermine confidence in the verdict.") (internal quotation marks omitted).

For the same reasons, dismissing the indictment under Rule 16(d)(2) would be improper. Defendant has not established material prejudice justifying such a severe sanction. Accordingly, Defendant's Motion to Dismiss will be denied with respect to his first basis for dismissal.

**B.**

Defendant's second basis for dismissal is premised on the purported violation of his Fifth Amendment rights. Specifically, Defendant argues that by violating the so-called "Taxpayer Bill of Rights," the IRS deprived him of due process under the Fifth Amendment. ECF No. 39 at PageID.232–33.

The "Taxpayer Bill of Rights" refers to a list of ten rights, derived from the Internal Revenue Code and Treasury regulations, that taxpayers retain in their dealings with the IRS. These

rights include "the right to be informed," "the right to pay no more than the correct amount of tax," and "the right to challenge the position of the Internal Revenue Service and be heard." *See* Taxpayer Bill of Rights, IRS, https://www.irs.gov/taxpayer-bill-of-rights [https://perma.cc/8ZT7-VNEN]. First proposed by the former National Taxpayer Advocate Nina Olson, the Taxpayer Bill of Rights was adopted as a matter of internal policy by the IRS in 2014. *See* IRS Adopts "Taxpayer Bill of Rights;" 10 Provisions to be Highlighted on IRS.gov, in Publication 1, IRS (June 10, 2014) https://www.irs.gov/pub/irs-news/IR-14-072.pdf [https://perma.cc/4R3M-ARMK]. In 2015, Congress passed the Consolidated Appropriations Act, Pub. L. 113-114, which created 26 U.S.C. § 7803(a)(3). That section imposes an affirmative obligation on the Commissioner of the IRS "to ensure that [IRS employees] are familiar with and act in accord with taxpayer rights as afforded by other provisions of [title 26], including" the rights enumerated in the Taxpayer Bill of Rights. 26 U.S.C. § 7803(a)(3).

Importantly, however, the Taxpayer Bill of Rights "did not grant new enforceable rights." *Facebook, Inc. v. Internal Revenue Serv.*, No. 17-CV-06490-LB, 2018 WL 2215743, at *13 (N.D. Cal. May 14, 2018) (holding that Taxpayer Bill of Rights did not create a right to appeal proposed determination of tax liability to IRS Appeals). As explained by the Office of the Taxpayer Advocate,[6] "[t]he Taxpayer Bill of Rights groups the existing rights in the tax code into ten fundamental rights, and makes them clear, understandable, and accessible." *See* Taxpayer Bill of Rights, Taxpayer Advocate Service, https://www.taxpayeradvocate.irs.gov/get-help/taxpayer-rights/ [https://perma.cc/9MFD-J6EJ].

---

[6] The Office of the Taxpayer Advocate, also referred to as the "Taxpayer Advocate Service," is an "independent organization within the IRS" apparently designed to assist taxpayers "whose problems are causing financial difficulty." *See* The Taxpayer Advocate Service is Your Voice at the IRS, IRS, https://www.irs.gov/advocate/the-taxpayer-advocate-service-is-your-voice-at-the-irs [https://perma.cc/2E6Q-VMVS].

Defendant has, throughout these proceedings, attempted to portray his prosecution as the undue product of an unresponsive bureaucratic machine that has refused to engage with him in any reasonable way. During the cross-examination of IRS Revenue Agent Robert Miller, defense counsel introduced the Taxpayer Bill of Rights and attempted to elicit testimony regarding its application. *See* ECF No. 51 at PageID.423–26. Defendant's primary contention seemed to be that the IRS had wrongfully entered a "freeze code" in his case that prevented any communication between him and the IRS once the criminal investigation was pending. *Id.* at PageID.422–23. Over the objection of the Government, the Taxpayer Bill of Rights was admitted into evidence. *Id.* at PageID.425. Defense counsel later referenced the Taxpayer Bill of Rights in closing argument while discussing Defendant's alleged mistreatment. ECF No. 55 at PageID.1049–50. Defendant's briefing is likewise replete with alleged instances of IRS misconduct, including the Service's apparent failure to provide him with notice of his tax deficiency or meet with him and his accountant to resolve his tax liabilities. *See* ECF No. 177 at PageID.4000–06.

As this Court remarked at trial, the pre-indictment history of this case is rather "unusual." ECF No. 53 at PageID.801. More specifically, it remains completely unclear what steps, if any, the IRS took to resolve Defendant's tax liabilities before the criminal investigation began.

Even so, Defendant has identified no authority supporting his theory that a violation of the Taxpayer Bill of Rights offends the Fifth Amendment. Defendant correctly notes that, in some instances, an "agency's failure to follow its own regulations . . . may result in a denial of due process." ECF No. 177 at PageID.4007 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004)). But no court in this circuit or any other circuit has ever held that the Service's failure to comply with the Taxpayer Bill of Rights violates due process or otherwise warrants dismissal of the indictment. Indeed, the remedy that the Internal Revenue Code provides for

violations of the Code and Treasury Regulation is a civil action for damages. *See* 26 U.S.C. § 7433(a). With similar reasoning, the Ninth Circuit previously declined to vacate a criminal conviction based on the Service's violation of the Taxpayer Bill of Rights. *See United States v. Bridges*, 344 F.3d 1010, 1020 (9th Cir. 2003) (noting that the "Taxpayer Bill of Rights [does not] authorize the suppression of evidence or the reversal of a criminal conviction."); *accord United States v. Tabares*, No. 115CR00277SCJJFK, 2016 WL 11258758, at *8 (N.D. Ga. June 3, 2016), *report and recommendation adopted*, No. 1:15-CR-0277-SCJ-JFK, 2017 WL 1944199 (N.D. Ga. May 10, 2017).

Given the absence of any authority suggesting that the Due Process Clause incorporates some or all of the Taxpayer Bill of Rights, Defendant's Motion to Dismiss will be denied.

### III.

The final issue to be resolved here concerns the pending motions of Messrs. Hurford and Pendery to withdraw as counsel. As mentioned previously, Messrs. Hurford and Pendery entered their appearances shortly after trial and then filed Defendant's Motion for a Judgment of Acquittal and Motion for New Trial. Mr. Sasse withdrew as counsel shortly after those motions were filed and only reentered his appearance after they were denied.

During a status conference on April 29, 2021, this Court expressed its hesitation to grant the pending motions to withdraw given that one of Defendant's principal post-trial arguments was that his trial counsel was ineffective. Granting the pending motions to withdraw, this Court noted, would leave only Mr. Kenneth Sasse, a member of the allegedly ineffective trial team, as counsel. In response, Messrs. Hurford and Pendery assured this Court that despite their prior arguments, Mr. Sasse would be an effective advocate. Additionally, Mr. Sasse stated that Defendant had requested his representation at the sentencing hearing.

Given the representations of counsel and Defendant's Sixth Amendment right to counsel of his choosing, the pending motions to withdraw by Messrs. Hurford and Pendery will be granted.

**IV.**

Accordingly, it is **ORDERED** that Defendant's Motion to Dismiss, ECF No. 39, is **DENIED**.

It is further **ORDERED** that Mr. Patrick J. Hurford's Motion to Withdraw, ECF No. 178, is **GRANTED**.

It is further **ORDERED** that Mr. Mark S. Pendery's Motion to Withdraw, ECF No. 179, is **GRANTED**.

It is further **ORDERED** that the appearances of Messrs. Patrick J. Hurford and Mark S. Pendery on behalf of Defendant are **WITHDRAWN**. Defendant will continue to be represented by Mr. Kenneth Sasse.

Dated: June 14, 2021                              s/Thomas L. Ludington
                                                  THOMAS L. LUDINGTON
                                                  United States District Judge